1  Frank L. Tobin CA Bar No. 166344
   frank.tobin@ogletree.com
2  Clint S. Engleson CA Bar No. 282153
   clint.engleson@ogletree.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  4370 La Jolla Village Drive, Suite 990
   San Diego, CA 92122
5  Telephone: 858-652-3100
   Facsimile: 858-652-3101
6
7  Attorneys for Defendants FLOWERS FOODS, INC.,
   FLOWERS BAKERIES, LLC, and FLOWERS FINANCE
   LLC
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly-situated; and WILLIAM LANCASTER, individually and on behalf of others similarly-situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>　　　　　Defendants. | Case No. 18-CV-1190-JLS-JLB<br><br>**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>Complaint Filed: June 6, 2018 |

38953905_1

## I. INTRODUCTION

Defendant Flowers Foods, Inc. ("Flowers") is a party in an unrelated securities class action lawsuit in Georgia (the "Securities Litigation"). It inadvertently produced and then clawed back two privileged documents pursuant to Federal Rule of Evidence 502(b) and the protective order in that case. Plaintiffs Daniel Ludlow and William Lancaster ("Plaintiffs") propounded requests for production seeking those documents.[1] They also seek (i) all documents "relating to the classification of distributors as independent contractors" produced in the Securities Litigation, and (ii) all privilege logs produced in the Securities Litigation (collectively, the "Requests"). But the Securities Litigation has nothing to do with the issues in this case. Defendants objected to the Requests on multiple grounds, including proportionality.

Plaintiffs are filing a Motion to Compel documents responsive to the Requests.[2] Following a telephonic Discovery Conference, the Court gave Defendants the following options: (1) produce a privilege log regarding the disputed documents and submit those documents for an *in camera* review in support of their Opposition to Plaintiffs' Motion to Compel; or (2) file a motion for a protective order. (ECF No. 73.) In a show of good faith, Defendants produced a privilege log regarding the two inadvertently-produced and clawed-back Securities Litigation documents. (*See* Exhibit C.) But the Requests are not limited to the two clawed-back documents. Accordingly, a protective order is necessary for the following reasons:

*First*, Plaintiffs' lawsuit is limited to distributors in California. But the Requests are not so limited. They seek all documents produced in the Securities Litigation relating to the classification of *all distributors nationwide* as independent

---

[1] In addition to the discovery requests at issue in this Motion, Plaintiffs issued a subpoena on plaintiff's counsel in the Securities Litigation. That subpoena demanded counsel turn over documents that Flowers had already clawed back. (Declaration of Frank Tobin, ¶ 5.)

[2] Plaintiffs' Motion to Compel is due the same day as the instant Motion. To the extent Plaintiffs' Motion seeks to compel responses to requests beyond those addressed here, Defendants reserve their right to ask that this Motion apply equally to such requests.

contractors. Flowers produced approximately 31,377 documents totaling approximately 363,294 pages in the Securities Litigation. But the Securities Litigation centers on allegations that Flowers allegedly made numerous false statements and omissions when it referred to distributors and related risks. This case is limited to the classification of California distributors as independent contractors. Thus, even an *in camera* review would require Defendants to comb through 363,294 pages of documents simply to identify and lodge materials which are irrelevant to Plaintiffs' claims.

*Second*, Flowers withheld 6,688 documents on the basis of privilege in the Securities Litigation, and redacted another 560 documents for privilege. Plaintiffs' Requests seek all privilege logs related to these documents. But the Securities Litigation did not address any "decision" to classify California distributors as independent contractors. There is no reason to open a fishing expedition through these logs, whereby Plaintiffs will undoubtedly demand production of identified documents and challenge privilege designations.

Throughout this litigation, the Court has repeatedly limited the scope of discovery to issues relevant to California distributors, as opposed to *all* distributors who contracted with *all* subsidiaries of Flowers nationwide. No *in camera* review or privilege logs are necessary to maintain this common-sense standard.

