Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
Clint S. Engleson CA Bar No. 282153
clint.engleson@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:  858-652-3100
Facsimile:   858-652-3101

Attorneys for Defendants FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly-situated; and WILLIAM LANCASTER, individually and on behalf of others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>Defendants. | Case No. 18-CV-1190-JLS-JLB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS**<br><br>[NO ORAL ARGUMENT WITHOUT FURTHER ORDER FROM THE COURT]<br><br>Complaint Filed: June 6, 2018 |

39016174_2.docx

I.  **INTRODUCTION**

Plaintiffs filed a Motion to Compel Disputed Documents. (Doc. 75.) The plaintiffs in *Goro v. Flowers Foods, Inc.*, case no. 17-cv-02580-JLS-JLB, filed the exact same Motion, seeking the exact same documents. But the discovery requests at issue in the two cases, as well as the named Defendants, are different and cannot be conflated. Defendants will address the requests in the context of the cases in which they were propounded. When the issues are disentangled, Plaintiffs' arguments and accusations fall apart.

Plaintiffs seek documents inadvertently produced and clawed back in an unrelated securities class action against Flowers Foods, Inc. (the "Securities Litigation"). They also seek privilege logs produced in the Securities Litigation. For purposes of this case, their Motion makes two arguments: (1) the Securities Litigation documents are relevant and responsive to their RFP Nos. 6, 14, and 15; and (2) Defendants waived any privilege associated with these documents by pleading a "good faith dispute" affirmative defense. But the Securities Litigation has nothing to do with any decision to classify California distributors as independent contractors. The requested documents are also privileged and have nothing to do with Defendants' "good faith dispute" affirmative defense. None of Plaintiffs' arguments have merit. Their Motion must be denied.

II.  **FACTUAL BACKGROUND**

A.  **California Is Unique Compared with Other Flowers Markets**

In 2008, Flowers entered the California market when it purchased Holsum Bakery of Phoenix ("Holsum"). (Exhibit A [Depo. Tr. of Chuck Rich] at 135:10-12.) Prior to the acquisition, Holsum used an independent contractor model to distribute its baked goods in California. (*Id*. at 136:22 – 137:24.) The independent contractor distributor agreement created by Holsum remained in effect in California after the acquisition, until 2013. (*Id*. at 135:13 – 136:8.) At that time, Flowers drafted a new independent contractor distributor agreement, as opposed to using a preexisting

39016174_2.docx

1                                                           Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

agreement that it had used in other parts of the country. (*Id*. at 138:1-10.) In California, the two documents that define the relationship between distributors and the Flowers subsidiary they contract with are the subsidiaries' franchise disclosure document and the distributor agreement. (*Id*. at 145:1-7.)

### B. Discovery Requests and Objections in Dispute

Plaintiffs' RFP 6 was served on February 27, 2019. Defendants served responses on April 15, 2019. Plaintiffs' RFP Nos. 14 and 15 were served on April 26, 2019. Defendants served responses on May 28, 2019.

Defendants objected to all of these requests on the following grounds: vague and ambiguous, overbroad as to time and scope, unintelligible, relevance and proportionality, unduly burdensome and harassing, and calls for attorney-client privileged information and work product.

### C. The Securities Litigation Does Not Involve Any Decision to Classify Distributors in California as Independent Contractors

Defendant Flowers Foods, Inc. ("Flowers") is a party in an unrelated securities class action lawsuit in Georgia (the "Securities Litigation"). The plaintiff in the Securities Litigation alleges violations of the Securities Exchange Act of 1934 and Securities and Exchange Commission rules. *See* In Re Flowers Foods, Inc. Securities Litigation, Middle District of Georgia case no. 16-cv-0222-WLS at ECF No. 56 ("Consolidated Class Action Complaint"). The plaintiff alleges that Flowers' direct store delivery ("DSD") model "was based on knowingly and improperly classifying its distributors as independent contractors." *Id*. at ¶ 12. He claims that, "[a]round 1983, Flowers began re-classifying the employee delivery drivers of its then-approximately 40 bakery subsidiaries as independent contractor 'distributors.'"

The plaintiff contends distributors were misclassified based on statements allegedly made by Flowers' former CFO, Jimmy Woodward, who left the company in 2007. *Id*. at ¶ 35. The Securities Litigation is not based on any decision to classify California distributors as independent contractors. Rather, it involves Flowers'

2

Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

independent distributor model, which Flowers implemented in 1983 to classify distributors as independent contractors, and centers on allegations that Flowers allegedly made numerous false statements and omissions when they referred to distributors and related risks. Far removed from 1983 and the allegations in that case, Flowers did not enter the California market until 2008, when it acquired Holsum and that company's independent contractor DSD network. (Exhibit A at 138:1-10.) And the allegations here are limited to the classification of California distributors as independent contractors, which is a distinct issue from what occurred in 1983 or alleged shareholder risks.

