1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   DANIEL LUDLOW, et al.,                  Case No.:  18-cv-01190-JLS-JLB

12                          Plaintiffs,      **ORDER:**

13   v.                                      **(1) DENYING PLAINTIFFS'**
                                             **MOTION TO COMPEL; AND**
14   FLOWERS FOODS, INC., et al.,

15                          Defendants.      **(2) DENYING AS MOOT**
                                             **DEFENDANTS' MOTION FOR**
16                                           **PROTECTIVE ORDER**

17

18

19                                           **[ECF Nos. 74, 75]**

20

21        Before the Court is Defendants' Motion for Protective Order filed in *Ludlow v.*

22   *Flowers Foods, Inc.*, 18-cv-01190-JLS-JLB ("*Ludlow*").  (*Ludlow* ECF No. 74.)

23   Defendants request that the Court issue a protective order barring Plaintiffs from seeking

24   documents in response to *Ludlow* Requests for Production ("RFP") Nos. 14 and 15.  (*Id.*)

25        Also before the Court is Plaintiffs' Motion to Compel, filed in both *Ludlow* and the

26   related case, *Goro v. Flowers Foods, Inc.*, 17-cv-2580-JLS-JLB ("*Goro*").  (*Goro* ECF No.

27   130; *Ludlow* ECF No. 75.)  Plaintiffs' Motion to Compel seeks an order compelling

28   Defendants to produce two specific documents in response to RFP Nos. 3, 5, 18, and 19

propounded in *Goro* and RFP Nos. 6, 14, and 15 propounded in *Ludlow*.[1]  For the reasons set forth below, Plaintiffs' Motion to Compel is **DENIED**, and Defendants' Motion for Protective Order is **DENIED as moot**.

## I.  BACKGROUND

Both cases center around Plaintiffs' challenge to their employment classification and allegation that Defendants willfully misclassified them and their distributor co-workers as independent contractors rather than employees.  In *Goro*, Plaintiffs allege violations of California law stemming from their alleged misclassification.  (*See Goro* ECF No. 95 ¶¶ 28–74.)  In *Ludlow*, Plaintiffs likewise allege violations under California law stemming from their alleged misclassification, in addition to the Fair Labor Standards Act ("FLSA").  (*See Ludlow* ECF No. 56 ¶¶ 63–125.)  In response to Plaintiffs' claims in both cases, Defendants deny misclassification and assert a good faith affirmative defense, arguing that they "acted in good faith and had reasonable grounds for believing that they did not violate" California or federal law.  (*Goro* ECF No. 98 at 15–16; *Ludlow* ECF No. 59 at 23, 25.)

The parties' current dispute involves the discovery of information pertaining to Defendants' initial, and any subsequent, decision to classify the distributor Plaintiffs as independent contractors.  Specifically, Plaintiffs seek two documents that Flowers Foods, Inc. ("Flowers") inadvertently produced and then clawed back in a securities class action currently pending in the Middle District of Georgia, where Flowers is a named defendant.[2]  Plaintiffs believe that these documents contain information related to Defendants' decision to classify California distributors as independent contractors, and by extension, Defendants' good faith affirmative defense.  Defendants here object to producing the

---

[1]     Because the parties have agreed to share discovery between the two cases, Plaintiffs' motion seeks to compel Defendants to produce documents in response to RFPs propounded in both cases.

[2]     *In re Flowers Foods, Inc. Securities Litigation*, Case No. 7:16-cv-222 (WLS) (M.D. Ga.).  The plaintiffs in this securities class action allege that Flowers knowingly misclassified its distributors as independent contractors, creating inflated stock prices between 2013 and 2016.  (*See Ludlow* ECF No. 82-9.)

clawed-back documents ("Disputed Documents") and describe them as privileged "quarterly meeting materials packets prepared in anticipation of litigation and reflecting the mental impressions, opinions[,] and legal advice, including legal strategy, of Flowers attorneys regarding known or anticipated litigation." (*Goro* ECF No. 133 at 6.) After learning of the Disputed Documents' existence on April 25, 2019, via a dispute on the securities class action docket, Plaintiffs brought this dispute to the Court's attention on May 8, 2019. (*Ludlow* ECF No. 69.)

On May 10, 2019, the Court held a telephonic Discovery Conference with counsel for the parties. (*Ludlow* ECF No. 70.) During the Conference, Plaintiffs argued that the Disputed Documents were responsive to *Goro* RFP Nos. 3 and 5 (responded to on May 2, 2018) and Nos. 18 and 19 (responded to on August 15, 2018), as well as *Ludlow* RFP No. 6 (responded to on April 15, 2019), yet Defendants neither produced nor logged them on a privilege log. Plaintiffs further argued that because Defendants had not properly and timely asserted attorney–client privilege through a privilege log, they waived privilege as to the Disputed Documents. Defendants countered that Plaintiffs' dispute was untimely with respect to the *Goro* requests, for Defendants had objected to those requests and Plaintiffs never moved to compel further responses. Defendants further argued that because the Disputed Documents were not responsive to any of Plaintiffs' RFPs, Defendants were not obligated to log them on a privilege log, and therefore did not waive privilege.

In addressing Defendants' argument that the Disputed Documents were not responsive to Plaintiffs' RFPs, the Court raised the possibility of *in camera* review, but Defendants were not amenable to this approach. The Court also echoed Defendants' concerns about the timeliness of the dispute with respect to the *Goro* RFPs, as discovery in *Goro* had closed on October 4, 2018. (*See Goro* ECF No. 59.) In response, Plaintiffs argued that the Disputed Documents were also responsive to *Ludlow* RFP No. 6, to which the parties had not yet completed their meet and confer efforts. Plaintiffs also stated that they had recently propounded RFP Nos. 14 and 15 in *Ludlow*, which specifically identified the Disputed Documents by bates numbers, so neither responsiveness nor timeliness would

pose a bar to those RFPs. Because the parties had not finished their meet and confer efforts with respect to *Ludlow* RFP No. 6, and Defendants' responses to *Ludlow* RFP Nos. 14 and 15 were not yet due, the Court continued the Conference. (*See Ludlow* ECF No. 70.)

On June 6, 2019, the Court held the continued, telephonic Discovery Conference. (*Ludlow* ECF No. 71.) During the Conference, Plaintiffs informed the Court that Defendants had continued to stand on their objections to *Ludlow* RFP No. 6 and served only objections in response to *Ludlow* RFP Nos. 14 and 15, including attorney–client privilege objections, but did not produce a privilege log. Defendants contended that because *Ludlow* RFP Nos. 14 and 15 were "broken" requests—irrelevant, overbroad, and disproportional to the needs of the case—Defendants were not obligated to produce a privilege log despite their privilege objections.

With the parties at an impasse, the Court determined that a briefing schedule for a motion to compel was necessary. The Court informed Defendants that it believed their obligation to produce a privilege log had been triggered with respect to *Ludlow* RFP Nos. 14 and 15, as those RFPs specifically identified the Disputed Documents, and Defendants' objections included privilege objections. The Court directed Defendants to either produce a privilege log or move for a protective order with authority setting forth they were not required to do so. The Court also reasoned that it may need to review the Disputed Documents *in camera* to determine whether they are responsive to the *Goro* RFPs and *Ludlow* RFP No. 6. However, the Court assured Defendants it would not review the documents if it determined that *in camera* review was improper or unnecessary. The Court invited Defendants to also move for a protective order if they believed it would be improper for the Court to review attorney–client privileged documents *in camera*.

Following the Conference, the Court issued a Briefing Schedule which instructed Defendants to either: (1) log the Disputed Documents on a privilege log and submit them for *in camera* review; or (2) move for a protective order setting forth why they should not be required to do either. (*Goro* ECF No. 129; *Ludlow* ECF No. 73.) If Defendants did not move for a protective order with respect to producing a privilege log, a privilege log

identifying the Disputed Documents was to be served on Plaintiffs no later than June 12, 2019. (*Id.*) The Court also set a deadline for Plaintiffs to file a motion to compel with respect to the RFPs at issue. (*Id.*)

On June 12, 2019, Defendants served a privilege log on Plaintiffs listing the two clawed-back documents, that is, the Disputed Documents. (*Ludlow* ECF No. 74-2 ¶ 7.) On June 17, 2019, Defendants filed the instant Motion for Protective Order. (*Ludlow* ECF No. 74.) Defendants, however, do not request a protective order based on an argument that a privilege log was not necessary or that it would be improper for the Court to review the Disputed Documents *in camera*, as contemplated during the Conference and in the Court's Briefing Schedule. Instead, Defendants argue that they should not be forced to produce the Disputed Documents because the documents are privileged and irrelevant, and *Ludlow* RFP Nos. 14 and 15 are unduly burdensome and disproportionate to the needs of the case. (*See id.*)

On June 17, 2019, Plaintiffs filed the instant Motion to Compel in both cases. (*Goro* ECF No. 130; *Ludlow* ECF No. 75.) On June 24, 2019, Defendants filed separate oppositions to the motion in each case. (*Goro* ECF No. 133; *Ludlow* ECF No. 85.) On June 28, 2019, Plaintiffs filed separate replies to Defendants' oppositions. (*Goro* ECF No. 134; *Ludlow* ECF No. 89.)

