Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
Cody J. Cocanig  CA Bar No. 303894
cody.cocanig@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA  92122
Telephone:  858-652-3100
Facsimile:   858-652-3101

Kevin Hishta (*Pro Hac Vice*)
kevin.hishta@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA  30303
Telephone:  404.881.1300
Facsimile:   404.870.1732

Paul B. Maslo (*Pro Hac Vice*)
paul.maslo@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone:  214.414.0067
Facsimile:   214.987.3927

Attorneys for Defendants FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly-situated; and WILLIAM LANCASTER, individually and on behalf of others similarly-situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>Defendants. | Case No. 18-CV-1190-JLS-JLB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS**<br><br>Hearing Date:  TBD<br>Hearing Time:  TBD<br>Courtroom:  4D<br><br>Complaint Filed:  June 6, 2018<br><br>District Judge: Hon. Janis L. Sammartino<br>Magistrate Judge: Hon. Jill L. Burkhardt |

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ................................................ 1

    A.  The distributor franchise model. ............................................................ 1

    B.  Relevant terms in the Distributor Agreement. ....................................... 2

    C.  David Aguero and Aguero Inc's distributor franchise relationship. ............................................................................................ 3

    D.  Aguero and Aguero Inc's prior lawsuit and arbitration agreement. ............................................................................................... 3

    E.  Aguero and Aguero Inc's efforts to sell the distribution rights for Territory No. 9949. ........................................................................... 5

    F.  Uncertainty over who represents Aguero and Aguero Inc. ................... 6

    G.  Aguero and Aguero Inc's refusal to execute a general release. ............. 6

    H.  Termination of the Distributor Agreement for Territory No. 9949. ...................................................................................................... 6

    I.  FBC Modesto initiates arbitration against Aguero and Aguero Inc. ......................................................................................................... 7

    J.  Plaintiffs' counsel files two copycat lawsuits despite this case's stay. ....................................................................................................... 7

III.  ARGUMENT ............................................................................................ 8

    A.  The Court's stay order applies only to claims in this litigation. ............ 8

        1.  Nothing in the Court's stay order prevents FBC Modesto from arbitrating its declaratory judgment claim. .................................................................................... 8

        2.  If anyone has attempted to evade the stay order, it is Plaintiffs' counsel. ...................................................................... 12

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

B.    Neither Defendants nor FBC Modesto has waived FBC
      Modesto's right to arbitrate its claim for declaratory judgment. .......... 13

      1.    Neither Defendants nor FBC Modesto has engaged in
            conduct inconsistent with FBC Modesto's right to
            arbitrate its claim. ...................................................................... 14

      2.    Plaintiffs, including Aguero, will suffer no prejudice. ............... 18

C.    Plaintiffs, including Aguero, will not be irreparably harmed by
      the arbitration of FBC Modesto's declaratory judgment claim. .......... 18

D.    Plaintiffs improperly attempt to litigate issues that address the
      merits of the declaratory judgment action, not its arbitrability. .......... 21

E.    The balance of equities weighs against issuing an injunction. ............. 22

F.    Enjoining the arbitration is not in the public interest. ........................... 24

G.    The first-to-file rule is inapplicable. .................................................... 25

IV.   CONCLUSION ................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Adams v. Postmates, Inc.*,
   2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) .......................................................24

*Ahussain v. GNC Franchising*, LLC,
   2008 WL 11336812 (C.D. Cal. Mar. 19, 2008) ..................................................22

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   2012 WL 3757486 (N.D. Cal. July 5, 2012) .......................................................25

*Bischoff v. DirecTV, Inc.*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ......................................................... 16, 17

*Captain John J. Kelley Post 1355 v. City of Sturgis*,
   2006 WL 2398746 (W.D. Mich. Aug. 17, 2006) ...............................................10

*Carwile v. Samsung Telecomms. Am., LLC*,
   2013 WL 11030374 (C.D. Cal. July 9, 2013) .....................................................13

*Ceja v. Scribner*,
   2016 WL 4035665 (C.D. Cal. Mar. 3, 2016) ......................................................11

*Chun Ping Turng v. Guaranteed Rate, Inc.*,
   371 F. Supp. 3d 610 (N.D. Cal. 2019)................................................................18

*Comverse, Inc. v. Am. Telecomms., Inc.*,
   2006 WL 3016315 (S.D.N.Y. Oct. 23, 2006) .....................................................23

*Couch v. Morgan Stanley & Co.*,
   2015 WL 4716297 (E.D. Cal. Aug. 7, 2015), *aff'd*, 656 F. App'x 841
   (9th Cir. 2016) ..................................................................................................... 1

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
   835 F.3d 1195 (10th Cir. 2016) ...........................................................15, 16, 17, 18

*Credit Suisse Sec. (USA) LLC v. Chia*,
   2013 WL 12114009 (C.D. Cal. Oct. 18, 2013) ..................................................24

*Crocker v. Cal., Dep't of Rehab.*,
   2014 WL 4187315 (E.D. Cal. Aug. 21, 2014) ...................................................21

*Davis v. CACH, LLC*,
  2015 WL 913392 (N.D. Cal. Mar. 2, 2015) ...................................................... 16, 17

*De La Cruz v. Target Corp.*,
  2018 WL 3817950 (S.D. Cal. Aug. 8, 2018) ........................................................ 25

*Ellison v. Autozone Inc.*,
  2007 WL 1795699 (N.D. Cal. June 20, 2007) ................................................... 9, 13

*Envision Ins. Co. v. Khan*,
  2014 WL 12868890 (M.D. Fla. Feb. 25, 2014) ..................................................... 17

*Devasahayam v. DMB Capital Grp.*,
  2017 WL 6547897 (S.D. Cal. Dec. 20, 2017) ....................................................... 21

*Fisher v. A.G. Becker Paribas Inc.*,
  791 F.2d 691 (9th Cir. 1986) ................................................................... 18, 19

*Gon v. First State Ins. Co.*,
  871 F.2d 863 (9th Cir. 1989) ........................................................................ 1

*Goodale v. George S. May Int'l Co.*,
  2011 WL 1337349 (N.D. Ill. Apr. 5, 2011) .......................................................... 18

*Haitayan v. 7-Eleven, Inc.*,
  762 F. App'x 393 (9th Cir. 2019) ......................................... 20, 22, 23, 24, 25

*Harmon v. RDO Equip. Co.*,
  2019 WL 4238877 (C.D. Cal. July 3, 2019) .................................................. 19, 25

*Hoffman Construction Co. of Oregon v. Active Erectors & Installers, Inc.*,
  969 F.2d 796 (9th Cir. 1992) ................................................................... 15, 16

*Holly v. Alta Newport Hosp., Inc.*,
  2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ................................................ 11, 12

*Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*,
  589 F.3d 917 (8th Cir. 2009) ....................................................................... 15

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) .......................................................................... 22

*Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*,
  552 F. App'x 663 (9th Cir. 2014) ................................................................... 15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) ................................................................. 25

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...................................................................... 9, 10

*Martin v. Yasuda*,
   29 F.3d 1118 (9th Cir. 2016) .................................................... 13, 14, 15

*Martinez v. Welk Grp., Inc.*,
   2012 WL 112535 (S.D. Cal. Jan. 12, 2012) ........................................ 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Billington*,
   2018 WL 6321658 (C.D. Cal. Jan. 8, 2018)................................. 20, 21

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .............................................................................. 1

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ......................................................................... 14, 19

*Newell v. Am. Ins. Administrators, LLC*,
   2016 WL 627357 (W.D. Va. Feb. 16, 2016) ........................................ 16

*Perfect 10, Inc. v. Yandex N.V.*,
   2012 WL 3860804 (N.D. Cal. Sept. 5, 2012) ...................................... 12

*In re Perle*,
   725 F.3d 1023 (9th Cir. 2013) ............................................................ 11

*Platte River Ins. Co. v. Dignity Health*,
   2013 WL 1149656 (N.D. Cal. Mar. 19, 2013) ............................... 10, 25

*Plows v. Rockwell Collins, Inc.*,
   812 F. Supp. 2d 1063 (C.D. Cal. 2011) .............................................. 15

*Postmates Inc. v. 10,356 Individuals*,
   2020 WL 1908302 (C.D. Cal. Apr. 15, 2020)......................... 20, 23, 24

*Regal Knitwear Co. v. N.L.R.B.*,
   324 U.S. 9 (1945) ............................................................................... 12