## II. RELEVANT FACTUAL BACKGROUND

### A. California Is Unique Compared with Other Flowers Markets.

In 2008, Flowers entered the California market when it purchased Holsum Bakery of Phoenix ("Holsum"). (Exhibit B [Depo. Tr. of Chuck Rich] at 135:10-12.) Prior to the acquisition, Holsum used an independent contractor model to distribute its baked goods in California. (*Id.* at 136:22 – 137:24.) When Flowers acquired Holsum, it drafted a new independent contractor distributor agreement, as opposed to using a preexisting agreement that it had used in other parts of the country. (*Id.* at 138:1-10.) In California, the two documents that define the relationship between

distributors and the Flowers subsidiary they contract with are the subsidiaries' franchise disclosure document and the distributor agreement. (*Id*. at 145:1-7.)

### B. The Securities Litigation Does Not Involve Any Decision to Classify Distributors In California as Independent Contractors.

The plaintiff in the Securities Litigation alleges violations of the Securities Exchange Act of 1934 and Securities and Exchange Commission rules. *See* In Re Flowers Foods, Inc. Securities Litigation, Middle District of Georgia case no. 16-cv-0222-WLS at ECF No. 56 ("Consolidated Class Action Complaint"). The plaintiff alleges, generally, that Flowers' direct store delivery ("DSD") model "was based on knowingly and improperly classifying its distributors as independent contractors." *Id*. at ¶ 12. He claims that, "[a]round 1983, Flowers began re-classifying the employee delivery drivers of its then-approximately 40 bakery subsidiaries as independent contractor 'distributors.'"

The plaintiff contends distributors were misclassified based on statements allegedly made by Flowers' former CFO, Jimmy Woodward, who left the company in *2007*. *Id*. at ¶ 35. The Securities Litigation is not based on any decision to classify California distributors as independent contractors. Rather, it involves Flowers' independent distributor model, which Flowers began implementing in 1983 to begin classifying distributors as independent contractors, and centers on allegations that Flowers allegedly made numerous false statements and omissions when they referred to distributors and related risks. Far removed from 1983 and the allegations in that case, Flowers did not enter the California market until 2008, when it acquired Holsum and that company's independent contractor DSD network. (Exhibit B at 138:1-10.) And the allegations here are limited to the classification of California distributors as independent contractors, which is a distinct issue from what occurred in 1983 or alleged shareholder risks.

/ / /

/ / /

### C. Documents Produced and Withheld in the Securities Litigation Are Irrelevant to this Case.

Plaintiffs' Requests specifically seek two documents inadvertently produced and then clawed back in the Securities Litigation. Those documents are quarterly meeting materials packets prepared with the involvement of counsel and circulated among client personnel, with redacted portions prepared by Flowers attorneys in anticipation of litigation and reflecting the mental impressions, opinions and legal advice, including legal strategy, of Flowers attorneys regarding known or anticipated litigation. (Declaration of Frank Tobin ("Tobin Decl."), ¶ 7; Exhibit C [Privilege Log identifying clawed-back documents].) Such documents do not involve any "decision" to classify distributors—inside or outside of California—as independent contractors. (Exhibit C.) Defendants provided Plaintiffs with a privilege log identifying these clawed-back documents. *(Id.)*

Flowers produced approximately 31,377 documents totaling 363,294 pages in the Securities Litigation. (Tobin Decl. ¶ 4.) Flowers withheld approximately 6,688 documents and redacted approximately 560 documents on the basis of privilege in the Securities Litigation. (*Id.*) The withheld and redacted documents fall into the following categories, among others: (i) draft SEC filings, including quarterly and annual reports reflecting the advice of counsel; (ii) communications with counsel detailing litigation and other legal strategy; (iii) minutes of meetings of the Flowers Board of Directors and committees thereof reflecting the advice of counsel; (iv) internal presentations reflecting the advice of counsel; (v) drafts of public speeches and/or presentations reflecting the advice of counsel; and (vi) legal memoranda. (*Id.*) Flowers produced four privilege logs in the Securities Litigation, identifying thousands of documents, and prepared additional logs that were not produced due to the stay of discovery and settlement in principle of that case. (*Id.*)

/ / /

/ / /

### III. LEGAL STANDARD FOR PROTECTIVE ORDERS

The "right of a party to obtain discovery is not unlimited." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). Discovery must be "relevant to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit**." FRCP 26(b)(1) (emphasis supplied).