### D. The "Disputed Documents" Do Not Address Any Decision to Classify California Distributors as Independent Contractors

Plaintiffs' RFP 14 specifically seeks two documents inadvertently produced and then clawed back in the Securities Litigation. Those documents are quarterly meeting materials packets from 2016 prepared with the involvement of counsel and circulated among client personnel, with redacted portions prepared by Flowers attorneys in anticipation of litigation and reflecting the mental impressions, opinions and legal advice, including legal strategy, of Flowers attorneys regarding known or anticipated litigation. (Declaration of Frank Tobin ("Tobin Decl."), ¶ 6; Exhibit C [Privilege Log identifying clawed-back documents].) Such documents involve no "decision" to classify distributors—inside or outside of California—as independent contractors. (Exhibit C.) Defendants provided Plaintiffs with a privilege log identifying these clawed-back documents. (*Id.*)

Flowers produced approximately 31,377 documents totaling 363,294 pages in the Securities Litigation. (Tobin Decl. ¶ 4.) Flowers withheld approximately 6,688 documents and redacted approximately 560 documents based on privilege in the Securities Litigation. (*Id.*) The withheld and redacted documents fall into broad categories. (*Id.*) Flowers produced four privilege logs in the Securities Litigation, identifying thousands of documents, and prepared additional logs not produced due to

39016174_2.docx

3                               Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

the stay of discovery and settlement in principle of that case. (*Id.*)

## IV. PLAINTIFFS' REQUESTS ARE VAGUE AND OVERBROAD

### A. Request for Production No. 6 Is Vague and Overbroad on Its Face

Like many of Plaintiffs' requests, RFP 6 seeks "all documents relating to" a nebulous, undefined topic or concept. There are no time limits. The only defined term is "DOCUMENTS," but that definition spans a page and starts with the admonition it is to be "used in the broadest possible sense…" The request is broken. Neither Defendants nor the Court have an obligation to rewrite Plaintiffs' request to make it intelligible and proportionate. That is Plaintiffs' job.

Rule 34(b)(1)(A) requires that a party requesting production of documents "must describe with reasonable particularity each item or category of items to be [produced]." "The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not.'" *Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004). Sweeping, "all-encompassing" requests do not meet Rule 34's "reasonable particularity" requirement. *Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2018 WL 6078308, at *4 (S.D. Cal. Nov. 20, 2018. Where, as here, a party serves a broken request for production, it is neither the responding party's—nor the Court's—obligation to rewrite the requests to determine whether responsive documents exist. *Medicinova Inc. v. Genzyme Corp.*, No. 14CV2513-L(KSC), 2017 WL 2829691, at 6 (S.D. Cal. June 29, 2017).

Here, RFP 6 does not meet Rule 34's "reasonable particularity" requirement. It sweepingly requests, without definition or time limitation, all documents "relating to the decision to implement independent contractor distributor model [*sic*] in California." But this case has been pending for a year and the related *Goro* case for much longer. Plaintiffs have taken over 10 depositions between the two cases and received thousands of pages of documents. (Tobin Decl. ¶ 7.) Yet their requests often ask for "all documents relating to" a topic. Defendants have met and conferred and

4
Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

39016174_2.docx

compromised countless times (*Id.*) Plaintiffs refuse to tailor their requests to finite issues. Plaintiffs argue Defendants should have moved for a protective order. This is absurd. Defendants have no obligation to move for a protective order every time Plaintiffs serve a broken request. They may object to the broken request, at which point "it is Plaintiff's burden in his motion to compel to demonstrate why the objection[] is not justified." *Lemons v. Camarillo*, No. 14-CV-2814-DMS (DHB), 2017 WL 4700074, at *1 (S.D. Cal. Oct. 19, 2017). Plaintiffs' RFP 6 is vague, ambiguous, and overbroad to the point of absurdity. The Court should not rewrite it to encompass some set of documents that were never identified.

### B. Requests for Production Nos. 14 and 15 Improperly Seek "Cloned" Discovery

Plaintiffs' RFP Nos. 14 and 15 seek documents and privilege logs produced by Flowers in the Securities Litigation. Such requests, seeking "cloned" discovery from other cases, are patently improper and outside the scope of permissible discovery.

Courts have routinely held that discovery produced in other litigation is beyond permissible discovery. *See King Cty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). Courts routinely deny requests to produce documents produced in related lawsuits—*i.e.*, they do not allow piggy-backing on prior discovery, especially where irrelevant to the claims at bar. *See, e.g.*, *id.*; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (denying request to produce prior discovery in securities class action).