## II.    **LEGAL STANDARD**

A party is entitled to seek discovery of any non-privileged matter that is relevant to his claims and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 34 further provides that a party may serve requests for documents or tangible things on any other party that relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 34(a). The propounding party may move to compel a response if a party fails to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a).

*///*

*///*

"The party seeking to compel discovery has the burden of establishing that his request satisfies the relevancy requirements of Rule 26(b)(1)." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). District courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining[,] or supporting its objections." *Bryant*, 2009 WL 1390794, at *1 (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).

## III.   DISCUSSION

By this motion, Plaintiffs seek an order compelling Defendants to produce the "Disputed Documents,"[3] and further ask the Court to grant sanctions in the form of striking Defendants' "good faith" affirmative defenses. (*Goro* ECF No. 130-1 at 11; *Ludlow* ECF No. 75-1 at 11.) Plaintiffs also request the Court to compel Defendants to "identify any other withheld responsive documents that Plaintiffs were not able to independently identify." (*Id.*) In their motion, Plaintiffs identify seven document requests to which they

---

[3]     As an initial matter, Plaintiffs fail to clearly state what documents they seek through their Motion to Compel. Plaintiffs move to compel "Disputed Documents," which they do not ever actually define, but which they refer to initially as "documents circulated among [senior] executives that speak to [Defendants'] knowledge of the law regarding distributor classification." (*Goro* ECF No. 130-1 at 2; *Ludlow* ECF No. 75-1 at 2.) Plaintiffs later describe the Disputed Documents as "documents from a discovery dispute in a nation-wide securities class action," and "Flowers' 2016 'Review of Operations.'" (*Id.* at 4, 6.) Plaintiffs more clearly indicate what they mean by Disputed Documents when they state that "the Disputed Documents consist of roughly 250 pages making up two reports," a reference to the two clawed-back documents from the securities class action. (*Goro* ECF No. 130-1 at 10; *Ludlow* ECF No. 75-1 at 9.) Because it is Plaintiffs' burden to clearly set forth what relief they seek through their motion, the Court will only analyze each RFP with respect to whether Defendants must produce the two documents clawed back in the securities class action. *See* Fed. R. Civ. P. 7(b)(1) (requiring a party to state with particularity the grounds for a court order and the relief sought).

believe the Disputed Documents are responsive. Plaintiffs, however, do not address the seven requests individually. Instead, they focus almost exclusively on the relevance of the Disputed Documents in general. Because even relevant documents need only be produced when responsive to requests for production, the Court addresses each request in turn.

## A. *Goro* **RFP No. 5**

Plaintiffs identify *Goro* RFP No. 5 as a request to which they believe the Disputed Documents are responsive. (*Goro* ECF No. 130-1 at 6.) In response to this request Defendants did not produce the Disputed Documents or log them on a privilege log despite their privilege objections. Defendants argue that Plaintiffs' Motion to Compel with respect to *Goro* RFP No. 5 is untimely. (*Goro* ECF No. 133 at 6.)

The Court agrees with Defendants and finds that Plaintiffs' Motion to Compel is time-barred with respect to RFP No. 5. Defendants responded to RFP No. 5 on May 2, 2018. (*Goro* ECF No. 130-2 ¶ 3.) In their response, Defendants "provided objections only," and did not produce any documents. (*Goro* ECF No. 133 at 6; *see Goro* ECF No. 130-2 ¶ 3.) On June 21, 2018, the Court held a Discovery Conference where it addressed, *inter alia*, RFP No. 5. (*Goro* ECF Nos. 40; 133-1 ¶ 3.) After the Conference, the Court issued a Briefing Schedule for Plaintiffs to file a motion to compel. (*Goro* ECF No. 41.) On July 5, 2019, Plaintiff brought a Motion to Compel, but the motion did not include RFP No. 5. (*See Goro* ECF No. 43.) Subsequently, fact discovery in this case closed, after several extensions, on October 4, 2018. (*Goro* ECF No. 59.)

During the May 10 and June 6, 2019 Discovery Conferences, the Court advised Plaintiffs that their dispute would not be timely with respect to any RFPs to which Defendants objected in their entirety and about which Plaintiffs never formally moved to compel responses. RFP No. 5 is one such RFP. Defendants never produced any documents in response to RFP No. 5 and stood on their objections. Moreover, Plaintiffs had an opportunity to include RFP No. 5 in their July 5, 2018 Motion to Compel, yet chose not to. Plaintiffs argue that "no local or chambers rule addresses compelling unknown[,] withheld documents that were never logged or made known to another party." (*Goro* ECF No. 130-

1 at 5.) However, the fact that Plaintiffs did not have knowledge of the Disputed
Documents' existence until April 25, 2019 is immaterial because Defendants objected to
RFP No. 5 in its entirety and never produced any documents in response. Plaintiffs chose
not to include RFP No. 5 in their July 5, 2018 Motion to Compel, and the Court will not
entertain such a motion now, over a year after discovery in *Goro* closed.

Accordingly, because Plaintiffs' Motion to Compel is untimely with respect to *Goro*
RFP No. 5, Plaintiffs' Motion to Compel is **DENIED** as to this RFP.

**B.** **Goro** **RFP Nos. 3, 18, and 19**

1. Timeliness

Plaintiffs also identify *Goro* RFP Nos. 3, 18, and 19 as requests to which they believe
the Disputed Documents are responsive. (*Goro* ECF No. 130-1 at 6.) Defendants did not
produce the documents or log them on a privilege log in response to RFPs 3, 18, and 19.
Defendants again argue that Plaintiffs' dispute with respect to these three *Goro* RFPs is
untimely. (*Goro* ECF No. 133 at 6.)

The Court disagrees with Defendants and finds that Plaintiffs' Motion to Compel
with respect to these RFPs is not time-barred. Defendants responded to RFP No. 3 on May
2, 2018, and agreed to produce "relevant, non-privileged documents in [their] custody or
control that may be responsive to [RFP No. 3] to the extent [it] pertains to Plaintiffs,"
notwithstanding their objections. (*Goro* ECF No. 130-2 ¶ 3; 130-5 at 4.) Defendants
produced "two documents it understood to be responsive" to RFP No. 3: the Distributor
Agreement and the Franchise Disclosure Document. (*Goro* ECF No. 133 at 6.) Plaintiffs
never brought any dispute concerning RFP No. 3 to the Court's attention informally during
a discovery conference or moved to compel further responses.

Defendants responded to RFP Nos. 18 and 19 on August 18, 2018, with objections
only. (*Goro* ECF Nos. 130-2 ¶ 3; 133 at 6.) On September 28, 2018, the Court held a
telephonic, counsel-only Discovery Conference wherein it addressed the parties' dispute
with respect to RFP Nos. 18 and 19, among many other disputes. (*See Goro* ECF No. 58.)
During the Conference, and in the parties' joint discovery statement lodged with the Court,

Defendants argued that RFP Nos. 18 and 19 were duplicative of RFP No. 3 because they "seek the same set of documents." (*Goro* ECF No. 133-4 at 5 (emphasis omitted).) Plaintiffs did not move to compel responses to RFP Nos. 18 or 19 following the Discovery Conference in their October 22, 2018 Motion to Compel. (*See Goro* ECF No. 64.) Plaintiffs, however, now argue that because Defendants promised to produce documents responsive to RFP No. 3, "[they] did not need to compel" responses to RFP Nos. 18 and 19. (*Goro* ECF No. 130-1 at 9.)

Because Defendants took the position that RFP Nos. 18 and 19 were duplicative of RFP No. 3, and Defendants produced documents in response to RFP No. 3, Defendants cannot fairly argue that they produced only objections in response to RFP Nos. 18 or 19. For purposes of this dispute, the Court therefore finds that Defendants produced responses, and not solely objections, with respect to RFP Nos. 18 and 19.

As addressed above with respect to RFP No. 5, Plaintiffs' dispute as to that request is untimely because Plaintiffs, in essence, abandoned the request; Defendants produced only objections, stood on those objections, and Plaintiffs never moved to compel further responses. In contrast, Defendants produced documents in response to RFP No. 3, and by extension RFP Nos. 18 and 19, and Plaintiffs relied on the completeness of that production when choosing not to include them in their October 22, 2018 Motion to Compel. Plaintiffs' argument that they could not have moved to compel Defendants to produce the Disputed Documents before they knew of their existence is persuasive in this context. Therefore, with respect to RFP Nos. 3, 18, and 19, the Court finds that the event giving rise to the instant discovery dispute, and therefore the event controlling the timeliness of Plaintiffs' Motion to Compel with respect to these RFPs, is Plaintiffs' discovery of the Disputed Documents.