*Ressler v. Vietnam Mar. Commc'n & Elecs. Co.*,
   2010 WL 11601041 (C.D. Cal. Aug. 9, 2010) .................................... 25

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

*Ringgold Corp. v. Worrell*,
   880 F.2d 1138 (9th Cir. 1989) ........................................................ 10, 11

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
   927 F.3d 830 (5th Cir. 2019) ................................................................ 9

*S.E.C. v. Wencke*,
   622 F.2d 1363 (9th Cir. 1980) ............................................................ 8, 9

*Saaiman v. Am. Gen. Life Ins. Co., Inc.*,
   2019 WL 1864858 (S.D. Cal. Apr. 25, 2019) .................................... 11

*Spencer v. Midland Funding LLC*,
   2016 WL 8677216 (D. Or. Oct. 21, 2016) ........................................ 16

*Stanchart Sec. Int'l, Inc. v. Gavaldon*,
   2012 WL 5471933 (S.D. Cal. Nov. 9, 2012) ...................................... 20

*Subway Equip. Leasing Corp. v. Forte*,
   169 F.3d 324 (5th Cir. 1999) ......................................................... 15, 17

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*
   *Practices, & Prod. Liab. Litig.*,
   838 F. Supp. 2d 967 (C.D. Cal. 2012) .............................................. 15

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) ........................................................... 15

*Wheat v. California*,
   2013 WL 450370 (N.D. Cal. Feb. 5, 2013) ....................................... 24

*World Group Securities v. Tiu*,
   2003 WL 26119461 (C.D. Cal. July 22, 2003) ............................. 18, 19

*Zamora v. Smith*,
   2003 WL 27384433 (D. Ariz. Dec. 10, 2003) ................................... 12

*Zepeda v. U.S. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983) ............................................................. 12

*Zuru LLC v. Lego Sys., Inc.*,
   2019 WL 6998790 (C.D. Cal. July 22, 2019) ................................... 25

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

**OTHER**

Federal Rule of Civil Procedure 65 ................................................................. 10, 11, 12

California Civil Code § 1668 .................................................................. 21, 24

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

## I.      <u>INTRODUCTION</u>

Under the guise of an application to enforce a stay, Plaintiffs move for a TRO to prevent Defendants and non-parties, such as Flowers Baking Co. of Modesto, LLC ("FBC Modesto"), from arbitrating claims involving any of the opt-in Plaintiffs. In effect, Plaintiffs are trying to preclude FBC Modesto from resolving disputes with its distributors under their Distributor Agreements while this lawsuit is pending. But the Distributor Agreements govern the ongoing relationships with active distributors. There is absolutely no ground on which to order such "a drastic and extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), and interfere with those relationships.

The specific arbitration against opt-in Plaintiff David Aguero ("Aguero") that is the focus of Plaintiffs' motion involves a completely unrelated claim for declaratory judgment and non-parties Aguero Inc and FBC Modesto. An injunction is to preserve the status quo and prevent injury pending a trial on the merits; it is "designed to accord or protect some or all of the substantive relief sought by the complaint[.]" *Gon v. First State Ins. Co.*, 871 F.2d 863, 865 (9th Cir. 1989). But the declaratory judgment claim being arbitrated isn't at issue in this case and waiver isn't even a claim.[1] On that basis alone, the TRO is procedurally misplaced and should be denied. In addition, as shown below, none of the arguments that Plaintiffs make in their opening brief holds water.

## II.     <u>RELEVANT FACTUAL BACKGROUND</u>

### A.      The distributor franchise model.

Defendant Flowers Foods, Inc. is the parent holding company of numerous operating bakery subsidiaries like non-party FBC Modesto, each of which is its own

---

[1] *See, e.g.*, *Couch v. Morgan Stanley & Co.*, 2015 WL 4716297, at \*23-24 (E.D. Cal. Aug. 7, 2015), *aff'd*, 656 F. App'x 841 (9th Cir. 2016) ("MSSB's argument that Plaintiff has waived his arbitration rights is not a *claim*; it is essentially an affirmative defense . . . . The Court concludes that, as a matter of law, MSSB cannot demonstrate success on the merits of any underlying claim because MSSB has no underlying claim on which it could succeed.") (emphasis in original; citations and footnote omitted); *id.* at \*23 n.30 ("This would not be the case if, for instance, MSSB brought a separate action or a counterclaim for declaratory relief[.]").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

separate legal entity. (Declaration of William "Bill" Anderson ("Anderson Decl.")   ¶ 2; *see also* ECF Nos. 175-3, 175-14.) Flowers Foods, which is headquartered in Thomasville, Georgia, provides overall strategic direction to, and oversees the financial performance of, its subsidiaries. (*Id*. ¶ 3.) The subsidiaries, however, manage their own respective operations and are their own separate profit-and-loss centers. (*Id*.) FBC Modesto contracts with independent franchisees (known as "Distributors") that purchase distribution rights to market and sell bakery products in a defined geographic territory. (*Id.* ¶ 4.) Distributors are able to sell or transfer their distribution rights and profit from their entrepreneurial efforts. (*Id.*)

## B.   Relevant terms in the Distributor Agreement.

Distributors enter into a Distributor Agreement with subsidiaries like FBC Modesto. It establishes that the "DISTRIBUTOR is an independent contractor" and that "DISTRIBUTOR shall not be controlled by COMPANY as to the specific details or manner of DISTRIBUTOR's business . . . ." (*Id.* ¶ 6, Ex. 1, Distributor Agreement, "Witnesseth" Section, § 4, § 16.1.) Other than expressly prohibiting FBC Modesto from controlling Distributors' businesses, the Distributor Agreement is silent regarding the "specific details or manner" of how they may distribute products. Under Section 5.1 of the Distributor Agreement, Distributors agree to use their best efforts to develop and maximize the sale of products to retail accounts in their territory in accordance with "Good Industry Practice." The phrase "Good Industry Practice" is defined broadly as "the standards that have developed and are generally accepted and followed in the baking industry" and includes several broad, non-exhaustive examples, including "maintaining proper service and delivery . . . in accordance with [the customer's] requirements." (*Id.* §§ 2.6, 5.1.)

A Distributors' failure to comply with Section 5.1 and/or any other obligations in the Distributor Agreement is considered a material breach. (*Id.* § 5.2.) Pursuant to Sections 17.2 and 17.3, FBC Modesto can issue curable or non-curable breach letters. Section 17.3 specifies that repeated violations may result in termination of the

Distributor Agreement with no further right to cure on the Distributor's part.

Section 15.1 of the Distributor Agreement specifies that the sale or transfer of a Distributor's distribution rights is subject to FBC Modesto's written approval and the execution of concurrent general releases by both parties. Under Section 15.2, FBC Modesto is entitled to a right of first refusal on any sale or transfer. In the event that right is exercised, execution of concurrent general releases is also required.

### C.   David Aguero and Aguero Inc's distributor franchise relationship.

Aguero owns Aguero Inc, a California Corporation, and first began operating his distributorship in September 2013, when he purchased the distribution rights for Territory No. 7438. (Anderson Decl. ¶¶ 6, 8, Ex. 1 at pp. 42, 44.) On November 27, 2017, Aguero Inc sold its distribution rights for Territory No. 7438, profiting almost $100,000. (*Id.* ¶ 9, Ex. 2.) At the time Aguero Inc transferred those distribution rights, Aguero and Aguero Inc executed a general release as required under Section 15.1 of the Distributor Agreement. (*Id.* ¶ 10, Ex. 3.) On the same day, Aguero, via Aguero Inc, entered into a Distributor Agreement with FBC Modesto for Territory No. 9949. (*Id.* ¶¶ 6, 11, Ex. 1.)

Aguero Inc purchased the distribution rights for Territory No. 9949 through an Assignment/Assumption Agreement and Bill of Sale with Aljand Distributing Inc. (*Id.*) As part of the Distributor Agreement for Territory No. 9949, Aguero executed a personal guaranty for the performance of Aguero Inc's obligations under the Distributor Agreement.  (*Id.* ¶¶ 6, 11, Ex. 1 at p. 42 (Personal Guaranty).)