Courts have routinely held that discovery produced in other litigation is beyond the scope of permissible discovery. *See King Cty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("'[C]loned discovery', requesting all documents produced or received during other litigation or investigations, is *irrelevant and immaterial* unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case.") (emphasis added) (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, IP99–0690–C–Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)). Courts routinely deny requests to produce documents previously produced in related lawsuits—*i.e.*, they do not allow piggy-backing on prior discovery, especially where irrelevant to the claims at bar. *See, e.g.*, *id.*; *Strickland v. Tristar Prods., Inc.*, No. CV416-051, 2017 WL 2874621, at *1 (S.D. Ga. July 5, 2017) ("Plaintiffs are not entitled to 'all documents' and 'all depositions' in the 10 identified cases, *regardless of the pertinence of those materials to the instant case*.") (emphasis added); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (denying request to produce prior discovery in securities class action).

Upon motion by a person responding to a discovery request, the court "may, for good cause, issue an order to protect a party or person from annoyance,

1  embarrassment, oppression, or undue burden or expense, including […] forbidding
2  the disclosure or discovery […] forbidding inquiry into certain matters, or limiting
3  the scope of disclosure or discovery to certain matters …" FRCP 26(c)(1).

4  Protective orders provide a safeguard for parties and other persons in light of
5  the otherwise broad reach of discovery. FRCP 26(c), Advisory Comm. Notes (1970);
6  *United States v. CBS, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982). The "burden is
7  upon the party seeking the order to 'show good cause' by demonstrating harm or
8  prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057,
9  1063 (9th Cir. 2004).

10 **IV.   REQUEST FOR PRODUCTION NO. 14**

11 Plaintiffs' Request for Production No. 14 ("RFP 14") seeks "All
12 DOCUMENTS and ESI relating to the classification of distributors as independent
13 contractors produced in Flowers Foods, Inc. Securities Litigation, Case No. 7: 16-cv-
14 00222-WLS (M.D. Georgia March 14, 2019), including but not limited to
15 SECLITFLO 00155165 — 422 and SECLITFLO 00351582 — 839." (Exhibit A.)
16 RFP 14 is grossly disproportionate to the needs of this case. A protective order is
17 necessary on multiple grounds.

18 *First*, RFP 14 specifically requests, by Bates range, those documents which
19 were inadvertently produced and clawed back in the Securities Litigation. (*See*
20 Exhibit C.) The clawed-back documents were prepared by Flowers' legal
21 department, with input from outside counsel, and contain the impressions of both in-
22 house and outside counsel regarding such litigation and other matters. (Exhibit C.)
23 They are privileged and the definition of attorney work product. *Hickman v. Taylor*,
24 329 U.S. 495, 510 (1947). A properly asserted claim of privilege is good cause for
25 protective order. *Pearson v. Miller*, 211 F3d 57, 72 (3rd Cir. 2000).

26 Furthermore, no *in camera* review of the clawed-back documents is necessary
27 prior to issuing a protective order. Defendants already provided Plaintiffs with a
28 Privilege Log identifying the clawed-back documents. (Exhibit C.) The Court need

38953905_1

not reach the issue of whether the clawed-back documents are relevant (*i.e.*, whether they are "relating to" independent contractor classification) because those documents are privileged. If the Court determines Defendants have properly asserted a claim for privilege, the inquiry should end and a protective order should issue.

Defendants will of course comply with the Court's June 7, 2019 Minute Order (ECF No. 73) and lodge the two clawed-back documents in support of their Opposition to Plaintiffs' Motion to Compel. However, Defendants ask the Court not to review those documents until ruling on the instant Motion.

*Second*, Plaintiffs' lawsuit is limited to distributors in California. But RFP14 is not so limited. It instead seeks, without limitation, all documents "relating to the classification of distributors as independent contractors" produced in the Securities Litigation. As set forth above, the Securities Litigation is not based on any decision to classify California distributors as independent contractors. Rather, it involves Flowers' independent distributor model, which Flowers began implementing in 1983 to begin classifying distributors as independent contractors, and centers on allegations that Flowers allegedly made numerous false statements and omissions when they referred to distributors and related risks. This case is limited to California distributors. But Flowers did not enter the California market until 2008, when it acquired Holsum and that company's independent contractor DSD network. (Exhibit B at 138:1-10.) Thus, RFP 14 is entirely disproportionate to the needs of this case. The Court should exercise its discretion under Rule 26(c) to limit discovery to issues pertinent to California distributors.