Plaintiffs cannot "piggyback" on the Securities Litigation discovery. They must draft targeted, proportionate, and clearly-defined requests for documents. They are instead attempting a fishing expedition through withheld and clawed-back documents.

### C. The Securities Litigation Documents Are Irrelevant to this Case

Plaintiffs' lawsuit is limited to distributors in California. But RFP14 is not so limited. It instead seeks, without limitation, all documents "relating to the

39016174_2.docx

5  Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

classification of distributors as independent contractors" produced in the Securities Litigation. The Securities Litigation is not based on any decision to classify California distributors as independent contractors. Rather, it involves Flowers' independent distributor model, which Flowers implemented in 1983 to classify distributors as independent contractors, and centers on allegations that Flowers allegedly made numerous false statements and omissions when they referred to distributors and related risks. This case is limited to California distributors. But Flowers did not enter the California market until 2008, when it acquired Holsum and that company's independent contractor DSD network. (Exhibit A at 138:1-10.) RFP 14 is entirely disproportionate to the needs of this case.

As with RFP 14, RFP 15 is not limited to the issues in this case; namely, California distributors. It seeks logs identifying *thousands* of privileged documents withheld in the Securities Litigation. But it does so without regard to whether those documents are actually relevant to this case, *or even what discovery requests or negotiated search terms those documents were responsive to*. Plaintiffs are on an indiscriminate fishing expedition. The Securities Litigation is not based on any decision to classify California distributors as independent contractors. By seeking, without limitation, a catalogue of privileged documents from an unrelated case, they are casting a far wider net than permissible.

### D.  Request for Production No. 14 Is Overly Burdensome

Even assuming RFP 14 was intelligible and proportionate, it would be extremely burdensome for Defendants to respond to the request. Flowers produced approximately 31,377 documents totaling 363,294 pages in the Securities Litigation. (Tobin Decl. ¶ 3.) To comply with RFP 14, Defendants would have to analyze this voluminous production to identify which documents, if any, are "relating to the classification of distributors as independent contractors," as opposed to other allegations unique to the Securities Litigation. This would require substantial time and resources, only to locate documents which are irrelevant to the classification of

39016174_2.docx

6   Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

## V. PLAINTIFFS ARE ATTEMPTING TO INAPPROPRIATELY INVADE PRIVILEGE

RFP 14 specifically requests, by Bates range, those documents inadvertently produced and clawed back in the Securities Litigation. The clawed-back documents were prepared by Flowers' legal department in 2016, with input from outside counsel, and contain the impressions of both in-house and outside counsel regarding such litigation and other matters. (Exhibit C.) They are privileged and the definition of attorney work product. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The Court should not order their production on this basis alone.

Prior to propounding RFP 14 (which expressly requests privileged, albeit irrelevant, documents), Plaintiffs' counsel repeatedly clarified they were **not** seeking post-litigation attorney-client privileged documents or work product through discovery in *Goro* or this case. (Decl. of Shaun Markley (Doc. 130-2), ¶ 6.) Now, they reverse course and claim they *were* seeking post-litigation privileged documents and work product. They further claim RFP 6 triggered an obligation to provide a privilege log describing the Securities Litigation documents. **But Plaintiffs' counsel represented *in writing* they had sought no such documents in this case until they propounded RFP 14**. (Tobin Decl. ¶ 5; Exhibit B.) Plaintiffs cannot in good faith represent to the Court that RFP 6 sought privileged documents or work product. What it actually sought is anyone's guess, but Plaintiffs already represented it did **not** trigger the need to produce a privilege log.

## VI. DEFENDANTS DID NOT WAIVE PRIVILEGE BY PROVIDING A COURT-ORDERED PRIVILEGE LOG

In compliance with this Court's June 7, 2019 order (Doc. 73), Defendants provided a privilege log describing the two clawed-back documents from the Securities Litigation. (Exhibit C.) The cover page to the privilege log stated the log was being provided "[w]ithout waiving any objections and while maintaining that any

discovery such as that sought by [RFP Nos. 14 and 15] is objectionable…" (*Id.*)

Plaintiffs nonetheless argue Defendants' production of the privilege log somehow constitutes a waiver of privilege. They claim the log proves Defendants knew of responsive documents but withheld them without previously providing a log. But the two clawed-back documents identified in the privilege log are not responsive to RFP 6. They are also not "relating to the classification of distributors as independent contractors," whatever that may mean, and are therefore not responsive to RFP 14. Defendants explained this in an April 30, 2019 meet and confer letter, some 28 days before responses to RFP 14 were due. Defendants had no obligation to provide a privilege log in the first place. They have objected, from the beginning, that RFP Nos. 6 and 14 are broken and, even based on a generous reading of those requests, the two clawed-back documents were not responsive. If documents are not responsive to a request, or the request is not reasonably particular and it is impossible to determine what documents would be responsive, there is no obligation or way to provide a privilege log. Plaintiffs' "waiver" argument is a red herring.