///

///

///

///

Plaintiffs learned of the Disputed Documents' existence on April 25, 2019, and brought the issue to the Court promptly on May 8, 2019, after failed meet and confer efforts. (*Goro* ECF No. 130-2 ¶ 11; *Ludlow* ECF No. 69.) May 8 is within 30 days of April 25, so the dispute is timely.[4] *See* J. Burkhardt Civ. Chambers R. § IV.A. ("Any discovery disputes must be brought to the attention of the Court no later than 30 calendar days after the date upon which the event giving rise to the dispute occurred.").

Accordingly, the Court finds that Plaintiffs' Motion to Compel with respect to RFP Nos. 3, 18, and 19 is timely. The Court therefore addresses Defendants' objections to these RFPs.[5]

### 2.    Defendants' Objections

#### a.    *RFP No. 18*

*Goro* RFP No. 18 requests "[a]ll DOCUMENTS and ESI reflecting opinions regarding the proper classification of distributors as employees versus independent contractors." (*Goro* ECF No. 130-7 at 3.) Defendants objected to this request on the grounds that, *inter alia*, it is vague and ambiguous, unintelligible, overbroad as to time and scope, and unduly burdensome. (*Id.*) Defendants reassert those objections here and further argue that RFP No. 18 is "broken" and fails to meet Federal Rule of Civil Procedure 34's particularity requirement. (*Goro* ECF No. 133 at 4, 8.) Plaintiffs in reply argue generally

--------------------------------------------

[4]    Plaintiffs contend that the event giving rise to this discovery dispute is the parties' failed meet and confer efforts on April 30, 2019. (*Goro* ECF No. 130-2 ¶ 11.) The Court disagrees and views the event giving rise to this dispute as Plaintiffs' discovery of the Disputed Documents on April 25, 2019, five days earlier. This distinction is immaterial, however, for the dispute is timely with respect to *Goro* RFP Nos. 3, 18, and 19 either way.

[5]    Defendants dispute the relevance of the Disputed Documents (*Goro* ECF No. 133 at 7), but they do not argue that *Goro* RFP Nos. 3, 18, and 19 seek irrelevant information. The Court finds that Defendants' relevancy objections made only in their responses to RFPs 3 and 19, if not abandoned, are overruled. *See SolarCity Corp. v. Doria*, No. 16cv3085-JAH (RBB), 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) ("If a party fails to continue to assert an objection in opposition to a motion to compel, courts deem the objection waived."). These requests seek relevant information.

that their RFPs are not unintelligible and simply "seek documents reflecting the central business decision relevant to this case—classifying California distributors as independent contractors." (*Goro* ECF No. 134 at 3.) Plaintiffs contend that Defendants cannot now claim that "the very RFPs they responded to and agreed to produce are allegedly impossible to understand." (*Id.*)

Federal Rule of Civil Procedure 34 requires that a document request "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). "The test regarding 'particularity' is relative . . . and necessarily turns on whether the [requesting party's] degree of knowledge would be such that she can designate, identify[,] and enumerate with precision the documents to be produced." *Krause v. Nev. Mut. Ins. Co.*, No. 2:12–cv–00342–JCM–CWH, 2017 WL 496936, at *5 (D. Nev. Feb. 6, 2014) (citing 8B Wright, et al., Federal Practice and Procedure § 2211 (3d ed. 2010)). Rule 34, however, "does not require the impossible," and a "generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted." *Id.* (quoting 8B Wright, et al., *supra*, § 2211). Nonetheless, "'all-encompassing demands' that do not allow a reasonable person to ascertain which documents are required do not meet" Rule 34's particularity requirement. *Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 WL 6735710, at *13 (S.D. Cal. Dec. 21, 2018) (quoting *In re Asbestos Prod. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009)).

RFP No. 18, which broadly requests all documents "reflecting opinions" regarding the proper classification of distributors, does not meet Rule 34's particularity requirement. The request as phrased does not provide Defendants with adequate direction as to what documents they must search for in response.[6] Plaintiffs here hypothesize that documents

---

[6] Compare the language of RFP No. 18 ("[a]ll DOCUMENTS and ESI reflecting opinions regarding the proper classification of distributors as employees versus independent contractors" to the language of RFP No. 3 ("[a]ll DOCUMENTS and ESI that relate to the initial decision and any subsequent reconsideration of the decision to classify

responsive to their RFPs could be documents created from "a single internal meeting" or "a months-long process involving teams of employees that undergoes regular review and update," but they "have no way to know." (*Goro* ECF No. 134 at 3–4.) But the same can be said for Defendants. It would be difficult and burdensome for Defendants to determine, without further particularity, what types of documents exist that would be responsive to this request or the types of documents that Plaintiffs attempt to capture. As to Plaintiffs' argument that Defendants produced documents in response to RFP No. 3, and therefore cannot claim that their requests are "impossible to understand," Defendants here identified and produced only two documents that were responsive to RFP No. 3, and by extension, RFP No. 18. (*Goro* ECF No. 133 at 7.) The Court, however, does not share the view that RFP No. 18 is duplicative of RFP No. 3 in the sense that it is co-extensive with RFP No. 3.[7]

Moreover, Plaintiffs' request is not limited temporally or geographically. *See Sanchez Ritchie v. Sempra Energy*, No. 10cv1513-CAB(KSC), 2015 WL 12914435, at *2 (S.D. Cal. Mar. 20, 2015) ("Generally, a discovery request without any temporal or other reasonable limitation is objectionable on its face as overly broad."). The *Goro* Plaintiffs

---

Plaintiffs and similarly situated individuals in California as not employees." A decision is an action, an event, tied to a point in time. A party can search for and review documents to determine whether the documents relate to an initial decision or a reconsideration of that decision. It is unreasonably more difficult to expect a party to search for and determine which documents do and do not "reflect" any "opinions" on whether that decision was or was not proper.

[7]    *Goro* RFP No. 3 requests "[a]ll DOCUMENTS and ESI that relate to the initial decision and any subsequent reconsideration of the decision to classify Plaintiffs and similarly situated individuals in California as not employees." (*Goro* ECF No. 130-5 at 3.) *Goro* RFP No. 18 dissimilarly requests "[a]ll DOCUMENTS and ESI reflecting opinions regarding the proper classification of distributors as employees versus independent contractors." (*Goro* ECF No. 130-7 at 3.)

are California employees who began working for Defendants as distributors in 2013.[8] (*Goro* ECF No. 95 ¶¶ 6–11.) However, Defendants' business is not limited to California, and Defendants did not enter the "California market" until 2008. (*Goro* ECF No. 133-2 at 3.) RFP No. 18, which requests *all documents* reflecting opinions regarding the proper classification of unspecified distributors without a timeframe is therefore overboard. In light of RFP No. 18's lack of particularity, the Court declines to rewrite the request to include appropriate geographical or temporal limitations.

Defendants' objections to *Goro* RFP No. 18 are sustained. Accordingly, Plaintiffs' Motion to Compel with respect to *Goro* RFP No. 18 is **DENIED**.

b. *RFP Nos. 3 and 19*

*Goro* RFP No. 3 requests "[a]ll DOCUMENTS and ESI that relate to the initial decision and any subsequent reconsideration of the decision to classify Plaintiffs and similarly situated individuals in California as not employees." (*Goro* ECF No. 130-5 at 3.) Defendants responded to RFP No. 3 with a multitude of objections: vague and ambiguous; vague as to time; overbroad; unintelligible; calls for a legal conclusion; seeks irrelevant information; assumes facts; seeks confidential, proprietary, and trade secret information; seeks information protected by the attorney–client privilege and/or work product doctrine; and seeks information protected by the right to privacy under the California Constitution. (*Id.*) As previously mentioned, notwithstanding these objections, Defendants also responded by stating that they would "produce relevant, non-privileged documents in [their] custody or control that may be responsive to [RFP No. 3] to the extent [it] pertains to Plaintiffs."[9] (*Id.*)

---

[8] Plaintiffs also assert a cause of action under the California Private Attorneys General Act ("PAGA") on behalf of themselves and other similarly situated California distributors. (*Goro* ECF No. 95 ¶¶ 67–71.)

[9] The Court notes that courts in this District have found conditional responses to discovery requests, i.e., using the phrase "subject to and without waiving the foregoing objections," to be "improper and ultimately hav[ing] the effect of waiving the objections to the discovery requests." *Herrera v. AllianceOne Receivable Mgmt., Inc.*, No. 14-CV-

18-cv-01190-JLS-JLB

*Goro* RFP No. 19 requests "[a]ll DOCUMENTS and ESI relating to any decision or subsequent reconsideration of the decision to classify distributors operating under a Distributor Agreement as independent contractors." (*Goro* ECF No. 130-7 at 4.) Defendants likewise responded to RFP No. 19 with a multitude of objections: impermissibly duplicative or [RFP] No. 3; vague and ambiguous; unintelligible; overbroad as to time and scope; unduly burdensome; calls for a legal conclusion; seeks irrelevant information; assumes facts; seeks confidential, proprietary, and trade secret information; seeks information protected by the attorney–client privilege and/or work product doctrine; and seeks private information protected by the right to privacy under the California Constitution. (*Id.*)

In their opposition, Defendants argue that RFP Nos. 3 and 19 are objectionable on the same grounds as RFP No. 18. Defendants argue that these requests are "vague and disproportionate to the needs of the case" and they do not meet Rule 34's reasonable particularity requirement because "[t]hey are sweeping, all-encompassing requests that are not tailored to the claims or defenses in this case." (*Goro* ECF No. 133 at 8.) Defendants further argue that RFP No. 19 does not contain any temporal or geographical limitations. (*Id.* at 9.)