### D.   Aguero and Aguero Inc's prior lawsuit and arbitration agreement.

In April 2015, Aguero and Aguero Inc sued FBC Modesto's predecessor, Flowers Baking Co. of California, LLC, for various wage-and-hour claims under a misclassification theory. (Declaration of Jared L. Palmer ("Palmer Decl."), ¶ 2, Ex. 1.) During the course of the case, Aguero and Aguero Inc retained additional counsel, including Eric Grover, Ellyn Moscowitz, and Scot Bernstein. (*Id.*) While represented by counsel, Aguero agreed to arbitration. (*Id.* ¶ 3; Anderson Decl., Ex. 1.) Specifically,

Aguero and Aguero Inc accepted the Arbitration Agreement on July 6, 2018. (Palmer Decl. ¶ 3; Anderson Decl., Ex. 1.) And the Distributor Agreement for Territory No. 9949 was modified to require arbitration of a broad range of disputes, which would include an action for declaratory relief:

> **Mandatory and Binding Arbitration:** In addition to and/or instead of utilizing the negotiation and mediation procedures described in this Article, either DISTRIBUTOR or COMPANY may request binding arbitration to resolve any dispute between them. Both DISTRIBUTOR and COMPANY agree that all claims, disputes, and controversies arising out of or in a manner relating to: (i) this Agreement or any other agreement executed in connection with this Agreement; (ii) the performance, interpretation, application or enforcement hereof, including, but not limited to breach hereof and/or termination hereof; (iii) the services provided to COMPANY by DISTRIBUTOR or by DISTRIBUTOR to COMPANY; or (iv) any other dealings between DISTRIBUTOR and COMPANY, which has not been resolved pursuant to the negotiation and mediation provisions herein shall be submitted to binding arbitration in accordance with the terms and conditions set forth in the Arbitration Agreement attached hereto as Exhibit A, excepting only such claims, disputes, and controversies as specifically excluded therein.

(Anderson Decl. ¶ 6, Ex. 1 § 18.6.) The Arbitration Agreement further provides:

> The parties agree that, except as specifically excluded herein, any claim, dispute, and/or controversy that either DISTRIBUTOR (which includes its owner or owners) may have against COMPANY (and/or its affiliated companies and its and/or their directors, officers, managers, employees, and agents and their successors and assigns) or that COMPANY may have against DISTRIBUTOR (or its owners, directors, officers, managers, employees, and agents), arising from, related to, or having any relationship or connection whatsoever with the Distributor Agreement between DISTRIBUTOR and COMPANY ("Agreement"), including the termination of the Agreement, services provided to COMPANY by DISTRIBUTOR, or any other association that DISTRIBUTOR may have with COMPANY ("Covered Claims") shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA") in conformity with the Commercial Arbitration Rules of the American Arbitration Association ("AAA" or "AAA Rules"), or any successor rules, except as otherwise agreed to by the parties and/or specified herein. . . . Any issues concerning arbitrability of a particular issue or claim under this Arbitration Agreement (except for those concerning the validity or enforceability of the prohibition against class, collective, representative, or multi-plaintiff action arbitration and/or applicability of the FAA) shall be resolved by the arbitrator, not a court . . . . The Arbitrator will allow the parties to conduct adequate discovery including, but not limited to, issuing subpoenas to compel the attendance of witnesses at the arbitration hearing; serving written discovery; conducting depositions; and compelling the production of documents during discovery.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

(Anderson Decl. ¶ 6, Ex. 1 a pp. 43, 45 (§ 18.6, Ex. A, Arbitration Agreement at 1).)

### E.   Aguero and Aguero Inc's efforts to sell the distribution rights for Territory No. 9949.

Aguero retained his former counsel, Ms. Moscowitz, on or around October 7, 2019, to represent him in a proposed sale of the distribution rights for Territory No. 9949 to FBC Modesto. (ECF. No. 175-9 at 6.) On October 22, 2019, FBC Modesto informed Ms. Moscowitz that it was not interested in purchasing the distribution rights, but that Aguero Inc was entitled to sell to a third party pursuant to Section 15.1 of the Distributor Agreement. (Palmer Decl. ¶ 4, Ex. 2.)

On November 19, 2019, Aguero Inc submitted a Memorandum of Understanding for the sale of the distribution rights for $189,891. (ECF No. 175-6 at 62.) On December 16, FBC Modesto exercised its right of first refusal to purchase the distribution rights. (ECF No. 175-7 at 2.) FBC Modesto's letter requested that a mutual general release of claims be executed, as was required in the sale of the distribution rights for Territory No. 7438. (*Id.*; Anderson Decl. ¶¶ 10, Ex. 3.) FBC Modesto reiterated its election to exercise its right of first refusal through counsel on December 20, 2019. (Palmer Decl. ¶ 5, Ex. 3.)

On January 3, 2020, Aguero's attorney, Ms. Moscowitz, emailed FBC Modesto's counsel Aguero's withdrawal from *Ludlow*. (*Id.* ¶ 6, Ex. 4.) Ms. Moscowitz also informed counsel that Aguero would not execute a release as part of a sale of the distribution rights for Territory No. 9949. (*Id.* ¶ 7, Ex. 5.)

After Aguero refused to sell back the distribution rights pursuant to the Distributor Agreement, FBC Modesto sent another letter to his attorney on January 14, 2020, detailing the appropriateness of the exercise of its contractual right of first refusal. (*Id.* ¶ 8, Ex. 6.) Aguero's counsel responded that same day stating Aguero was withdrawing his intent to sell until after the "lawsuit or arbitration" of his wage claims and that FBC Modesto's counsel "should be hearing from [Mr.] Grover later [in the] week." (Palmer Decl. ¶ 9, Ex. 7.)

**F.      Uncertainty over who represents Aguero and Aguero Inc.**

As of January 17, 2020, Ms. Moscowitz, Mr. Grover, and Mr. Bernstein maintained that they represented Aguero. (*Id.* ¶ 10, Ex. 8.) However, on January 24, Plaintiffs' counsel in this action claimed they too represented Aguero and asked that he be allowed to sell his distribution rights without signing a release. (ECF No. 175-8.) Counsel for FBC Modesto sent Plaintiffs' counsel a letter asking them to confirm their representation and Aguero's status in *Ludlow* since he previously withdrew the consent filed on December 30, 2019. (ECF No. 175-9.) On February 4, Plaintiffs' counsel confirmed they represent Aguero and that he is not opting out of *Ludlow*. (ECF No. 175-10.) Nonetheless, as of March 3, 2020, Mr. Grover still maintained that he represented Aguero. (Palmer Decl. ¶ 11.)

**G.      Aguero and Aguero Inc's refusal to execute a general release.**

Throughout February and the first week of March 2020, counsel for FBC Modesto attempted to effectuate the exercise of its right of first refusal to purchase Aguero Inc's distribution rights for Territory No. 9949. (ECF Nos. 175-11, 175-12, and 175-13; Palmer Decl. ¶ 12, Ex. 9.) As of February 24, Plaintiffs' counsel conceded that Aguero cannot waive the claims at issue in *Ludlow* by signing a general release as part of the sale. (ECF No. 175-12.) However, Plaintiff's counsel took issue with the general release despite its express carve out of "any claim that cannot be released as a matter of law, including the wage and hour claims asserted in [*Ludlow*]." (ECF No. 175-13 ¶ 4; Palmer Decl. ¶ 12, Ex. 9 at 1.)

**H.      Termination of the Distributor Agreement for Territory No. 9949.**

Between August 20, 2019, and October 15, 2019, FBC Modesto issued Aguero Inc four breach letters for repeated violations of the Distributor Agreement. (ECF No. 175-5; Anderson Decl. ¶ 12, Ex. 4.) The breach letter issued on October 15 informed Aguero Inc that "[r]egardless of whether [it] remedies the [identified breach], be advised that any future failure of performance will likely be deemed to be a chronic failure of performance and will likely result in the termination of the Distributor

Agreement." (ECF No. 175-5; Anderson Decl. ¶ 12, Ex. 4.) On March 6, 2020, FBC Modesto terminated Aguero Inc's Distributor Agreement for repeated violations in accordance with Section 17.3 of the Distributor Agreement. (Anderson Decl. ¶ 13, Ex. 5.) The events leading to the termination of the Distributor Agreement included multiple customer complaints, over 100 units of out-of-code products on February 10, 2020, and Aguero Inc's failure to make arrangements to ensure its customers were properly serviced on February 10, February 13, February 17, February 20, February 27, March 5, and March 6, 2020. (*Id.*)

## I.   FBC Modesto initiates arbitration against Aguero and Aguero Inc.

The same day it terminated Aguero Inc's Distributor Agreement, FBC Modesto initiated arbitration against Aguero and Aguero Inc to obtain a declaration that (1) it properly exercised its right of first refusal to purchase the distribution rights for Territory No. 9949; (2) pursuant to the exercise of its right of first refusal, Aguero Inc must execute a general release to receive the proceeds from the sale of its distribution rights to FBC Modesto, subject to the express carve out discussed above; and (3) its termination of Aguero Inc's Distributor Agreement for chronic service issues was proper. (ECF No. 175-2 at 11:19-28.) The pending arbitration does not seek a determination of Aguero's employee classification or any wage-and-hour claims. (*See* ECF No. 175-2.) For purposes of seeking a declaration that the termination of the Distributor Agreement was proper, FBC Modesto will ask the arbitrator to assume that the distributor relationship is one of independent contractor. As such, the classification issue will not be determined in the arbitration.