*Third*, Flowers produced approximately 31,377 documents totaling 363,294 pages in the Securities Litigation. (Tobin Decl. ¶ 4.) To comply with RFP 14, Defendants would be required to analyze this voluminous production to identify which documents, if any, are "relating to the classification of distributors as independent contractors," as opposed to other allegations unique to the Securities Litigation. This would require substantial time and resources, only to locate

documents which are irrelevant to the classification of California distributors. There is no basis to subject Defendants to such undue burden and expense.

*Fourth*, for the same reasons it would be needlessly and unduly burdensome for Defendants to comply with RFP 14, so too would it be needlessly and unduly burdensome for Defendants to locate and submit documents responsive to RFP 14 for an *in camera* review. Respectfully, such an *in camera* review, itself, would be unduly consumptive of the Court's time and resources. Because RFP 14 is disproportionate on its face, no *in camera* review is needed. The Court should issue a protective order barring Plaintiffs from seeking irrelevant documents from an unrelated lawsuit in Georgia.

## V.     REQUEST FOR PRODUCTION NO. 15

Plaintiffs' Request for Production No. 15 ("RFP 15") seeks "All DOCUMENTS and ESI relating to any privilege logs or other similar documents used to identify withheld responsive information in connection with Flowers Foods, Inc. Securities Litigation, Case No. 7:16-cv-00222-WLS (M.D. Georgia March 14, 2019), including any logs identifying the documents produced as SECLITFLO 00155165 — 422 and SECLITFLO 00351582 — 839." (Exhibit A.) RFP 15 is patently disproportionate to the needs of this case. A protective order is necessary for the reasons set forth below.

*First*, as with RFP 14, RFP 15 is not limited to the issues in this case; namely, California distributors. It seeks logs identifying *thousands* of privileged documents withheld in the Securities Litigation. But it does so without regard to whether those documents are actually relevant to this case, *or even what discovery requests or negotiated search terms those documents were responsive to*. Plaintiffs are on an indiscriminate fishing expedition. As set forth above, the Securities Litigation is not based on any decision to classify California distributors as independent contractors. By seeking, without limitation, a catalogue of privileged documents from an unrelated case, they are casting a far wider net than permissible. RFP 15 is therefore

not tailored to the issues in this case. It is entirely disproportionate.

*Second*, Defendants would be prejudiced by production of the Securities Litigation privilege logs. Those logs identify thousands of privileged documents, including draft SEC filings, communications with counsel detailing litigation and other legal strategy, internal presentations reflecting the advice of counsel, and legal memoranda. Production of those logs in this case would invite Plaintiffs to request and challenge the privilege designations of thousands of highly sensitive documents. Defendants will be forced to litigate, and the Court will be required to decide, the myriad of disputes that will inevitably follow.[3] Moreover, if Defendants are forced to turn over privilege logs from unrelated lawsuits every time they are sued, the confidentiality of the underlying documents will be eroded rapidly. Rule 26(c) expressly provides protections against this kind of "annoyance, embarrassment, oppression, [and] undue burden [and] expense."

*Third*, no *in camera* review of the Securities Litigation privilege logs is necessary. In compliance with the Court's Minute Order (ECF No. 73), Defendants will lodge the privilege logs in support of their Opposition to Plaintiffs' Motion to Compel. However, Defendants ask the Court not to review those documents until ruling on the instant Motion. Because RFP 15 is disproportionate on its face and compliance with the request would prejudice Defendants, the Court should issue a protective order and thereby obviate the need for an *in camera* review.

/ / /
/ / /
/ / /
/ / /
/ / /

---

[3] Additionally, the parties to the Securities Litigation have reached a settlement in principle. Production of the privilege logs would simply invite litigation in this case over privilege designations made in a case that is nearly resolved.

9      Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' MOTION FOR PROTECTIVE ORDER

38953905_1

## VI. CONCLUSION

Based on the foregoing, Defendants ask the Court to issue a protective order barring Plaintiffs from seeking documents pursuant to Requests for Production Nos. 14 and 15.

DATED: June 17, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *Frank L. Tobin*
Frank L. Tobin
Clint S. Engleson
Attorneys for Defendants FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE LLC

38953905_1

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 17, 2019.

By: */s/ Frank L. Tobin*
Frank L. Tobin

38953905.1