## VII.  DEFENDANTS' "GOOD FAITH" AFFIRMATIVE DEFENSE DOES NOT IMPLIEDLY WAIVE PRIVILEGE

As a final attempt to invade the Defendants' privilege, Plaintiffs inappropriately assert that Defendants' good faith defenses waive the privilege over the disputed documents. Plaintiffs are wrong and have made no showing of waiver. Plaintiffs argue this Circuit applies a three-part test for implied waiver of privilege in this area. *United States v. Amlani*, 169 1189, 1195 (9th Cir. 1999). Plaintiffs then take a giant leap by arguing that Defendants put the "good faith belief, through the mental state of its senior executives at issue (3) such that Plaintiffs need to see what Flowers executives, including Mr. Rich, actually knew about the state of the law." (Dkt. No. 130-1 at p. 10, lines 3-7.) This is a gross mischaracterization.

/ / /

/ / /

39016174_2.docx

8    Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

### A. Third-Party Decisions Are Relevant to Defendants' "Good Faith Defense," Not What Flowers Executives Knew About the Law

Although Plaintiffs seek statutory penalties, the existence of a <u>good faith dispute</u> on whether Plaintiffs are subject to these statutes precludes a finding that Defendants acted with requisite scienter. The issue is not the mental state of Defendants' executives. Under the California statutes at issue, a good-faith dispute exists:

> [W]hen an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith will preclude a finding of a "good faith dispute."

Cal. Code Regs. tit. 8, § 13520; *Hurst v. Buczek Enters., Inc.*, 870 F. Supp 2d 810, 829 (N.D. Cal. 2012).

Defendants will prove at trial that Plaintiffs were properly classified as independent contractors. But even at this stage of the proceedings, it is clear Defendants did not willfully misclassify Plaintiffs, as shown by third-party judicial and administrative decisions concluding that Distributors are independent contractors under Flowers' distributorship model (and under similar models in the baking industry), IRS treatment of Distributors as independent contractors, previous litigation, and the ongoing efforts made by Flowers to maintain the independent-contractor business model.

The relevant inquiry is illustrated by *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sept. 3, 2015). In *Villalpando*, the court granted the defendants' summary judgment motion as to the section 226 claim, even after finding misclassification. 2015 WL 5179486 at *37. In doing so, the court observed that even though the drivers were misclassified, "[t]ruck drivers who owned their own trucks have been found to be independent contractors in a variety of contexts." *Id*. Due to such independent authority, the court found it was not unreasonable for the defendants to classify its drivers as independent contractors. *Id.*

9    Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS

39016174_2.docx

When evaluating good faith defenses, the trier of fact will look to independent third-party decisions upholding the independent contractor model. Because such decisions establish the defense, the mental state of Defendants' executives, let alone any post-litigation legal advice is irrelevant.

### B.   Plaintiffs Fail to Meet Their Burden to Show "Vital" Information

Even if any legal advice was at issue, which it is not, Plaintiffs have not shown any legal advice is "vital" to their opposition.  "Privileged communications do not become discoverable simply because they are related to issues raised in the litigation."  *Southern California Gas Co. v. Public Utilities Comm'n*, 784 P.2d 1373, 1381 (Cal.1990).  When the evidence in question is only "'one of several forms of indirect evidence' about an issue," there is no waiver.  *Hamilton v. Lumsden*, 93 F.3d 648, 653 (9th Cir. 1996) (per curiam) (quoting *Rockwell Int'l Corp. v. Superior Court*, 26 Cal.App.4th 1255, 1268 (1994) (quoting *Mitchell v.Superior Court*, 37 Cal.3d 591 (1984).

Plaintiff has broadly asserted implied waiver without explaining why any privileged information is "vital" to their opposition.  Even though not relevant, Plaintiffs do not even try to explain why the privileged information they seek to invade is vital or why the discovery they have already taken is inadequate.  Their implied waiver argument fails on this basis as well.

## VIII.   CONCLUSION

Based on the foregoing, Plaintiffs' Motion should be denied.

DATED:  June 24, 2019                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ *Frank L. Tobin*
         Frank L. Tobin
         Clint S. Engleson
         Attorneys for Defendants FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE LLC

39016174_2.docx

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 24, 2019.

By: /s/ *Frank L. Tobin*
Frank L. Tobin

39016174_2.docx

11   Case No. 18-CV-1190-JLS-JLB
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISPUTED DOCUMENTS AND FOR SANCTIONS