///

///

_____

1844-BTM (WVG), 2016 WL 1182751, at *3 (S.D. Cal. Mar. 28, 2016). However, "if the response puts the requesting party on notice that the responding party is withholding certain documents, that objection is preserved so long as the requesting party is not left guessing as to what documents are being withheld." *Del Socorro Quintero Perez v. United States*, No. 13cv1417-WQH-BGS, 2016 WL 304877, at *2 (S.D. Cal. Jan. 25, 2016). Here, the remaining language after Defendants' conditional response is "Defendant will produce relevant, non-privileged documents in its custody or control that may be responsive to this request to the extent this request pertains to Plaintiffs." (*Goro* ECF No. 130-5 at 4.) The Court does not find this response confusing and would sufficiently put Plaintiffs on notice that Defendants were not withholding any non-privileged, responsive documents. *See Del Scorro*, 2016 WL 304877, at *2.

The Court finds that RFP No. 3, even though it contains the phrase "relating to," meets Rule 34's particularity requirement. Unlike RFP No. 18, RFP No. 3 is not so vague that it would not allow Defendants to determine which documents in their control Plaintiffs seek. Although RFP No. 3 does not contain any temporal limitations, the request asks for documents relating to the classification of Plaintiffs and similarly situated individuals in California. Plaintiffs began working for Defendants in 2013 and Defendants entered the California market in 2008. The substance of request itself, therefore, contains a temporal limitation. Defendants could therefore narrow this request to an appropriate, and not unduly burdensome, timeframe. *See Sanchez Ritchie*, 2015 WL 12914435, at *2 ("Despite the overly broad nature of a [discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." (alterations in original)). Therefore, Defendants' objections to RFP No. 3 that they reassert in their opposition, with the exception of attorney–client privilege and attorney work product objections, are overruled.

As to RFP No. 19, the Court likewise finds that it is not vague or ambiguous and meets Rule 34's particularity requirement. However, the request is overbroad and calls for all documents relating to any decision or subsequent reconsideration of the decision to classify unspecified distributors operating under a Distributor Agreement as independent contractors during an unspecified timeframe. Unlike RFP No. 3, the request is not tailored to Plaintiffs or California distributors, so Defendants could not narrow this request to a particular timeframe without further guidance. The Court declines to rewrite the request for Plaintiffs.[10] Defendants' objections to RFP No. 19 are therefore sustained. Accordingly, Plaintiffs' Motion to Compel with respect to *Goro* RFP No. 19 is **DENIED**. ///

_____

[10]    In any event, if the Court were to rewrite RFP No. 19 to include geographical or temporal limitations, it would capture the same documents as RFP No. 3. With limitations, the Court agrees that RFP No. 19 is duplicative of RFP No. 3.

### 3.    Disputed Documents' Responsiveness to *Goro* RFP No. 3

####    a.    *Determination of Responsiveness Without* In Camera *Review*

The Court turns next to whether the Disputed Documents are responsive to RFP No. 3.  As previously stated, Defendants describe the Disputed Documents as "quarterly meeting materials packets from 2016 prepared with the involvement of counsel and circulated among client personnel, with redacted portions prepared by Flowers attorneys in anticipation of litigation and reflecting the mental impressions, opinions[,] and legal advice, including legal strategy, of Flowers attorneys regarding known or anticipated litigation." (*Goro* ECF No. 133 at 6.)  Plaintiffs discovered the existence of the Disputed Documents on April 25, 2019, by reviewing the filings on the docket in the securities class action. (*Goro* ECF No. 130-2 ¶ 5.)  In the securities class action, Flowers inadvertently produced and then sought to claw back the Disputed Documents, which the securities plaintiffs describe as "documents related to the status of, and future steps in, the [distributor] misclassification lawsuits." (*Goro* ECF No. 130-17 at 3.)  The inadvertent production led to a dispute between the securities parties, and ultimately a motion to compel, concerning whether Flowers was allowed to claw back the documents. (*See Goro* ECF No. 130-15.)  As the securities class action is stayed pending possible settlement, the court has yet to rule on the securities parties' dispute.

Here, Plaintiffs argue that the Disputed Documents are "surely relevant and responsive" to RFP No. 3 because they "contain opinions, legal advice, and strategy about pending/anticipated misclassification claims in California." (*Goro* ECF No. 130-1 at 7.) Plaintiffs base their assessment of the documents' responsiveness solely on the descriptions of the documents made by the securities plaintiffs in their motion to compel the clawed-back documents. (*See Goro* ECF No. 130-2 ¶ 7.)  Plaintiffs further argue that because the documents are responsive, and Defendants did not timely assert their attorney–client privilege objections on a privilege log, Defendants have waived privilege. (*Goro* ECF No. 130-1 at 9–10.)

///

In their opposition, Defendants argue that the Disputed Documents are not responsive to *Goro* RFP No. 3, or any of the *Goro* RFPs at issue, because the "documents have nothing to do with any decision to classify California distributors as independent contractors." (*Goro* ECF No. 133 at 7.) Defendants assert that the "documents were prepared by Flowers' legal department in 2016, with input from outside counsel, and contain the impressions of both in-house and outside counsel regarding litigation and other matters."[11] (*Id.*) Plaintiffs provide no argument regarding the responsiveness of the Disputed Documents in reply.

In their arguments, Plaintiffs gloss over whether the Disputed Documents are actually responsive to any of their specific RFPs and focus almost exclusively on the relevance of the documents. Plaintiffs have not reviewed the Disputed Documents, yet urge the Court that the documents are "surely" responsive based on their understanding of the securities plaintiffs' characterization of the documents. Again, the securities plaintiffs describe the Disputed Documents as "documents related to the status of, and future steps in, the [distributor] misclassification lawsuits." (*Goro* ECF No. 130-17 at 3.) Plaintiffs here highlight that the securities plaintiffs disputed the claw back of the documents in part because "the documents speak to Flowers' state of mind regarding distributors' classification and whether Flowers believed it was in fact in compliance with the law as it relates to this classification." (*Goro* ECF No. 130-2 ¶ 7.) However, after reviewing the securities plaintiffs' motion to compel (*Goro* ECF No. 130-15), the Court finds that is does not shed any light on what topics the Disputed Documents specifically cover. Although

---

[11] Defendants also argue that the Disputed Documents are not responsive because of the parties' understanding that Plaintiffs were not seeking "post-litigation work product and attorney–client privileged materials." (*Goro* ECF No. 133 at 3.) Plaintiffs dispute Defendants' characterization of the parties' understanding. (*Goro* ECF No. 134 at 3.) The Court need not address this argument because, as detailed below, it finds that the Disputed Documents are not responsive to RFP No. 3 regardless of any understanding of the parties with respect to the treatment of post-litigation work product.

the securities plaintiffs do seem to argue that the Disputed Documents contain information that would help them rebut Flowers' arguments that it did not knowingly or intentionally misclassify its distributors, the motion is redacted as to specifics of the Disputed Documents and consists almost entirely of case law from the Eleventh Circuit and its district courts. The motion is not helpful in determining whether the Disputed Documents "relate to the initial decision and any subsequent reconsideration to classify Plaintiffs and similarly situated individuals in California as not employees," as RFP No. 3 requests.

In a footnote, Plaintiffs posit that because there were two California distributor misclassification cases pending in 2016 when the Disputed Documents were created, "[d]iscussion of these cases would be included." (*Goro* ECF No. 130-1 at 7 n.5.) However, this is speculation based solely on the year that the Disputed Documents were created. Additionally, even if "the status of, and future steps in" these two California distributor misclassification cases are included in the Disputed Documents, that would not affect this Court's determination of whether the documents are responsive to RFP No. 3.

On the other hand, as noted above, Defendants, who are familiar with and have reviewed the Disputed Documents, represent that the documents are not responsive to RFP No. 3 because they "have nothing to do with any decision to classify *California* distributors as independent contractors." (*Goro* ECF No. 133 at 7 (emphasis added).) The only true description of the Disputed Documents by the securities plaintiffs that this Court has is that they are "documents related to the status of, and future steps in, the [distributor] misclassification lawsuits." (*Goro* ECF No. 130-17 at 3.)

Civil litigation under our judicial system operates first on an honor system. Each party is responsible for conducting its own search of its own documents for responsive material, and Courts only intercede when there is an indication of a breach of this responsibility. *See, e.g.*, *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 242 F.R.D. 362, 384 (E.D. Texas 2007), *reversed in part on other grounds by* 560 F.3d 1291 (Fed. Cir. 2009). Plaintiffs assert their belief that the Disputed Documents are responsive to their discovery requests, but nothing they put forward is sufficient to call into doubt the

truthfulness of Defendants unequivocal representation that they are not. Absent some showing to the contrary, the Court accepts Defendants' representation and presumes that they have satisfied their obligation to produce responsive documents.