Aguero Inc and Aguero filed an answer in the arbitration on March 24, 2020. (Palmer Decl. ¶ 13, Ex. 10.) They participated in the selection of an arbitrator in April. (*Id.* ¶ 14.) After the parties' counsel submitted their availability, a preliminary hearing conference was scheduled for June 18, 2020. (*Id.* ¶ 15, Ex. 11.)

## J.   Plaintiffs' counsel files two copycat lawsuits despite this case's stay.

The Court stayed this case on February 18, 2020. (ECF No. 174.) But that hasn't

stopped Plaintiffs' counsel, who's since filed two duplicative lawsuits. The first on April 17, 2020, in the Eastern District of California, entitled *Wilson, et al. v. Flowers Foods Inc. et al.*, No. 2:20-cv-00804-TLN-AC. The complaint largely copied the complaint filed in this case and was brought on behalf of a putative member of the uncertified FLSA collective and class asserted in this action. (*Compare* Palmer Decl. ¶ 16, Ex. 12 *with* ECF No. 1.) On May 7, counsel for Defendants sent Plaintiffs' counsel a copy of the Distributor Agreement and arbitration provision that Wilson signed, requesting that they agree to arbitration and dismiss their case. (Palmer Decl. ¶ 17, Ex. 13.) Plaintiffs' counsel did not respond and Defendants were required to prepare and file a motion to compel arbitration. (*Id.*) On May 29, Plaintiffs' counsel proposed dismissing *Wilson* without prejudice, with both sides waiving fees/costs. (*Id.* ¶ 18, Ex. 14.) Defendants rejected that proposal. (*Id.* ¶ 19, Ex. 15.) Without responding to Defendants' motion, Wilson filed a notice of voluntary dismissal on June 4, 2020, and the case was dismissed without prejudice. (*Id.* ¶ 20, Exs. 16 and 17.)

On June 10, 2020, Plaintiffs' counsel filed another lawsuit asserting the same claims raised in this action. This time in the Northern District of California in a case entitled *Maciel, et al. v. Flowers Foods, Inc., et al.*, No. 3:20-cv-03814. (Palmer Decl. ¶ 21, Ex. 18.)

## III.   ARGUMENT

### A.   The Court's stay order applies only to claims in this litigation.

#### 1.   Nothing in the Court's stay order prevents FBC Modesto from arbitrating its declaratory judgment claim.

Plaintiffs cite *S.E.C. v. Wencke*, 622 F.2d 1363 (9th Cir. 1980), to support their argument that "[t]he Court has authority to issue a stay that binds non-parties[.]" (Pl. Br. 7-8.) But *Wencke* involved the issuance of a stay in the narrow context of a receivership. *See Wencke*, 622 F.2d at 1369, 1370 ("The dispute regarding the district court's authority centers around its power to stay or enjoin nonparties from taking action against the entities in receivership . . . [S]tays directed to nonparties may be

entered where necessary to protect the federal receivership.").[2] It has no application in this putative employment class/collective action where the Court issued a stay pursuant "'to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Stay Order, Dkt. No. 174 at 2 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).)

What is more, even if *Wencke*'s receivership rule applied here and the Court did possess the authority to bind non-parties (like FBC Modesto) by the stay, it chose not to exercise that authority. Specifically, there is nothing in the Court's stay order instructing that it applies to non-parties. *Compare Wencke*, 622 F.2d at 1367 n.4 (stay expressly provides that it applies to "'[a]ll investors, creditors, and other persons . . .'"). Accordingly, the standard rule that a court's stay order does not bind non-parties applies.[3] For example, in *Ellison v. Autozone Inc.*, plaintiff's counsel also represented plaintiffs in the earlier-filed *Moreno* litigation, a similar class action against the same defendant. 2007 WL 1795699, at *1 (N.D. Cal. June 20, 2007). After the court in *Moreno* entered a stay pending decisions from the California Supreme Court, plaintiff filed *Ellison*. *Id.* Among other things, defendant argued that *Ellison* contravened the stay order entered in *Moreno*. *Id.* at *2. But the court disagreed, finding that "[t]here is no basis . . . to conclude that [plaintiff] violated any court order issued in the *Moreno* action, *which do not bind him as a non-party*." *Id.* at *2 & n.2 (emphasis added).

So too here with regard to FBC Modesto. In addition, the declaratory judgment claim in the arbitration is entirely different than the claims that Plaintiffs bring in this

---

[2] Other courts have distinguished *Wencke* on this basis. *See, e.g.*, *S.E.C. v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 843 (5th Cir. 2019) (*Wencke* "stand[s] only for the proposition that, in some circumstances, federal courts may use . . . stays . . . where necessary to protect the federal receivership" and when "[c]orrectly read . . . explain[s] that *in rem* jurisdiction over the receivership estate imbues the district court with broad discretion to shape equitable remedies necessary to protect the *estate*") (emphasis in original; quotation marks omitted).

[3] Defendants agree with Plaintiffs' contention that opt-in Plaintiffs, like Aguero, are bound by the Court's stay order. (Pl. Br. 9.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

case—there is *no overlap*. For that reason, even if the Court had the authority to bind non-parties with its stay order and decided to exercise that authority to bind FBC Modesto, there would still not be a violation of the stay order because it doesn't prevent the filing of unrelated, non-duplicative claims. *See, e.g.*, *Platte River Ins. Co. v. Dignity Health*, 2013 WL 1149656, at *4 (N.D. Cal. Mar. 19, 2013) ("[T]he stay does not prohibit filing a concurrent arbitration. Rather, it provides that 'the *Platte River/Arch* action shall be stayed,' making no mention of any other litigation . . . Thus, the stay did not prohibit the filing of the arbitration demand.").

Plaintiffs' also fail in their attempt to rely on Rule 65(d) for the proposition that "all persons who (1) receive actual notice of a *stay* or injunction and . . . (2) are the party's officers, agents, servants, employees, and attorneys, or are in active concert or participation with the party or any of the above categories, are bound by the *stay*." (Pl. Br. 8 (emphasis added).) Notwithstanding Plaintiffs' improper insertion of the word "stay," by its plain terms Rule 65 applies to "Injunctions and Restraining Orders," not to stays entered pursuant to a court's inherent authority to manage its docket. *See also* Rule 65(d) ("Contents and Scope of Every Injunction and Restraining Order"); *Captain John J. Kelley Post 1355 v. City of Sturgis*, 2006 WL 2398746, at *1 (W.D. Mich. Aug. 17, 2006) ("[A] stay refers to the Court's inherent authority to halt its own proceedings, *Landis*, 299 U.S. at 254, whereas the injunctive relief in Rule 65 contemplates a court order that commands or prevents the actions of another.").[4]

---

[4] As such, Plaintiffs argument that FBC Modesto had notice of the stay because "clients ordinary [*sic*] 'are considered to have notice of all facts known to their lawyer-agent,'" is irrelevant. (Pl. Br. 8-9 (quoting *Ringgold Corp. v. Worrell*, 880 F.2d 1138, 1141-42 (9th Cir. 1989)).) It doesn't matter whether FBC Modesto had notice of the stay because, as discussed above, Rule 65 is inapplicable, the stay doesn't bind non-parties, and, even if it did, FBC Modesto wouldn't be in violation. Nonetheless, *Ringgold* is distinguishable because it involved the imputation of knowledge that was acquired in the same case where the attorney represented the client. Here, by contrast, Plaintiffs are seeking to impute to FBC Modesto knowledge that its counsel acquired representing other parties in a separate action. *See, e.g.*, *In re Perle*, 725 F.3d 1023, 1028 (9th Cir. 2013) ("Perle has identified no case, nor are we able to find one, that imputes to a client knowledge that his lawyer gained while representing a *different* client. In fact, the authority is to the contrary.") (emphasis in original); *Ceja v. Scribner*, 2016 WL 4035665, at *7 (C.D. Cal. Mar. 3, 2016) (noting that "[t]here is