### b. *Availability of* In Camera *Review to Determine Responsiveness*

Under other circumstances, even without more of a showing by Plaintiffs on the issue of potential responsiveness, the Court might consider conducting an *in camera* review of the Disputed Documents to determine definitively whether the documents are responsive to RFP No. 3. However, because Defendants are also asserting attorney–client and work product privilege as to these documents, and because of the unique interplay with California law, the Court declines to conduct such an *in camera* review here.

With respect to the *Goro* case, the Court has subject matter jurisdiction based on diversity, so the Court must apply California law with respect to substantive matters of attorney–client privilege in *Goro*. Fed. R. Evid. 501; *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."). Under California Evidence Code § 915, with exceptions not applicable here, a court is prohibited from reviewing documents protected by the attorney–client privilege *in camera* for the purpose of determining whether the documents are in fact privileged. Cal. Evid. Code § 915(a). A split exists among districts in the Ninth Circuit as to whether § 915 is procedural or substantive, but courts in this District have found § 915 to be a substantive law that governs in a diversity action. *E.g.*, *Lincoln Gen. Ins. Co. v. Ryan Mercaldo LLP*, No.: 13cv2192-W (DHB), 2015 WL 12672143, at *5 (S.D. Cal. July 31, 2015); *Sanchez Ritchie*, 2015 WL 12912030, at *14; *Garcia v. Progressive Choice Ins. Co.*, No. 11–CV–466–BEN (NLS), 2012 WL 3113172, at *2 (S.D. Cal. July 30, 2012); *see generally Laub v. Horbaczewski*, No. LA CV17-06210 JAK (KS), 2019 WL 1744846, at *4–6 (C.D. Cal. Feb. 8, 2019) (discussing the applicability of § 915 to federal courts sitting in diversity).

Here, Plaintiffs do not dispute that the Disputed Documents are protected by the attorney–client privilege. Instead, and as discussed below, Plaintiffs argue on two different

grounds that Defendants have waived attorney–client privilege. (*See Goro* ECF No. 130-1 at 9–11.) Under California law, the attorney–client privilege protects confidential communications between a client and an attorney that are made in the course of the relationship. Cal. Evid. Code § 952. "Confidential communications include information transmitted between attorney and client and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 54 Cal. 3d 765, 779 (1991) (quoting Cal. Evid. Code § 952). "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney–client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 734 (2009).

In their privilege log, Defendants describe each of the two Disputed Documents as a "[q]uarterly meeting materials packet prepared with the involvement of counsel and circulated among client personnel, with redacted portions prepared by Flowers attorneys in anticipation of litigation and reflecting the mental impressions, opinions, and legal advice, including legal strategy, of Flowers' attorneys regarding known or anticipated litigation." (*Goro* ECF No. 133-5 at 5, 7.) The Court finds this description sufficient to make a prima facie showing of privilege—the Disputed Documents contain legal advice and strategy communicated to Flowers by its attorneys. Absent a basis to question whether the Disputed Documents are privileged, the Court accepts Defendants' designation.

The text of California Evidence Code § 915 does not specifically prohibit a court from reviewing privileged documents *in camera* for responsiveness, but by precluding *in camera* review of claimed privileged documents, California creates strong substantive protections of potentially attorney–client privileged documents. *See Costco Wholesale Corp.*, 47 Cal. 4th at 743 ("No comparable provision [to § 915] permits *in camera* disclosure of information alleged to be protected by the attorney–client privilege." (citing *S. Cal. Gas. Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 45 n.19 (1990))); *see also S. Cal. Gas. Co.*, 50 Cal. 3d at 45 n.19 (noting that *in camera* review of privileged documents for privilege and relevance would violate § 915). In the *Goro* case, the Court would be

violating California law and policy if it were to conduct an *in camera* review of the Disputed Documents for purposes of determining privilege. The Court will not, under these circumstances, undertake a review it could not conduct for purposes of privilege analysis in order to second-guess Defendants' responsiveness determination.[12]

Because the Court accepts Defendants' representations that the Disputed Documents are not responsive to *Goro* RFP No. 3, Defendants were not obligated to log the documents on a privilege log in response to RFP No. 3 and have not waived privilege in this context. Accordingly, Plaintiffs' Motion to Compel with respect to *Goro* RFP No. 3 is **DENIED**.

## C. *Ludlow* RFP No. 6

The Court turns next to *Ludlow* RFP No. 6, which Plaintiffs also argue the Disputed Documents are responsive to. Plaintiffs' Motion to Compel with Respect to RFP No. 6 is timely.[13]

### 1. Defendants' Objections

*Ludlow* RFP No. 6 requests "[a]ll DOCUMENTS and ESI relating to the decision to implement the independent contractor model in California (i.e. for Flowers California, Flowers Henderson, and Flowers Modesto)." (*Ludlow* ECF No. 75-10 at 4.) Defendants objected to RFP No. 6 on a multitude of grounds: vague and ambiguous; overbroad as to time and scope; unintelligible; irrelevant and not proportional; unduly burdensome and harassing; calls for confidential, proprietary, and trade secret information; calls for

---

[12] The Court notes that even if it had found Plaintiffs' Motion to Compel timely with respect to *Goro* RFP No. 5, or overruled Defendants' objections to *Goro* RFP Nos. 18 and 19, the Court could likewise not review the Disputed Documents for responsiveness to any of these requests under California law.

[13] The Parties do not dispute the timeliness of the Motion to Compel as to *Ludlow* RFP No. 6. The Court conducted its own analysis concerning the timeliness of the raising of this matter. Without setting forth the entire timeline here, suffice it to say that the motion is timely in part because of a joint voicemail message the parties represent they left with chambers on May 15, 2019. The Court has no record of this message but accepts that this call was timely placed by the parties and that there must have been a technological problem that interfered with delivery of the message.

18-cv-01190-JLS-JLB

information protected by the attorney–client privilege and/or attorney work product doctrine; and seeks information protected by the right to privacy under the California Constitution. (*Id.*) In their opposition, Defendants reassert their objections on the grounds that RFP No. 6 is "vague, ambiguous, and overbroad to the point of absurdity." (*Ludlow* ECF No. 85 at 6.) Defendants also argue that RFP No. 6 does not meet Rule 34's reasonable particularity requirement because it "seeks 'all documents relating to' a nebulous, undefiled topic or concept," and is a sweeping request without a time limitation. (*Id.* at 5.)

In reply, Plaintiffs contend that they attempted to narrow the request through the meet and confer process, but Defendants "ignored Plaintiffs' invitation to narrow and simply stood on their objections." (*Ludlow* ECF No. 89 at 3.) Plaintiffs further argue that Defendants failed to identify "what categories or types of documents it believes RFP [No.] 6 wrongfully or burdensomely captures." (*Id.*)

As previously stated, Rule 34 requires that a document request "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). However, Rule 34 "does not require the impossible," and a "generalized designation should be sufficient when the party seeking discovery cannot give a more particular description and the party from whom discovery is sought will have no difficulty in understanding what is wanted." *Krause*, 2017 WL 496936, at *5 (quoting 8B Wright, et al., *supra*, § 2211). Additionally, "a discovery request will not be objectionable as overly broad if it uses an omnibus term to modify 'a sufficiently specific type of information or group of documents.'" *Moser*, 2018 WL 6735710, at *13 (quoting *Dauska v. Green Bay Packaging Inc.*, 291 F.R.D. 251, 261–62 (W.D. Wisc. 2013)).

Through RFP No. 6, Plaintiffs seek all documents "relating to the decision to implement the independent contractor model in California." (*Ludlow* ECF No. 75-10 at 4.) Plaintiffs use the phrase "relating to" in their request, but the phrase modifies "the decision to implement the independent contractor model in California," which is sufficiently specific. Although RFP No. 6 does not contain any temporal limitations, the

request asks for documents relating to the decision to implement the independent contractor model in California specifically. Defendants entered the California market in 2008. The substance of request itself, therefore, contains a temporal limitation, and Defendants could narrow this request to an appropriate, and not unduly burdensome, timeframe. *See Sanchez Ritchie*, 2015 WL 12914435, at *2 ("Despite the overly broad nature of a [discovery request], a party typically has a duty to respond to it to the extent the [discovery request] is not objectionable and can be narrowed to an appropriate scope." (alterations in original)). Accordingly, the Court overrules Defendants' objections to *Ludlow* RFP No. 8 on the grounds that it is vague, ambiguous, and overbroad.

### 2. <u>Waiver of Attorney–Client Privilege for Failure to Properly Assert Privilege</u>

Having determined that *Ludlow* RFP No. 6 is a proper discovery request, the Court turns next to Plaintiffs' argument that Defendants waived the attorney–client privilege with respect to the Disputed Documents because Defendants did not timely produce a privilege log. As further addressed below, Defendants responded to RFP No. 6 with objections only, including attorney–client privilege and attorney work product objections, on April 15, 2019. (*Ludlow* ECF No. 75-2 ¶ 3.) Defendants did not produce a privilege log containing the Disputed Documents in *Ludlow* until June 12, 2019. (*Ludlow* ECF No. 85-1 ¶ 6.)