Finally, after improperly invoking Rule 65, Plaintiffs mainly rely on snippets from Flowers Foods' financial statements to argue that the stay applies to FBC Modesto because it is Flowers Foods' agent and worked in active concert with Flowers Foods. (Pl. Br. 8.) Initially, it makes no difference whether FBC Modesto is Flowers Foods' agent (it isn't) or whether they worked in active concert (they didn't) because Rule 65 doesn't apply. Regardless, with regard to agency, Plaintiffs have provided no evidence demonstrating that "the nature and extent of the control exercised over [FBC Modesto] by [Flowers Foods] is so pervasive and continual that [FBC Modesto] may be considered nothing more than an agent or instrumentality of [Flowers Foods]." *Holly v. Alta Newport Hosp., Inc.*, 2020 WL 1853308, at *3 (C.D. Cal. Apr. 10, 2020) (quotation marks omitted). To satisfy that standard, Plaintiffs must show "pervasive and continual control"—that Flowers Foods "in effect took over performance of [FBC Modesto's] *day-to-day* operations[.]" *Saaiman v. Am. Gen. Life Ins. Co., Inc.*, 2019 WL 1864858, at *4 (S.D. Cal. Apr. 25, 2019) (emphasis in original; quotation marks and text alteration omitted).

That requires more than pointing out that they share an officer or address (especially that they did so, as Plaintiffs contend, back in 2013), that FBC Modesto is Flowers Foods' wholly-owned subsidiary, or that Flowers Foods represents that they are part of the same entity. *See, e.g.*, *id.* at *1, *4, *5; *Holly*, 2020 WL 1853308, at *3 (allegations that parent company was doing business as the subsidiary, owned and operated the subsidiary, and was responsible for the administration, operation, and business of the subsidiary were insufficient to demonstrate an agency relationship); *Perfect 10, Inc. v. Yandex N.V.*, 2012 WL 3860804, at *2 (N.D. Cal. Sept. 5, 2012) ("[The] court of appeals has held that references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not

---

some authority that a client will not be charged with his attorney's knowledge when the attorney acquired that knowledge only in the course of representing another client in another case" and "recogniz[ing] the principle that a lawyer's knowledge (*gained in the same lawsuit*) is imputed to his client") (emphasis added).

establish the existence of an alter ego relationship and the mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law.") (quotation marks, citations, and text alterations omitted). Here, as detailed by William Anderson in his declaration, FBC Modesto manages its own operations and is its own separate profit-and-loss center.

Nor have Plaintiffs shown that FBC Modesto acted in active concert with Flowers Foods in violating the stay order. *See, e.g.*, *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) ("in active concert" applies to prevent non-parties from assisting parties to evade an order).[5]

## 2. If anyone has attempted to evade the stay order, it is Plaintiffs' counsel.

After the Court stayed this case, Plaintiffs' counsel filed a duplicative lawsuit against the same Defendants on behalf of Wilson—a putative member of the uncertified FLSA collective and class asserted in this action—in the Eastern District. As a result, Defendants moved to compel arbitration and to dismiss, arguing that Plaintiffs' counsel was improperly attempting to circumvent the stay in this case and that Wilson signed an arbitration agreement. Wilson did not even oppose Defendants' motion and voluntarily dismissed his claims.

The day before Defendants' opposition brief was due, Plaintiffs' counsel filed another duplicative action in the Northern District.[6]

---

[5] Defendants do not contest the Court's authority to issue an injunction binding the parties and others mentioned in Rule 65(d). (Pl. Br. 11.) But, as discussed above, that does not include FBC Modesto. *See, e.g.*, *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may . . . not attempt to determine the rights of persons not before the court . . . . The district court must, therefore, tailor the injunction to affect only those persons over which it has power (as provided in Rule 65(d))."); *Zamora v. Smith*, 2003 WL 27384433, at *2 (D. Ariz. Dec. 10, 2003) ("ADOC employees are not before the Court . . . Thus, in order to enforce an injunction . . ., Plaintiff would have to show that the [ADOC] employees are officers, agents, servants, employees, or attorneys of Defendants . . . or that they are persons in active concert or participation with Defendants.") (citing Rule 65(d)).
[6] *Ellison* is instructive. There, the court noted that it has the "inherent authority to dismiss *duplicative cases* brought for purposes of . . . evading prior court orders," 2007 WL 1795699, at *1 (emphasis added), like the cases that Plaintiff's counsel filed. The

1

2

**B.    Neither Defendants nor FBC Modesto has waived FBC Modesto's right to arbitrate its claim for declaratory judgment.**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

In their articulation of the applicable standard, Plaintiffs quote *Martin v. Yasuda*, 29 F.3d 1118, 1124 (9th Cir. 2016), for the proposition that "'[t]he right to arbitration, like other contractual rights, can be waived.'" (Pl. Br. 11.) While that's true, as *Martin* makes clear in the next two sentences—which Plaintiffs do not mention—waiver must be evaluated "in light of the *strong* federal policy *favoring* enforcement of arbitration agreements" and, "[b]ecause waiver of the right to arbitration is *disfavored*, any party arguing waiver of arbitration bears a *heavy* burden of proof." 829 F.3d at 1124 (emphasis added; quotation marks omitted). What is more, "'[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374, at *4 (C.D. Cal. July 9, 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) *and Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)).

18

19

20

21

"[A] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such

22

23

24

25

26

27

28

court then opined that, "[g]iven the large degree of overlap between the class claims raised in the *Moreno* action and the instant action, and the fact that plaintiffs in both actions are represented by the same counsel, [it] takes seriously the risk that [plaintiff]'s action could be improperly used to expand procedural rights he or other class members would otherwise enjoy." *Id.* at *2. Accordingly, though the court held that plaintiff as a non-party did not violate the stay order in *Moreno*, it still found that his "conduct raises at least the specter that his separate action could be used by [him] or other putative class members to circumvent the various orders that apply to the *Moreno* action." 2007 WL 1795699, at *1, *2, & n.2. But the court decided not to dismiss the lawsuit because, unlike in the cases that Plaintiffs' counsel filed, plaintiff's action was not entirely duplicative: even though the claims and classes largely overlapped, he asserted two new claims and sought to represent classes that were not found in *Moreno*. *Id.* at *2.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

inconsistent acts." *Martin*, 29 F.3d at 1124. Here, Defendants concede that FBC Modesto had knowledge of its right to compel arbitration (which, as discussed below, it promptly exercised). Thus, the Court need only evaluate the second and third factors. Plaintiffs do not come close to meeting their "heavy burden of proof" with regard to either.[7]

      **1.**       **Neither Defendants nor FBC Modesto has engaged in conduct inconsistent with FBC Modesto's right to arbitrate its claim.**

Throughout their brief, Plaintiffs improperly conflate the declaratory judgment claim in the arbitration with the entirely different, non-overlapping claims in this case. For example, Plaintiffs argue that Defendants "thoroughly engaged in and sought the protections and benefits of the judicial process for nearly a year before attempting to compel Aguero . . . to resolve claims in arbitration," including by participating in motion practice and discovery in this litigation. (Pl. Br. 13-15.[8]) But that has no bearing on whether FBC Modesto has waived its right to arbitrate a completely distinct claim.

Indeed, "the circuits to address the issue have said that waiver cannot be based on prior litigation unless the litigation was between the *same parties* and *involved essentially the same claim as the one to be arbitrated*." *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1207 (10th Cir. 2016) (citing *Microstrategy Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001); *Grumhaus v.*

---

[7] Though it has no bearing on this motion, Defendants expressly reserve their right to compel opt-in Plaintiffs, who are bound by arbitration agreements, to arbitrate the claims asserted in this case and will do so if the Court conditionally certifies an FLSA collective action.

[8] Plaintiffs misrepresent that FBC Modesto's declaratory judgment claim is the same as the claims at issue in this case. According to Plaintiffs, "Flowers [Foods] has already waived its right to arbitrate claims against . . . Aguero because of the months it spent trying to litigate the *same claims* in this case." (Pl. Br. 1 (emphasis added). *See also id.* 10 ("[A]bsent intervention by this Court, Aguero would be improperly forced to litigate his *employment classification* with Flowers in a collateral proceeding . . . Aguero would face costly and *duplicative* litigation[.]") (emphasis added).) Plaintiffs' counsel represents Aguero in the arbitration and knows full well that isn't true: the claim in arbitration has nothing to do with Aguero's "employment classification" or anything else in this case.