#### a. *Parties' Arguments*

Plaintiffs' waiver argument appears to be addressed mainly to the *Goro* RFPs. (*See Ludlow* ECF No. 9–10.) Plaintiffs identify the balancing test for waiver of attorney–client privilege as set forth in *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir. 2005), but provide little analysis of its application to *Ludlow*. Plaintiffs argue that the three-part test in *Burlington* is met because: (1) "until recent Court order," Defendants never provided a privilege log, and Defendants "erroneously told Plaintiffs that it withheld nothing"; (2) "Defendants' refusal to log or identify documents spans more than a year since they responded to RFP [No.] 3 in *Goro*"; and (3) the Disputed Documents "consist of roughly 250 pages making up two reports." (*Ludlow* ECF No. 75-1 at 9.)

///

Defendants do not address any of the *Burlington* factors with respect to RFP No. 6 and argue instead that the Disputed Documents are not responsive to RFP No. 6. (*See Ludlow* ECF No. 85 at 9.) However, the Court finds it need not address the issue of responsiveness, for it determines, as set forth below, that Defendants did not waive the attorney–client privilege with respect to the Disputed Documents and RFP No. 6.

### b. *Legal Standard*

Responses and objections to requests for production are due within 30 days after being served. Fed. R. Civ. P. 34(b)(2)(A). Rule 26(b)(5)(A) provides that, when claiming a privilege, a party must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." A privilege log is the format most typically used to comply with Rule 26(b)(5)(A). *See Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 650–51 (E.D. Cal. 2010).

In analyzing how Rule 34 and Rule 26(b)(5) interact, the Ninth Circuit in *Burlington* held that "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." 408 F.3d at 1149. However, the *Burlington* court rejected a "*per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Id.* Instead, the Ninth Circuit instructed district courts, using the 30-day period as a default guideline, to "make a case-by-case determination" of waiver considering:

the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same

18-cv-01190-JLS-JLB

documents were the subject of discovery in an earlier action) or unusually hard.

*Id.* In determining whether a party has waived the privilege, district courts apply these factors "in the context of a holistic reasonableness analysis." *Id.*

### c. *Analysis*

Here, the first *Burlington* factor—the degree the assertion of privilege enables Plaintiffs and the Court to assess the asserted privilege—does not favor waiver. Plaintiffs do not squarely address the first *Burlington* factor and argue only that "until the recent Court order to do so, Defendants never provided any means of assessing their boilerplate, pervasive privilege objections." (*Ludlow* ECF No. 75-1 at 9.) Plaintiffs do not make any argument as to their *ability* to assess Defendants' assertion of privilege over the Disputed Documents. From the description of the Disputed Documents in Defendants' privilege log, the Court is satisfied that Defendants have made a good faith effort to comply with Rule 26(b)(5)'s requirements, and their privilege log constitutes more than a boilerplate privilege objection. *See also United States v. Al-Shawaf*, No. ED CV 16-1539-ODW (SPx), 2017 WL 5997440, at *3 (C.D. Cal. Sept. 5, 2017) ("While plaintiff surely would like as much description as possible for each document, defendants cannot be expected to divulge the particulars of every document without undermining their privilege objections. Defendants' objections are not boilerplate where they provide information about the subject matter of each document." (citations omitted)).

The second *Burlington* factor—timeliness of Defendants' privilege objection and accompanying information—does not favor waiver. As stated above, Defendants responded to RFP No. 6 with attorney–client privilege objections on April 15, 2019. (*Ludlow* ECF No. 75-2 ¶ 3.) Defendants did not produce a privilege log containing the Disputed Documents in *Ludlow* until June 12, 2019, almost two months later. (*Ludlow* ECF No. 85-1 ¶ 6.) Plaintiffs here focus only on the fact that Defendants produced this privilege log more than a year after they responded to *Goro* RFP No. 3 and do not address the timeliness of Defendants' privilege log in connection with any other RFP. (*Ludlow*

ECF No. 75-1 at 9.)  In evaluating timeliness, the Court finds that, with respect to RFP No. 6, the production of a privilege log about two months late is not sufficiently egregious to weigh in favor of waiver.  This is not inconsistent with how other courts in this Circuit have ruled when evaluating the second *Burlington* factor.[14]  Moreover, even though Defendants did not serve Plaintiffs with a formal privilege log until June 12, 2019, Plaintiffs were aware at least a month earlier that that Defendants considered the Disputed Documents to be protected by privilege and that they were withholding[15] the documents on that basis.  In the parties' May 9, 2019 Joint Discovery Statement, Defendants stated that the Disputed Documents were "summaries of ongoing litigation and regulatory matters for Flowers Foods and its subsidiaries, nationwide, including but not limited to misclassification cases.  Such documents are prepared by Flowers' legal department, with input from outside counsel, and contain the impressions of both in-house and outside

---

[14]  *E.g.*, *United States v. Al-Shawaf*, Case No. ED CV 16-1539-ODW (SPx), 2017 WL 5997440, *3  (C.D. Cal. Sept. 5, 2017) ("While eight weeks certainly exceeds the thirty-day guideline, this is not an egregious delay . . . ."); *McKeen-Chaplin v. Provident Savings Bank,* FSB, No. 2:12–cv–03035 GEB AC, 2015 WL 502697, at *11 (E.D. Cal. Feb. 5, 2015) (finding a seven-month delay in producing a privilege log "not so unreasonable that waiver of . . . attorney–client privilege is justified"); *Jumping Turtle Bar & Grill v. City of San Marcos*, No. 10–CV–270–IEG (BGS), 2010 WL 4687805, at *3 (S.D. Cal. Nov. 10, 2010) (finding that the production of a privilege log "one and one half months" late was not unreasonable); *see also Jones v. Hernandez*, 322 F.R.D. 411, at 414 (S.D. Cal. 2017) (finding that a 31-day delay in producing a privilege log weighed in favor of waiver but noting that "had untimeliness been Plaintiff's only transgression here, the Court could potentially find no waiver occurred").

[15]  Defendants' position with respect to RFP No. 6 has always been that they were not obligated to log the Disputed Documents on a privilege log because the Disputed Documents are not responsive to RFP No. 6.  Defendants' production of a privilege log containing the Disputed Documents occurred in response to *Ludlow* RFP Nos. 14 and 15, which both identify the Disputed Documents specifically by bates numbers.  As there was, and is, no question that the Disputed Documents are responsive to those RFPs, the Court gave Defendants the choice of either producing a privilege log or moving for a protective order.  The Court again notes that it conducts its waiver analysis assuming *arguendo* that the Disputed Documents are responsive to RFP No. 6.

counsel regarding such litigation and other matters."[16]  The purpose of a privilege log is to allow the parties and the Court to assess the propriety of the privilege asserted, as required by Rule 26(b)(5)(A)(ii).  Although Plaintiffs may not have been able to fully assess Defendants' privilege claim by this description, Plaintiffs were not in the dark as to the privileged nature of these documents even without the benefit of a proper privilege log. Even though Defendants' nearly two-month delay in providing a formal privilege log would be outside of the default guideline, the Court does not find such a delay so unreasonable that waiver of attorney–client privilege is justified.

The Court finds the third *Burlington* factor—the magnitude of the document production—to be neutral.  Plaintiffs argue that the Disputed Documents are two reports consisting of about 250 pages.  (*Ludlow* ECF No. 75-1 at 9.)  However, most courts analyze this factor in terms of the magnitude of the document production in the entire case compared to the magnitude of the specific documents subject to the waiver analysis.[17] Neither party presents information as to the magnitude of the total document production in *Ludlow*.  Nonetheless, based on the many discovery disputes the parties have brought to the Court, the Court is aware that document production in this case has been substantial. The Court therefore finds that Defendants' withholding of only two documents, even if not particularly lengthy, does not weigh in favor of or against waiver.

Finally, the Court finds the fourth *Burlington* factor—any particular circumstances of the litigation that make responding to discovery unusually easy—to be neutral as well. Neither party analyzes this factor.  In addressing this factor, the Ninth Circuit specifically suggests that "the fact that many of the same documents were the subject of discovery in

---

[16]    The parties lodged this document with the Court in advance of the May 10, 2019 Discovery Conference, and it is not attached as an exhibit to either party's briefings.
[17]    *E.g.*, *McKeen-Chaplin*, 2015 WL 502697, at *11 (finding that the third *Burlington* factor weighed against waiver when the party asserting the privilege had produced 12,000 pages of documents and sought to withhold only three); *Jumping Turtle Bar & Grill*, 2010 WL 4687805, at *4 (finding that the third *Burlington* factor weighed against waiver when the party asserting the privilege had produced 10,000 pages of documents).

an earlier action" may be one such circumstance making discovery less difficult. The parties here have agreed to share discovery between the two related cases, but the Court does not find that this fact, without further argument from either party, weighs in favor of or against wavier.