*Comerica Sec., Inc.*, 223 F.3d 648, 652 (7th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328-29 (5th Cir. 1999); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 132-34 (2d Cir. 1997)) (emphasis added). *See also Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014) ("A party that is aware that it has a right to compel arbitration of *a dispute* cannot wait to exercise that right until the parties have expended a significant amount of time and money to litigate *that dispute* in federal court.") (emphasis added).[9]

The Tenth Circuit further explained the rationale underlying this rule:

As for waiver by conduct, a party cannot be said to manipulate the judicial process by seeking to arbitrate a claim unless the party has litigated the same claim. If the present claim has not been litigated, the parties are still

---

[9] The waiver cases that Plaintiffs cite are readily distinguishable and support Defendants' position because all but one involve motions to compel arbitration of the *exact same claims* that were being litigated. *See Martin*, 829 F.3d at 1126, 1128 ("defendants engaged in conduct inconsistent with their right to arbitrate" because "[t]hey spent seventeen months litigating the case"); *Kelly*, 552 F. App'x at 664 ("PUD and Port waited eleven months after the lawsuit was filed to demand arbitration, actively litigating the case[.]"); *Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917, 921 (8th Cir. 2009) (defendant "sought a final decision from the district court upon the merits of the parties' dispute" before moving to compel arbitration of the same claims); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) ("Shearson implicitly waived arbitration of the civil RICO and pendent state law claims because Shearson acted inconsistently with its known existing right to arbitrate *those claims*.") (emphasis added); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 838 F. Supp. 2d 967, 978 (C.D. Cal. 2012) ("Toyota has been completely engaged in the present multi-district litigation . . . without offering any expression of the intent to seek arbitration of the *present claims*.") (emphasis added); *Martinez v. Welk Grp., Inc.*, 2012 WL 112535, at *2 (S.D. Cal. Jan. 12, 2012) (defendant waited two years to request that the court compel arbitration of plaintiff's claims); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066-68 (C.D. Cal. 2011) (defendant litigated claims for 13 months before moving to arbitrate). The only case with a different fact pattern is *Hoffman Construction Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796 (9th Cir. 1992). There, Active brought claims, including RICO, against Hoffman in federal court and subsequently demanded arbitration. *Id.* at 798. The court dismissed the suit on that ground. *Id.* The parties then agreed that, instead of going to arbitration, Active could bring its claims in state court. *Id.* Active filed a state court action, not including the RICO claim. *Id.* After trial, Active tried to arbitrate the RICO claim, but the lower court "held that . . . by proceeding in state court without a RICO claim, having waived arbitration to get into state court, Active was precluded from adjudicating the RICO claim in a new arbitration." *Id.* The Ninth Circuit affirmed, finding that Active waived arbitration of the RICO claim by entering into the agreement to litigate in state court and that the claim was barred by res judicata. *Id.* at 799. *Hoffman* has no bearing here: FBC Modesto never litigated or agreed to litigate its declaratory judgment claim; on the contrary, the parties agreed to arbitrate it.

1
2
3
4
5

> going to have to go to some forum—arbitration or litigation—to resolve it. And if the party now seeking arbitration has done nothing in the earlier litigation beyond what was appropriate in that litigation, its conduct in that litigation could hardly be an improper imposition on the court or opposing parties in the pending dispute. Whatever happened in the other litigation was going to happen regardless of whether the pending claim is arbitrated or litigated. In short, the party seeking arbitration cannot be accused of imposing a burden on the court or opposing parties by seeking arbitration of the present claim after litigating a different claim earlier.

6
7
8
9
10
11
12
13
14
15

*In re Cox Enters.*, 835 F.3d at 1207. As other courts have noted, "'waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated any issue relating to the underlying contract.'" *Spencer v. Midland Funding LLC*, 2016 WL 8677216, at *4 (D. Or. Oct. 21, 2016) (parenthetically quoting *Doctor's Assocs., Inc.*, 107 F.3d at 133). *See also Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd" because it "would amount to a rule that a party to millions of arbitration agreements has no choice but to arbitrate all claims arising from those agreements[.]").[10]

16
17
18

Plaintiffs again try to muddy the water by comingling the arbitration and litigation claims when they assert that Defendants "could have immediately and concurrently sought arbitration of Aguero['s] . . . claims over nine months ago." (Pl.

19
20
21
22
23
24
25
26
27
28

[10] District courts throughout the country have relied on this rule to reject claims of waiver. *See, e.g.*, *Spencer*, 2016 WL 8677216, at *5 ("[T]he Court concludes Defendants' efforts in state court to collect Plaintiff's debt do not constitute a waiver of their right to pursue arbitration on Plaintiff's [different] claims in this action."); *Newell v. Am. Ins. Administrators, LLC*, 2016 WL 627357, at *4 (W.D. Va. Feb. 16, 2016) ("[B]ecause the claims asserted in the Florida case are distinct, both legally and factually, from Newell's claims under the FCRA, the litigation surrounding those claims cannot support a finding that the defendants waived the right to arbitrate the claims asserted in the instant action."); *Davis v. CACH, LLC*, 2015 WL 913392, at *7 (N.D. Cal. Mar. 2, 2015) ("Plaintiff has not shown that Defendants acted inconsistent with their right to compel arbitration. The mere filing of a lawsuit in state court to collect on a debt does not mean that the debt collector cannot then compel arbitration if the debtor later brings suit regarding different claims."); *Envision Ins. Co. v. Khan*, 2014 WL 12868890, at *2 (M.D. Fla. Feb. 25, 2014) ("Only prior litigation of the *same legal and factual issues* as those the party now wants to arbitrate results in waiver of the right to arbitrate.") (emphasis added; quotation marks and text alteration omitted); *Bischoff*, 180 F. Supp. 2d at 1113 (no waiver because "the claims in the two lawsuits are not *identical*") (emphasis added).

Br. 12.) But FBC Modesto's declaratory judgment claim is based on recent events. FBC Modesto filed the arbitration on March 6, 2020, the *same day* that it terminated Aguero's distributor agreement. In other words, FBC Modesto did file "arbitration at [its] first opportunity to do so" and there was no "unreasonable delay" (*Id.* 12, 13). In any event, that doesn't matter because the issue has never been litigated.[11]

Therefore, even if—as Plaintiffs incorrectly contend—FBC Modesto is the agent of, or acted in active concert with, Flowers Foods, Defendants have not engaged in any inconsistent conduct in this litigation with regard to the declaratory judgment claim. *See, e.g.*, *Subway Equip. Leasing Corp.*, 169 F.3d at 328 ("Because the actions brought by the DAI affiliates involved claims that are different from the one DAI now seeks to arbitrate, it does not matter whether DAI's affiliates were the alter ego, agent, or precursor to DAI. Even if the affiliates and DAI were one and the same, DAI still would not have invoked the judicial process."). The conclusion that there has been no waiver is further strengthened by the fact that the arbitration involves different parties. *See, e.g.*, *In re Cox Enters.*, 835 F.3d at 1207 ("waiver cannot be based on prior litigation unless the litigation was between the same parties"); *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 620 (N.D. Cal. 2019) (holding that plaintiff could not rely on "allegedly inconsistent conduct in a separate case involving a different party" to establish waiver); *Goodale v. George S. May Int'l Co.*, 2011 WL 1337349, at *1 (N.D. Ill. Apr. 5, 2011) ("Plaintiffs cite to no authority, and the Court could find none, to suggest that a party's actions in a *prior* case could provide the basis for a waiver of arbitration in a future case, involving different claims and different parties.") (emphasis in original).

---

[11] In addition to improperly conflating the claims in the arbitration and litigation to argue that FBC Modesto waited too long to file its arbitration, Plaintiffs make up a reason for the imagined delay: "Flowers has specifically delayed moving to compel arbitration in order to engage in valuable discovery in federal court—discovery it would not necessarily have been entitled to in arbitration." (Pl. Br. 14.) Plaintiffs are wrong. There has been no delay and, regardless, the applicable arbitration provision provides the parties with the same types of discovery that they took in this case.

## 2.    Plaintiffs, including Aguero, will suffer no prejudice.

Plaintiffs contend that "engag[ing] in th[is] . . . litigation between June 2019 [when Aguero opted in] and February 2020 is significantly prejudicial in and of itself" because they participated in discovery and motion practice. (Pl. Br. 15, 16.) They also assert that they're "prejudiced to the extent that Flowers [Foods] obtained clear advantages from litigating in federal court[.]" (*Id.* 16.) Neither is correct.