The Court finds that the *Burlington* factors do not support a finding of waiver with respect to the Disputed Documents and *Ludlow* RFP No. 6, even if the Disputed Documents are responsive. Plaintiffs' waiver argument focuses almost entirely on the timeliness of Defendants' privilege log, and therefore, what Plaintiffs ask the Court to order would amount to the "mechanistic determination" the Ninth Circuit cautioned against in *Burlington*. Applying these factors in the context of holistic reasonableness, the Court cannot conclude that Defendants' delay in producing a privilege log operates as a waiver of the attorney–client privilege, which is "an exceedingly severe outcome." *Al-Shawaf*, 2017 WL 5997440, at *4. Moreover, the consequences of waiver in this case would be harsh, given that the Disputed Documents contain legal advice and case strategies pertaining to other misclassification cases.

### 3. Implied or "At-Issue" Waiver

#### a. *Parties' Arguments*

Lastly, the Court addresses Plaintiffs' alternative waiver argument. Plaintiffs assert that Defendants implicitly waived the attorney–client privilege with respect to the Disputed Documents and RFP No. 6 by asserting a "good faith defense to punitive damages." (*Ludlow* ECF No. 75-1 at 10.) Applying the Ninth Circuit's three-part waiver test articulated in *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999), Plaintiffs argue in a general manner that Defendants have waived privilege because Defendants "(1) asserted affirmative good faith defenses (2) putting [their] good faith belief, though the mental state of [their] senior executives at issue, (3) such that Plaintiffs need to see what [Defendants'] executives . . . actually knew about the state of the law." (*Id.* at 11.)

In response, Defendants argue that Plaintiffs have grossly mischaracterized Defendants' good faith affirmative defense and "take a giant leap by arguing that

Defendants put their 'good faith belief, through the mental state of [their] senior executives at issue.'" (*Ludlow* ECF No. 85 at 9.)  Defendants contend that "the issue is not the [subjective] mental state of Defendants' executives," but instead, the objective, "independent third-party decisions upholding the independent contractor model." (*Id.* at 10–11.)  Defendants assert that "it is clear" they did not willfully, or in bad faith, misclassify Plaintiffs "as shown by third-party judicial and administrative decision concluding Flowers' distributorship model (and under similar models in the baking industry), IRS treatment of [d]istributors as independent contractors, previous litigation, and the ongoing efforts made by Flowers to maintain the independent contractor business model." (*Id.* at 10.)

> ### b.  *Legal Standard*

The attorney–client privilege may be implicitly waived "[w]here a party raises a claim which in fairness requires disclosure of the protected communication."  *Kaiser Found. Health Plan Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).  As mentioned, the Ninth Circuit employs a three-part test to determine whether an implied waiver of the attorney–client privilege has occurred:

> First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit."  Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue."  Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense."

*Amlani*, 169 F.3d at 1195 (citations omitted) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

> ### c.  *Analysis*

As an initial matter, the Court addresses Defendants' relevance argument that "the mental state of [their] executives" is not at issue with respect to their good faith affirmative defenses.  (*Ludlow* ECF No. 85 at 10.)  The Court has already rejected this argument.  In a

previous order, the Court compelled Defendants to produce a Federal Rule of Civil Procedure 30(b)(6) witness to produce testimony on their good faith affirmative defense, specifically with respect to any decision by Defendants to revisit their California distributors' classifications as independent contractors. (*See Ludlow* ECF No. 124 at 7–11.) Defendants argued that because their good faith defense relies solely on the reasonableness of their actions and the "ample support in the law," evidence of their subjective intent was irrelevant. (*Id.* at 10.) In its Order, the Court discussed that a successful good faith affirmative defense under the FLSA would require Defendants to show that they acted with both objective and subjective good faith in violating the FLSA. (*See id.*) Likewise, a good faith affirmative defense to certain California Labor Code violations made in bad faith would defeat the defense. (*Id.*) The Court will not repeat that analysis here, but again finds that irrespective of how Defendants choose to argue their good faith affirmative defense, any evidence of Defendants' subjective bad faith in classifying their distributors as independent contractors would be *relevant* to Plaintiffs' challenge to the defense under both the FLSA and the California Labor Code.

Plaintiffs, however, have not made a strong case for implied waiver. As to the first waiver requirement under *Amlani*, Defendants do not dispute that their assertion of a good faith affirmative defense is an affirmative act that can result in an implied waiver. *See Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298 RMW, C-05-00334 RMW, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007). However, it is not as to the first requirement where Plaintiffs' argument falls flat, but the second and third.

The second waiver requirement directs the Court to examine whether Defendants have put privileged information "at issue" through their assertion of a good faith affirmative defense. *See Amlani*, 169 F.3d at 1195. The Court finds that Defendants have not. Plaintiffs urge that it is Defendants' assertion of a good faith affirmative defense that puts their "good faith belief, through the mental state of [their] senior executive, at issue." (*Ludlow* ECF No. 75-1 at 10.) However, district courts in the Ninth Circuit have declined to find implied waiver of the attorney–client privilege simply because a defendant asserted

a good faith affirmative defense to a plaintiff's claims, specifically in the context of implied waiver arguments and good faith affirmative defenses to claims under the FLSA and California Labor Code. Instead, courts have found that implied waiver applies only if the defendant affirmatively relies on and asserts the advice of counsel or communications with counsel in support of its defense.[18] The Court finds this authority persuasive and therefore will find that Defendants put their privileged communications "at-issue" only if they have affirmatively put the content of privileged communications or advice behind its claim of good faith. *See also Sorensen v. Black & Decker Corp.*, No. 06cv1572-BTM (CAB), 2007 WL 1976652, at *2 (S.D. Cal. Apr. 9, 2007) ("The privilege is waived only when a party chooses to utilize the [privileged] information to advance a claim or defense."); *cf. Phelps v. MC Comm., Inc.* No. 2:11–cv–00423–PMP–VCF, 2013 WL 3944268, at *19 (D. Nev. July 22, 2013) (finding waiver of attorney–client communications that "could arguabl[y] form the basis for defendants' 'reasonable belief' that they were acting in 'good faith' and did not intentionally violate the FLSA").

---

[18]     *E.g.*, *Aboudara v. City of Santa Rosa*, No 17-cv-01661-HSG (JSC), 2018 WL 748968, at *1 (N.D. Cal. Jan. 22, 2018) (rejecting the plaintiff's argument that the defendant's "good faith defense in itself waives the privilege" when the defendant had stipulated to in no "way rely on the advice of counsel in support of its good faith affirmative defense" under the FLSA); *McKeen-Chaplin*, 2015 WL 502697, at *9 ("Although defendant argues that it classified plaintiffs as exempt in good faith, it does not allege that it relied upon the advice of counsel in making its good faith determination. Defendant must support its good faith defense by citing the advice of counsel in order to put it in issue."); *Bennett v. SimplexGinnell LP*, No. 11–cv–01854–JST (NJV), 2013 WL 5781316, at *3 (N.D. Cal. Oct. 25, 2013) (finding no implied waiver because the defendant relied only on "external factors, such as the requirements imposed by state agencies and industry standards" to establish its good faith dispute defense under the California Labor Code and not the advice of or communications with counsel); *Harter v. CPS Security (USA) Inc.*, No. 2:12–cv–00084–MDD–PAL, 2013 WL 5882712, at *2–3 (D. Nev. Oct. 30, 2013) (finding no implied waiver because the defendants' good faith affirmative defense under the FLSA was based on non-privileged communications and advice from an individual not retained as an attorney).

Applying this standard, the Court finds Defendants have not put their attorney–client communications "at issue." In their opposition, Defendants represent that the factual bases of their good faith affirmative defense are not and will not be based on the advice of or communications with counsel. (*See Ludlow* ECF No. 85 at 10.) Instead, and as stated above, Defendants represent that they will support their defense with "third-party judicial and administrative decisions concluding Flowers' distributorship model (and under similar models in the baking industry), IRS treatment of [d]istributors as independent contractors, previous litigation, and the ongoing efforts made by Flowers to maintain the independent contractor business model."[19] (*Id.*)

Finally, the court must evaluate whether "allowing the privilege would deny [Plaintiffs] access to information vital to [their] defense." *Amlani*, 169 F.3d at 1195. Plaintiffs argue that because a good faith defense under the California Labor Code presented in bad faith will preclude a finding of good faith, a "defendant's subjective mind state bears directly on the issue of bad faith." (*Ludlow* ECF No. 89 at 6.) Plaintiffs also argue that Defendants' "subjective understanding is also a necessary element to proving [their] FLSA good faith defense." (*Id.*) The Court agrees with Plaintiffs that Defendants' subjective intent in classifying their distributors is *relevant* information to rebut Defendants' good faith affirmative defense. However, Plaintiffs have not made a case that attorney–client communications pertaining to Defendants' subject intent is *vital* to their rebuttal of the defense. A good faith dispute under the California Labor Code is not analyzed subjectively,[20] and "the mere possibility that communications between

---

[19] The Court has reviewed Defendants' good faith affirmative defense as articulated in their Motion for Summary Judgement in *Goro* and notes that the bases Defendants identify here in support of their defense are identical to those argued in the currently pending motion. (*See Goro* ECF No. 104-1 at 26–27.)