"[T]he prejudice claimed by Plaintiffs is not the type of prejudice that [courts] consider in assessing whether a party has waived by conduct its right to demand arbitration." *In re Cox Enterprises*, 835 F.3d at 1208. "Prejudice refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that *same issue*." *Id.* at 1208-09 (emphasis added; quotation marks, text alterations, and ellipses omitted). That's not what happened here. In addition, discovery that the parties have taken so far will be available for trial of the claims at issue in this case. *See, e.g.*, *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (holding that extensive discovery into both arbitrable and non-arbitrable claims before moving to compel arbitration is insufficient prejudice for waiver if that discovery is available for trial of the non-arbitrable claim in court).

## C.    Plaintiffs, including Aguero, will not be irreparably harmed by the arbitration of FBC Modesto's declaratory judgment claim.

Initially, Plaintiffs cite *World Group Securities v. Tiu*, 2003 WL 26119461 (C.D. Cal. July 22, 2003), in support of their assertion that they would suffer irreparable harm if they are forced "to participate in simultaneous litigation of these disputes in separate actions." (Pl. Br. 21.) But plaintiff in *World Group Securities* was not a party to an arbitration agreement; that's why the court found that "forcing Plaintiff to arbitrate would deprive it of its right to choose a forum and result in simultaneous litigation of th[e] dispute in two forums," irreparably harming plaintiff. 2003 WL 26119461, at *7. Here, there is a binding arbitration agreement.

Accordingly, "[t]he FAA . . . requires . . . 'arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Harmon v. RDO Equip. Co.*, 2019 WL 4238877, at \*2 (C.D. Cal. July 3, 2019) (quoting *Fisher*, 791 F.2d at 698). *See also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 ("the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original). Nonetheless, FBC Modesto's declaratory judgment claim doesn't overlap with the claims in this case. So, Plaintiffs won't be required to engage in "simultaneous litigation." (Pl. Br. 21.)

Plaintiffs next contend that their "claims are not arbitrable" and they would suffer irreparable harm because "the time and resources [they] would expend in arbitration is not compensable[.]" (Pl. Br. 21-22.) But that argument misses the mark because the arbitration provision in the Distributor Agreement clearly applies to the declaratory judgment claim. Anyway, that's an issue for the arbitrator to decide: the arbitration agreement has a crystal-clear delegation clause providing that "[a]ny issues concerning arbitrability of a particular issue or claim under this Arbitration Agreement . . . shall be resolved by the arbitrator, not a court." *See, e.g.*, *Harmon*, 2019 WL 4238877, at \*3 ("The gateway issues regarding whether there is an agreement to arbitrate and whether the agreement covers the dispute . . . can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise[.]") (quotation marks omitted). What is more, "[i]f it turns out that the award improperly decides non-arbitrable issues and is adverse to Plaintiffs, they have an adequate remedy at law, *i.e.*, they may have it vacated." *Stanchart Sec. Int'l, Inc. v. Gavaldon*, 2012 WL 5471933, at \*2 (S.D. Cal. Nov. 9, 2012). *See also Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302, at \*8 (C.D. Cal. Apr. 15, 2020) ("[T]he Ninth Circuit has concluded that being required to 'arbitrate disputes that may not be arbitrable' does not constitute irreparable injury.") (quoting *Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990)).

Finally, Plaintiffs argue that "the uncertainty regarding the effect of the release places Aguero and other distributors in a difficult position" and that "such uncertainty 'imposes immediate and irreparable harm by deterring franchisees from participating in the case.'" (Pl. Br. 22 (quoting *Haitayan v. 7-Eleven, Inc.*, 762 F. App'x 393, 396 (9th Cir. 2019)).) Notably, on remand in *Haitayan*, the district court again found that plaintiffs made no showing of irreparable harm. 2019 WL 2620729, at *5, *6 (C.D. Cal. Apr. 29, 2009). In any event, *Haitayan* didn't involve whether an arbitration should be enjoined. Here, Aguero agreed to arbitrate any dispute related to the release. Any argument concerning the release is for the arbitrator to decide, and the only way to remove the "uncertainty" that Plaintiffs complain about is to let the arbitration proceed. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Billington*, 2018 WL 6321658, at *6, *7 (C.D. Cal. Jan. 8, 2018) ("Both of Plaintiff's arguments fail for the same reason: they are attacks on the merits of Defendants' FINRA claims, not their arbitrability . . . . [T]he arbitrator, not this Court should determine whether Defendants properly attribute the alleged conduct to Plaintiff. As such, Defendants' FINRA claims are arbitrable, irrespective of their ultimate merits.") (denying motion to preliminarily enjoin arbitration).

At bottom, Plaintiffs fail to show that there's a threat of imminent irreparable harm. That conclusion is also evidenced by the fact that Plaintiffs waited over *eleven weeks* before filing this motion, while they continued to participate in the arbitration by, for example, filing an answer on March 24 and selecting an arbitrator in April. *See, e.g.*, *Devasahayam v. DMB Capital Grp.*, 2017 WL 6547897, at *4 (S.D. Cal. Dec. 20, 2017) ("This motion was filed one month later. The delay is reason enough to deny a TRO . . . . [because] delay in seeking injunctive relief 'implies a lack of urgency and irreparable harm[.]'") (parenthetically quoting *Miller ex rel. NLRB v. Cal. Pac, Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993)); *Crocker v. Cal., Dep't of Rehab.*, 2014 WL 4187315, at *3 n.6 (E.D. Cal. Aug. 21, 2014) ("A 'long delay before seeking a

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

1
2
3
4
5
preliminary injunction implies a lack of urgency and irreparable harm.' Stated another way, the Court is of the view that the two-week delay between Plaintiffs' renewed fear of 'imminent' harm and the filing of this Motion tends to contradict Plaintiffs' claims of irreparable injury.") (quoting *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

6
7
### D.   Plaintiffs improperly attempt to litigate issues that address the merits of the declaratory judgment action, not its arbitrability.

8
9
10
11
12
13
14
15
Plaintiffs argue that they are likely to prevail on the merits because Aguero did not form a valid agreement to later sign a general release of claims against FBC Modesto and the release requirement is unenforceable under Section 1668 of the California Civil Code. (Pl. Br. 16-21.) Initially, these arguments are irrelevant and the Court should not even consider them because they improperly address the merits of the issues to be arbitrated. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2018 WL 6321658, at *6, *7, *supra*. They also relate to only one of the three items sought by FBC Modesto's declaratory judgment request.

16
17
18
19
20
21
22
23
Regardless, both arguments ignore the facts and the law. There was a valid agreement. Indeed, Aguero conceded as much when he without objection signed a prior general release. Plaintiffs suggest that the release is impermissible because of the impending misclassification claim. But contracts may be invalidated under Section 1668 only if they seek to exempt a party from responsibility for (1) fraud, (2) injury to a person or property, or (3) a violation of the law. Plaintiffs not only fail to show these circumstances exist (because they do not), but courts have found that releases are valid and can be upheld as to non-wage claims in misclassification litigation.[12]

24
25
26
27
28
---
[12] For example, in *Ahussain v. GNC Franchising, LLC*, defendant required its franchisees to sign general releases. 2008 WL 11336812, at *3 (C.D. Cal. Mar. 19, 2008). The court held that "the General Releases are not procedurally unconscionable and are also enforceable . . . [and that] it is worth noting that a franchisee should reasonably expect to abandon known grievances against its franchisor when agreeing to renew the relationship between the parties." *Id.* at *4. In *Haitayan v. 7-Eleven, Inc.*, a misclassification case, the court generally agreed with *Ahussain* and observed that if a general release of all claims in fact cannot legally release the claims, "then those

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

Plaintiffs' counsel, ignoring established law, would have Aguero pocket thousands of dollars in the sale of distribution rights but not sign a general release (excepting the wage-and-hour claims), which is quid pro quo for such profits.

**E.  The balance of equities weighs against issuing an injunction.**

Plaintiffs have failed to meet their burden to show that the balance of equities tips in their favor. Citing *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993), Plaintiffs contend that Defendants are much larger and stronger financially than they are. (Pl. Br. 22.) But *International Jensen* was a trademark case driven by policy concerns that are not at issue here. *See* 4 F.3d at 827 ("Given that Metrosound is much smaller and younger than Jensen and given that Jensen failed to vigorously protect its trademark claim, the court found the balance did not tip in Jensen's favor."). Other courts have distinguished *International Jensen* on the same basis. *See, e.g.*, *Haitayan*, 2019 WL 2620729, at *6 n.14 ("The Court acknowledges that 7-Eleven is a larger entity than each franchisee, but finds that the considerations driving the analysis in the cited trademark cases do not apply here.").