[20] *FEI Enters. Inc. v. Kee Man Yoon*, 194 Cal. App. 4th 790, 802 n.9 (2011) ("The appearance of the language "or are presented in bad faith" in the list of circumstances precluding a finding of a good faith dispute does not render the test a subjective one, but

18-cv-01190-JLS-JLB

Defendant[s] and [their] counsel might contain evidence relevant to a 'bad faith' argument that Plaintiffs could assert against Defendant[s'] 'good faith dispute defense' is insufficient to vitiate the privilege." *Bennett v. SimplexGrinnell LP*, 2013 WL 5781316, at *3. Further, Plaintiffs' argument that knowledge of Defendants' subjective understanding is necessary to their good faith defense under the FLSA is particularly unavailing. It is Defendants' burden to prove good faith under the FLSA, and if they choose to argue the subjective intent component of an FLSA good faith defense without including the advice of counsel, Defendants can assume that risk. *See also Harter*, 2013 WL 5882712, at *3 (affirming the magistrate judge's determination that "Plaintiffs would not be deprived of information vital to their case if Defendants are allowed to assert privilege over communications with their attorneys because Defendants do not base their [FLSA good faith] defense on any advice of these attorneys").

Based on the forgoing, the Court finds that Defendants have not implicitly waived the attorney–client privilege by asserting a good faith affirmative defense. Therefore, even if the Disputed Documents are responsive to RFP No. 6, their privileged nature prevents their disclosure. Accordingly, Plaintiffs' Motion to Compel with respect to *Ludlow* RFP No. 6 is **DENIED**.

**D.** *Ludlow* **RFP Nos. 14 and 15**

Finally, the Court turns to *Ludlow* RFP Nos. 14 and 15. Plaintiffs first brought a potential dispute with respect to these RFPs during the May 10, 2019 Discovery Conference. (*See Ludlow* ECF No. 69.) Because Defendants' responses were not yet due at the time of the Conference, the Court continued the Conference to June 6, 2019, to allow time for Defendants to respond and for the parties to meet and confer. Defendants provided objections only to these RFPs on May 28, 2019, and as anticipated, the Court discussed the parties' dispute with respect to these RFPs during the June 6 Conference. (*See* ECF No.

_____

indicates that subjective bad faith may be of evidentiary value in the *objective* bad faith analysis." (emphasis added)).

71.) Accordingly, Plaintiffs' Motion to Compel is timely with respect to RFP Nos. 14 and 15.

<u>Defendants' Objections</u>

RFP No. 14 requests "[a]ll DOCUMENTS and ESI relating to the classification of distributors as independent contractors produced in Flowers Foods, Inc. Securities Litigation, Case No. 7:16-cv-00222-WLS (M.D. Georgia March 14, 2019), including but not limited to SECLITFLO 00155165 – 422 and SECLITFLO 00351582 – 839." (*Ludlow* ECF No. 75-12 at 3.) RFP No. 15 requests "[a]ll DOCUMENTS and ESI relating to any privilege logs or other similar documents used to identify withheld responsive information in connection with Flowers Foods, Inc. Securities Litigation, Case No. 7:16-cv-00222-WLS (M.D. Georgia March 14, 2019), including any logs identifying the documents produced as SECLITFLO 00155165 – 422 and SECLITFLO 00351582 – 839." (*Id.* at 5.)

In their opposition, Defendants object to both requests on the grounds that they impermissibly seek "cloned" discovery by asking for documents produced in the securities class action. (*Ludlow* ECF No. 85 at 6.) Defendants object to RFP No. 14 on relevancy grounds, as well, arguing that the securities class action "is not based on any decision to classify California distributors as independent contractors," and this case is "limited to California distributors." (*Id.* at 6–7.) Defendants further object to RFP No. 14 on the basis that "it would be extremely burdensome" to respond to. (*Id.*) Defendants state that "Flowers produced approximately 31,377 documents totaling 363,294 pages in the Securities Litigation," and "[t]o comply with RFP [No.] 14, [they] would have to analyze this voluminous production to identify which documents, if any, are 'relating to the classification of distributors as independent contractors,' as opposed to other allegations unique to the Securities Litigation." (*Id.*) Additionally, Defendants contend that RFP No. 15 is likewise not "limited to the issues in the case," for it "seeks logs identifying *thousands* of privileged documents withheld in the Securities Litigation . . . without regard to whether those documents are actually relevant to this case, *or even what discovery requests or negotiated search terms those documents were responsive to*." (*Id.* at 7.)

The Court agrees with Defendants.  Asking for all documents produced in another matter is not generally proper.  The propounding party cannot meet its burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for.  There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap— would be irrelevant or burdensome to provide in another case.

If relevant and proportional documents exist in the custody or control of the responding party, the appropriate thing to do is to request those documents.  The fact that the documents were or were not produced in other litigation is irrelevant.  Moreover, compelling a responding party to do duplicate searches—one for responsive documents in their custody and control and one for all documents in their custody and control that were previously produced in other litigation—is definitionally unduly burdensome, as it would consume resources without providing any additional benefit to the propounding party.

Here, Plaintiffs have already propounded discovery requests that capture the documents they seek through RFP No. 14, yet by propounding RFP No. 14, they are demanding that Defendants comb through the 363,294 pages of documents produced in the securities class action to search for those documents again.[21]  Plaintiffs argue that they would agree to filtering the securities class action documents by search terms, but this would not change the fact that Defendants would be searching for duplicative discovery.  (*Ludlow* ECF No. 89 at 4 n.3.)  Plaintiffs have not identified, nor sufficiently argued, what

---

[21]  Plaintiffs' only argument concerning whether RFP No. 14 is a proper request is that the Ninth Circuit "strongly favors discovery relating to other, relevant litigation."  (*Ludlow* ECF No. 89 at 4.)  However, the case Plaintiffs cite to in support, *Foltz v. State Farm Mut. Auto. Co.*, 331 F.3d 1122 (9th Cir. 2003), addressed whether interveners engaged in collateral litigation could intervene and gain access to discovery materials subject to a protective order.  The *Foltz* court also stressed the importance of eliminating duplicative discovery, yet it is duplicative discovery that Plaintiffs' seek here.  *Foltz*, 331 F.3d at 1131.

additional benefit they would receive from Defendants' search that is proportional to the needs of this case.[22]

As to RFP No. 15, which requests all documents "relating to any privilege logs or similar documents used to identify withheld responsive information" in the securities class action, Plaintiffs have not remotely met their burden of establishing the relevancy of these documents. And, as Defendants highlight, RFP No. 15 seeks privilege logs from the securities class action that identify "thousands of privileged documents . . . without regard to whether those documents are actually relevant to this case, or even what discovery requests or negotiated search terms those documents were responsive to." (*Ludlow* ECF No. 85 at 7 (emphasis omitted).) The request is both irrelevant and overbroad. Defendants' objections on the grounds of relevancy, proportionality, and undue burden to RFP Nos. 14 and 15 are therefore sustained. Accordingly, Plaintiffs' Motion to Compel with respect to *Ludlow* RFP Nos. 14 and 15 is **DENIED**.

## IV.    **CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Compel (*Goro* ECF No. 130; *Ludlow* ECF No. 75) is **DENIED**.[23]    Because the Court has denied Plaintiffs' Motion to

---

[22]    Even if the Court were to narrow RFP No. 14 to only the Disputed Documents, the documents are privileged, and the Court has already determined that Defendants' have not waived attorney–client privilege under a theory of implied waiver. Additionally, the Court's foregoing analysis with respect to *Ludlow* RFP No. 6 and waiver of privilege for Defendants' failure to timely produce a privilege is likewise applicable to RFP No. 14. However, the second *Burlington* factor—the timeliness factor—weighs even more against waiver with respect to RFP No. 14. Defendants responded to RFP No. 14 on May 28, 2019, and served a privilege log on Plaintiffs only fifteen days later on June 12, 2019.

[23]    Plaintiffs also request that the Court "strike [Defendants'] 'good faith' affirmative defenses as sanctions for [their] blatant withholding of evidence related to this topic." (*Ludlow* ECF No. 75-1 at 11.) Plaintiffs appear to request sanctions under Federal Rule of Civil Procedure 37(b) for failure to comply with a court order. However, Plaintiffs do not make the case that Defendants have violated any of the Court's orders. Further, any motion to strike affirmative defenses would need to be brought in a motion before the district judge. Finally, the Court denies Plaintiffs' request for an order that Defendants "identify any other

Compel, Defendants' Motion for Protective Order (*Ludlow* ECF No. 74), which seeks protection from producing documents in response to *Ludlow* RFP Nos. 14 and 15, is **DENIED as moot**.

      **IT IS SO ORDERED.**

Dated: November 22, 2019

                                    Hon. Jill L. Burkhardt
                                    United States Magistrate Judge

---

withheld responsive documents that Plaintiffs were not able to independently identify." (*Id.*)

18-cv-01190-JLS-JLB