Plaintiffs next assert that "the burden of unwinding improperly obtained releases is far greater than a short delay in execution of the same." (Pl. Br. 22-23.) Other courts have rejected the same argument and ruled that "a preliminary injunction cannot be issued merely to prevent a party from facing such a challenge." *Haitayan*, 2019 WL 2620729, at *6 n.15. Even if Plaintiffs' argument had merit, the only way to determine whether the release was "improperly obtained" in the first place is by letting the arbitration proceed.

Closely related to that argument, Plaintiffs' claim that they "face an extremely difficult decision" regarding whether to sign the release and that "[t]he equities

claims are not released, and there is no harm to Plaintiffs in signing the renewal agreement." 2019 WL 2620729, at *4. "If, however, a general release of such claims is not barred by California law (whether § 206.5, § 2804, or some other aspect of California law), then [defendant] is entitled to have its contract (including the full extent of its general release) enforced." *Id.*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

particularly weigh in favor of an injunction where the Court will soon decide whether Aguero and other distributors are Flowers' employees, and thus substantially clarify the risk calculus and allow the distributors to make a more-informed decision." (Pl. Br. 23.) But there is no indication that the Court—rather than a jury—will decide whether Plaintiffs were properly classified, much less that it "will soon decide" the issue. The only way to "clarify the risk calculus" is to let the arbitration play out, as the parties agreed. If the arbitrator buys Aguero's arguments that the release is invalid then he won't even have to sign it. "Franchisees, like all other contracting parties, must always consider the various risks and rewards in choosing whether to enter into an agreement[,] [b]ut it is not the role of the Court or the function of a preliminary injunction to eliminate that risk," especially when the parties' dispute belongs in arbitration. *Haitayan*, 2019 WL 2620729, at *5.

Finally, Plaintiffs downplay the harm that FBC Modesto would suffer if the arbitration is enjoined. But, if anyone is at risk of suffering irreparable harm, it is FBC Modesto. *See, e.g.*, *Converse, Inc. v. Am. Telecomms., Inc.*, 2006 WL 3016315, at *5 (S.D.N.Y. Oct. 23, 2006) (noting that "deprivation of a party's contractual right to arbitration constitutes irreparable harm"). "[D]eprivation of the right to arbitration is of particular weight in light of the strong federal policy favoring arbitration as an alternative means of dispute resolution." *Id.* (quotation marks omitted). *See also Postmates Inc.*, 2020 WL 1908302, at *8 (denying motion to preliminarily enjoin arbitration because "Defendants have an interest in being permitted to pursue their . . . claims in arbitration, which is supposed to be a speedy and inexpensive alternative to litigation, and which the agreement they entered into . . . expressly requires") (quotation marks omitted).[13]

_____

[13] Because Aguero is bound by an arbitration agreement, Plaintiffs' reliance on *Credit Suisse Sec. (USA) LLC v. Chia*, 2013 WL 12114009, at *4 (C.D. Cal. Oct. 18, 2013) (emphasis added), which held that "the irreparable harm Plaintiffs would suffer if the injunction is erroneously denied—*i.e.*, being required to arbitrate a dispute it *did not agree to arbitrate*—outweighs the delay in arbitration Chia would suffer," and Plaintiffs' argument that this Court is the proper forum for the declaratory judgment

### F.     Enjoining the arbitration is not in the public interest.

Plaintiffs argue that granting their request would promote California's interest in allowing wage-and-hour claims to proceed. (Pl. Br. 23-24.) Not so: the applicable release expressly carves out the wage-and-hour claims asserted in this case. (ECF No. 175-13.) Thus, those claims will proceed even if Aguero signs the release. Plaintiffs' next argument depends on the release violating California Civil Code § 1668, which, as discussed above, is an issue for the arbitrator. (Pl. Br. 24.) Plaintiffs' last argument is that "the principle of judicial comity requires that Flowers' arbitration action[] be enjoined to avoid the possibility of conflicting judgments." (*Id.*) The decision they cite to support that point, *Wheat v. California*, 2013 WL 450370, at \*6 (N.D. Cal. Feb. 5, 2013), addressed two cases where the "legal issues involved" were "substantially the same." That decision is inapplicable here where the claims are *entirely different*. Accordingly, Plaintiffs have not provided even one viable argument that preliminarily enjoining the arbitration is in the public interest.

For good reason: it is not. "[D]elay weighs against the public interest" because "[i]t is beyond cavil that the goal of arbitration is to provide an expeditious and efficient alternative to litigation" and, as such, entering an injunction would be "contrary to and undermine[] those goals." *Adams v. Postmates, Inc.*, 2020 WL 1066980, at \*6 (N.D. Cal. Mar. 5, 2020). "[T]he public interest is also served by the enforcement of a valid and binding contract." *Haitayan*, 2019 WL 2620729, at \*6 (quotation marks omitted). Finally, "there is a strong federal policy favoring arbitration" and, "[i]n light of this policy, . . . the public interest supports denial of the preliminary injunction." *Ressler v. Vietnam Mar. Commc'n & Elecs. Co.*, 2010 WL 11601041, at \*6 (C.D. Cal. Aug. 9, 2010). *See also Harmon*, 2019 WL 4238877, at \*2 ("The FAA creates a 'national policy favoring arbitration.'") (quoting *Nitro-Lift Techs, LLC v. Howard*, 568 U.S. 17, 20 (2012)).

---

claim (Pl. Br. 23), are misplaced.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### G.    The first-to-file rule is inapplicable.

Plaintiffs cite *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2012 WL 3757486 (N.D. Cal. July 5, 2012), for the proposition that the first-to-file rule applies "to enjoin later-filed arbitration proceedings." (Pl. Br. 24.) But *Beauperthuy* did not enjoin an arbitration proceeding; it enjoined "filing any out-of-district *Petitions to Compel Arbitration*." 2012 WL 3757486, at *16 (emphasis added). As other courts have held, the first-to-file rule is inapplicable here. *See, e.g.*, *Platte River Ins. Co.*, 2013 WL 1149656, at *9 ("The Court need not engage in a full-throated first-to-file analysis. First, . . . this is not a situation where two cases are pending in two different federal district courts, but rather where one action is in federal court and the other in arbitration. Second, the first-to-file doctrine is premised on a situation where two fora have concurrent jurisdiction over a dispute."). Plaintiffs' argument also fails because the declaratory judgment claim in the arbitration does *not overlap* with any of the claims in this case. *See, e.g.*, *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240-41 (9th Cir. 2015) ("To determine whether two suits involve substantially similar issues, we look at whether there is *substantial overlap* between the two suits.") (quotation marks and citations omitted).[14]

### IV.    CONCLUSION

For the aforementioned reasons, the Court should deny Plaintiffs' motion in its entirety.

---

[14] Plaintiffs' cases are distinguishable on this ground. *See Kohn Law Grp., Inc.*, 787 F.3d at 1241 ("the present case involves *the issue* to be determined in the Mississippi . . . action"); *Zuru LLC v. Lego Sys., Inc.*, 2019 WL 6998790, at *2 (C.D. Cal. July 22, 2019) ("The issues in the Connecticut action substantially overlap with this action."); *De La Cruz v. Target Corp.*, 2018 WL 3817950, at *2 (S.D. Cal. Aug. 8, 2018) ("the parties agree the issues in the two actions are substantially similar"); *Beauperthuy*, 2012 WL 3757486, at *10 ("the 273 Petitions [to compel arbitration] and the later-filed actions involve the same core issues").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  June 11, 2020                    OGLETREE, DEAKINS, NASH, SMOAK &
                                         STEWART, P.C.


                                         By: /s/ *Frank L. Tobin*
                                              Frank L. Tobin
                                              Cody J. Cocanig
                                              Kevin Hishta
                                              Paul B. Maslo
                                              Attorneys for Defendants FLOWERS
                                              FOODS, INC., FLOWERS BAKERIES,
                                              LLC, and FLOWERS FINANCE LLC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 11, 2020.

By: */s/ Frank L. Tobin*
Frank L. Tobin

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION TO ENFORCE THE COURT'S STAY
AND TO ENJOIN FLOWERS' LATER-FILED ARBITRATION ACTION AGAINST OPT-IN PLAINTIFFS