1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

11  DANIEL LUDLOW, et al.,                  Case No.:  18-cv-01190-JLS-JLB
12                        Plaintiffs,
                                            **ORDER GRANTING IN PART**
13  v.                                      **PLAINTIFFS' MOTION FOR**
                                            **PROTECTIVE ORDER**
14  FLOWERS FOODS, INC., et al.,
15                        Defendants.
16                                          **[ECF No. 169]**
17

18       Before the Court is Plaintiffs' Motion for Protective Order.   (ECF No. 169.)

19  Plaintiffs request that the Court issue a protective order limiting the amount of discovery

20  Defendants may propound on the Fair Labor Standards Act ("FLSA") collective action opt-

21  in plaintiffs.  Defendants oppose Plaintiffs' motion and argue that the Court should allow

22  them to conduct individualized discovery from all the 115 opt-in plaintiffs. (ECF No. 170.)

23  For the reasons set forth below, the Court **GRANTS in part** Plaintiffs' Motion for

24  Protective Order.

25              I.    **BACKGROUND**

26       This case centers around Plaintiffs' challenge to their employment classification and

27  allegation that Defendants willfully misclassified them and their distributor co-workers as

28  independent contractors rather than employees.  (ECF No. 56 ¶ 1.)  Plaintiffs' first cause

of action alleges that their improper classification has deprived them of overtime compensation to which they are entitled under the FLSA. (*Id.* ¶¶ 63–68.) Plaintiffs bring this cause of action as a collective action on behalf of themselves and all similarly situated individuals. (*Id.* ¶ 42.) As stated, the parties dispute whether the Court should permit Defendants to conduct individualized discovery from all individuals who opt in to the collective action, as opposed to representative discovery, and the appropriate breadth of that discovery.

On November 1, 2019, counsel for the parties left a joint voicemail message requesting the Court's assistance with the instant discovery dispute. (ECF No. 145.) On November 15, 2019, the Court held a telephonic, counsel-only Discovery Conference with counsel for the parties. (ECF No. 148.) During the Conference, the Court questioned whether it was procedurally appropriate for Defendants to propound party discovery (as opposed to third-party discovery) on the opt-in plaintiffs or depose them when the District Judge had not yet conditionally certified the FLSA class.[1] The Court directed the parties to submit a supplemental joint discovery statement on the issue. (*Id.*) Additionally, the Court cautioned Defendants that many of their discovery requests were overbroad and urged Defendants to narrow them. The Court further directed Defendants to explain in the supplemental statement the anticipated value of the 36 requests for production ("RFPs") and 16 interrogatories propounded to each of the 115 opt-in plaintiffs.

---

[1]    The Honorable Janis L. Sammartino denied Plaintiffs' Motion for Conditional Certification of the FLSA collective action as moot on March 22, 2019, after Plaintiffs filed an Amended Complaint that added a second named plaintiff and an additional cause of action. (ECF No. 64.) Between June 26, 2019 and November 5, 2019, 111 additional individuals submitted FLSA consent forms, bringing the size of the opt-in class to 115. (ECF Nos. 86; 96; 97; 114; 125; 146.) Plaintiffs filed a Motion for Class Certification on June 28, 2019, but the motion was only as to class certification under Federal Rule of Civil Procedure 23. (ECF No. 90.) Judge Sammartino denied Plaintiff's Motion for Class Certification as moot on February 18, 2020, after granting Defendants' Motion to Stay. (ECF No. 174.)

On December 11, 2019, the Court held a continued, telephonic, counsel-only Discovery Conference.  (ECF No. 161.)  While continuing to express concern as to the procedural propriety of Defendants propounding party discovery to the opt-in plaintiffs before conditional certification, the Court also reiterated its concern that Defendants had continued to request all of their discovery as initially drafted without narrowing any of their requests or explaining in detail what their requests were meant to achieve.  The Court determined that the issues could not be resolved through an informal discovery process and set a deadline for Plaintiffs to formally brief the issue in a motion for protective order.  The Court advised Defendants that it would not allow the scope of discovery as requested and once again encouraged Defendants to narrow and limit their requests.  The Court cautioned Defendants that if they stood by their requests as drafted and made no effort to refine them, the Court would not be inclined to rewrite any requests in the event Plaintiffs' objections were sustained.

On December 30, 2019, counsel for the parties left a joint voicemail message requesting a two-week extension of all dates in the Briefing Schedule for Plaintiffs' Motion for Protective Order to allow the parties additional time to meet and confer regarding the scope of Defendants' discovery requests.  (*See* ECF No. 165.)  After the Court granted the parties' request (ECF No. 165), Plaintiffs filed the instant Motion for Protective Order on January 14, 2020.  (ECF No. 169.)  Defendants filed an opposition (ECF No. 170) and an amended opposition (ECF No. 171) on January 22, 2020.  Plaintiffs filed a reply on January 27, 2020.

On February 18, 2020, Judge Sammartino granted Defendants' Motion to Stay pending the California Supreme Court's determination of whether the "ABC" test as announced in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), applies retroactively.  (ECF No. 174.)  Although this case is currently stayed, the Court finds resolving the instant discovery dispute now to be appropriate, for whether the ABC test applies retroactively does not impact this dispute.

///

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 provides that parties:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under Rule 26, relevancy alone is not sufficient to obtain discovery.  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.  Discovery must also be proportional to the needs of the case.  *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710, at *3 (E.D. Cal. Feb. 10, 2017)).  Rule 26 requires that courts "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Doherty*, 2017 WL 1885677, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Regardless of its broad nature, however, relevancy is not without "ultimate and necessary boundaries."  *Id.*  (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes.  *Id.*  (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Because "pretrial discovery by depositions and interrogatories has a significant potential for abuse," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), district courts "may, for good cause, issue an order to protect a party or person from annoyance,

4

embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Robinson v. Chefs' Warehouse*, No. 3:15-cv-05421-RS (KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times Co.*, 467 U.S. at 36). District courts may, among other things, forbid discovery, specify the terms for discovery, forbid inquiry into certain matters, or limit the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (B), and (D). "The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)). This burden may be met by showing that the discovery requested "is irrelevant, overly broad, burdensome, or oppressive." *Del Socorro Quintero Perez v. United States*, No. 13cv1417-WQH-BGS, 2016 WL 705904, at *6 (S.D. Cal. Feb. 23, 2016).

### III.   DISCUSSION

**A.   Parties' Arguments**

    1.   Plaintiffs' Arguments

Plaintiffs argue that the Court should grant their request for a protective order to save them from the oppression, burden, and expense of responding to nearly 6,000 written discovery requests and defending 115 depositions, which Plaintiffs estimate would take anywhere from 13 to 18 months to complete. (ECF No. 169-1 at 2–3.) In addition to the burden imposed simply by the volume of discovery Defendants seek, Plaintiffs argue that a protective order is necessary because Defendants' proposed discovery ignores the efficiency aims of collective actions under the FLSA. (*Id.* at 5.) Plaintiffs contend that "[m]any courts correctly recognize the tie between the FLSA's purpose and discovery permitted in collective actions," often "limit[ing] defendants to a sampling of opt-in discovery rather than full[-]scale[,] individualized discovery." (*Id.*)

Plaintiffs further argue that Defendants already possess "over 20 distributor declarations" that they used to oppose Plaintiffs' Motion for Conditional Certification, and

Defendants filed 68 distributor declarations or deposition excerpts in support of Plaintiff's Rule 23 Motion for Class Certification.  (*Id.* at 8.)   Plaintiffs contend that, "[g]iven [Defendants'] ability to obtain distributor testimony and the vast amount of distributor testimony obtained to date going to analogous class certification issues, it is unclear why [Defendants] need[] 115 more depositions to file a single motion for decertification."  (*Id.*)

Finally, Plaintiffs argue that Defendants' discovery requests are overbroad and many "seek[] to delve into Rule 23 state law claims unrelated to FLSA claims," but class discovery closed in May 2019.  (*Id.* at 9; ECF No. 173 at 3–4.)  Plaintiffs specifically object to RFP Nos. 23, 24, 26–30 and Interrogatory Nos. 4–7 on the basis that they are irrelevant to the FLSA overtime claim.  (ECF No. 169-1 at 10.)   Plaintiffs object to certain requests on several grounds: (1) they call for information known and available to Defendants (RFP Nos. 1, 15; Interrogatory No. 1); (2) they seek tax return information (RFP Nos. 12–16; Interrogatory No. 3); and (3) they seek legal conclusions and/or premature disclosure of expert testimony (RFP Nos. 20–31; Interrogatory Nos. 4–7, 14).  (*Id.* at 10–11.)

Plaintiffs provide that they are, however, "amendable to a reasonable sampling of opt-in discovery and/or allowing some limited, written discovery to each opt-in plaintiff distilled down to the core information" Defendants need, and only relating to the FLSA claim.  (*Id.* at 7.)  Plaintiffs propose that the Court limit opt-in discovery to a sampling of about 15 of the 115 opt-in plaintiffs, with written discovery further limited to 5 RFPs and 5 interrogatories.  (*Id.* at 11.)

### 2.   Defendants' Arguments

In their opposition, Defendants first argue that they are entitled to individualized discovery from all the opt-in plaintiffs because the opt-in plaintiffs have party status, and therefore, "should be subject to discovery accordingly."  (*See* ECF No. 171 at 5.) Defendants contend that district courts in California routinely permit individualized discovery from opt-in plaintiffs, citing first to *Coldiron v. Pizza Hut, Inc.*, No. CV03–05865TJHMCX, 2004 WL 2601180 (C.D. Cal. Oct. 25, 2004).  (*Id.*)  Defendants explain that the court in *Coldiron* permitted individualized discovery from the 306 opt-in plaintiffs

18-cv-01190-JLS-JLB

because the defendants intended to move to decertify the conditionally-certified FLSA class. (*Id.*) Defendants then cite to *Abubakar v. City of Solano*, No. CIV S-06-2268 LKK EFB, 2008 WL 508911 (E.D. Cal. Feb. 22, 2008), wherein the court permitted individualized discovery from the 160 opt-in plaintiffs. (*Id.* at 5–6.) Defendants urge this Court to "follow" *Coldiron* and *Abubakar* and "permit Defendants to take individual discovery of the 115 opt-in [p]laintiffs here." (*Id.* at 6.) Defendants posit that the discovery they seek is "not impossible or impractical" and "[w]ith just 115 opt-ins," the Court should not limit them to representative discovery. (*Id.* at 9.)

Defendants next argue that individualized discovery is necessary to support an anticipated motion to decertify the collective class and "the only way to uncover factual and legal differences to show that the opt-in [p]laintiffs are not able to proceed collectively." (*Id.* at 7.) Defendants contend generally, without defending each request individually, that their "discovery requests aim to determine whether the opt-in [p]lainitffs . . . are in fact similarly situated." (*Id.* at 7–8.) Defendants argue that they propounded "only 16 interrogatories" that "each target[] a discrete subject matter," and their 36 RFPs likewise cover "distinct subject matters." (*Id.* at 8.) As to depositions, Defendants state that they "believe" deposing "all the opt-ins will uncover further differences between" them, such as "varying hours and schedules worked, timing of deliveries, number of stops, vehicles used, use of uniforms, composition of customers, composition of territories, how they price their products for different customers, the extent of which (if at all) they were subjected to oversight from Defendants' sales managers, and training and education received." (*Id.*) Defendants propose no alternative to propounding their discovery requests as drafted[2] on each of the 115 opt-in plaintiffs or to deposing each opt-in plaintiff.

---

[2] Defendants did, however, amend each RFP and interrogatory to request only documents that "reflect" certain things as opposed to documents that "constitute, evidence, reflect or refer" to those things, with the exception of RFP No. 14. (ECF No. 171-3 at 6–11.) Because Defendants' failure to amend RFP No. 14 appears unintentional, the Court has amended RFP No. 14 to likewise request only documents that "reflect" (the amount

18-cv-01190-JLS-JLB

**B.     Analysis**

      1.     Considerations for Individualized Discovery

      Plaintiffs here are not taking the position that any discovery directed to the opt-in plaintiffs is improper.   Rather, the parties dispute whether discovery should be individualized and propounded to all opt-in plaintiffs or to a representative sample, and the appropriate extent of such discovery.   District courts in the Ninth Circuit have taken different positions on whether individualized or representative discovery is appropriate in FLSA collective actions and the extent of allowable discovery.   *See Slack v. Parball NewCo, LLC*, No. 2:16–cv–02324–KJD–CWH, 2018 WL 1472574, at *2–3 (D. Nev. Mar. 26, 2018) (collecting cases on different approaches); *Cranney v. Carriage Servs., Inc.*, 2008 WL 2457921, at *2–3 (D. Nev. June 16, 2008) (same); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (recognizing in dicta that case law is unsettled regarding individualized opt-in discovery in FLSA cases).   This Court is persuaded by the rationale of courts that have imposed reasonable limitations on discovery from opt-in plaintiffs—whether individualized or representative—by recognizing the purpose of collective actions[3] and the potentially burdensome nature of individualized discovery, and balancing those factors against the defendant's need to conduct enough

---

and source of income earned or received).   (*Infra* note 5.)   Additionally, Defendants withdrew RFP Nos. 23–30, which Plaintiffs objected to as irrelevant to their FLSA claims. (ECF Nos. 169-1 at 10; 171-3 at 10–11.)

[3]     Collective actions serve to lower the cost of litigation for individual claimants and promote efficiency in resolution of claims and judicial resources.   *See Hoffmann-La Roche Inc., v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."); *Barker v. U.S. Bancorp.*, No.: 3:15-cv-1641-CAB-WVG, 2017 WL 4358116, at *6 (S.D. Cal. Oct. 2, 2017) ("[T]he primary objectives of a collective action [are]: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." (quoting *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1127 (N.D. Cal. 2011), *abrogated by Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018))).

discovery to support a motion to decertify a conditionally-certified class. *E.g.*, *Cranney*, 2008 WL 2457921, at *3. With a focus on Federal Rule of Civil Procedure 26(b)(1)'s proportionality requirement, these courts tend to focus on the practicality of individualized discovery.

Surveying the various decisions in this arena, one can discern a number of common practical considerations. Of course, the determination of whether to allow individual or representative discovery, and how much, is highly fact-specific. But the size of the opt-in class and whether representative discovery would yield statistically significant information must be important considerations. *See, e.g.*, *Page v. Grandview Mktg., Inc.*, No. 2:09-cv-01150-RCJ-GWF, 2010 WL 11629668, at *6 (D. Nev. Oct. 6, 2010) (permitting individualized discovery of approximately 80 opt-in plaintiffs and finding that a 10% sampling, as proposed by the plaintiff, would not be statistically representative of the opt-in class); *Ingersoll v. Royal & Sunalliance USA, Inc.*, No. C05-1774-MAT, 2006 WL 2091097, at *3 (W.D. Wash. July 25, 2006) (permitting individualized discovery of 34 opt-in plaintiffs and noting that the plaintiff's request to allow "only a small representative sample ignore[d] the fact that [the] matter involve[d] a relatively small" opt-in class). The smaller the number of opt-in plaintiffs, the more likely courts are to find individualized discovery to be reasonable, although this is not always the case. *See, e.g.*, *Kelsey v. Entm't U.S.A., Inc.*, No. CV–14–01105–PHX–NVW, 2015 WL 4064715, at *2 (D. Ariz. July 2, 2015) (finding that even with a class of 66 opt-in plaintiffs, "individual discovery of each plaintiff would still impose a significant and unnecessary burden on [the] [p]laintiffs"). An additional consideration is the type of discovery requested, with courts more frequently permitting individualized discovery from opt-in plaintiffs when the discovery is limited and targeted to probing the similarities between opt-in plaintiffs.

Here, Defendants' arguments in favor of individualized discovery rely heavily on the fact that there are "just" 115 opt-in plaintiffs currently in this case without consideration as to the volume of the requested discovery. (*See* ECF No. 171 at 9.) Defendants argue that compelling each of the 115 opt-in plaintiffs to respond to 52 discovery requests and sit

for a deposition is not "impractical" because there are cases that "permitted individual discovery from far more opt-in plaintiffs." (*Id.*)  But Defendants cite to only two cases from within the Ninth Circuit for support—*Coldiron and Abubakar*—and rely on these cases solely because of the size of each opt-in class.

As previously stated, the court in *Coldiron* permitted individualized, written discovery from each of the 306 opt-in plaintiffs. 2004 WL 2601180, at *2.  However, the court did not analyze in detail the merits of allowing individualized discovery from a class of 306 opt-in plaintiffs, stating only that the defendant's intention to decertify the class was "reason alone" without further analysis.  *Id.*  The court also stated that in opposing the defendants' motion to compel, the plaintiffs did not specifically oppose each request and took an "all or nothing position with respect to the requested discovery," and therefore had to "live with" their choice.  *Id.*  And notably, the defendant in *Coldiron* was not seeking to depose each of the 306 opt-in plaintiffs, and the court did not comment on the number of written requests at issue.

Defendants also rely on *Abubakar*, wherein the plaintiffs sought a protective order limiting FLSA opt-in discovery to a "statistically significant[,] limited[,] representative sampling" of the 160 opt-in plaintiffs.  2008 WL 508911, at *2.  Relying on *Colidron*, the court denied the plaintiffs' request to limit "the number of plaintiffs defendant may depose or seek discovery from."  *Id.*  The court reasoned that individualized discovery was appropriate because the defendant intended to challenge the conditional certification of the opt-in class.  *Id.*  However, the court recognized that individualized discovery should be limited and directed the defendant "to redraft its requests for production and interrogatories [to be] more narrowly tailored to the issue of whether or not plaintiffs [were] 'similarly situated' within the meaning of 29 U.S.C. § 216(b)."  *Id.* at *3.  The court added that it had previously "admonished [the] defendant regarding the proper scope of discovery during this phase of an action brought under the FLSA."  *Id.*

Although the courts in *Colidron* and *Abubakar* allowed individualized discovery from larger collective classes than the class here, neither decision indicated the breadth of

10

discovery that was at issue.  Without knowing the amount of discovery permitted, the Court takes little guidance from these cases in determining whether it should permit Defendants to propound 36 RFPs and 16 interrogatories on each of the 115 opt-in plaintiffs and conduct 115 depositions.    Other cases from courts in the Ninth Circuit that have allowed individualized discovery have permitted far less discovery than Defendants here request. For example, in *Slack v. Parball Newco, LLC*, a relatively recent case, the defendant wished to propound up to 5 interrogatories and 8 RFPs on each of the 80 opt-in plaintiffs.  2018 WL 1472574, at *1 (D. Nev. Mar. 26, 2018).  The court permitted individualized discovery, finding the 80-person opt-in class "relatively small."  *Id.* at *3.  The court, however, was "mindful of the efficiency considerations underlying collective actions," and without "expressing an opinion on the discovery requests at issue," expected that in moving forward:

> the experienced and professional counsel on this case will be mindful of the purpose of collective actions and will make every effort to avoid burdening counsel, the parties, and the court with excessive discovery.  The court expects that discovery requests *will be limited in number* and that the substance of the requests will be targeted to the issues of whether the plaintiffs are similarly-situated and/or defendants' defenses.  The court expects counsel to work collaboratively to propound written discovery on the opt-in plaintiffs in a simple and direct fashion that *reduces the burden on plaintiffs' counsel to the greatest extent possible*.

*Id.*  (emphasis added); *see also Page*, 2010 WL 11629668 (allowing individualized discovery from the 85 opt-in plaintiffs but limiting defendant to 7 requests for admission from the entire class, 10 RFPs and 10 interrogatories from opt-ins who worked for the defendant for more than 90-days (more than half the class), and 5 RFPs and 5 interrogatories for the remaining opt-ins).

### 2.    Limitations on the Requested Discovery

Here, the Court finds that Plaintiffs have shown good cause for the issuance of a protective order, for the amount of discovery Defendants have propounded is oppressive and burdensome.  Defendants have not convinced the Court that any need for the amount

of discovery currently propounded is sufficient to outweigh the burden on Plaintiffs in responding to nearly 6,000 discovery requests and defending 115 depositions.  Moreover, Defendants make little attempt to show that their requests are narrowly tailored to target either their FLSA defenses or issues of whether the opt-in plaintiffs are similarly situated. Defendants contend that their discovery as propounded is "the only way" to support an anticipated motion for decertification but then argue only generally about what their requests aim to explore without defending specific requests.   As Plaintiffs argue, Defendants' "surface level and conclusory analysis" does not justify the excessive amount of discovery sought.

Plaintiffs, however, propose without justification that the Court limit opt-in discovery to a sampling of around 15 opt-ins (approximately 13% of the class) and limit Defendants to 5 RFPs and 5 interrogatories.  (*See* ECF No. 169-1 at 11.)  In response, Defendants point out that Plaintiffs "provide no basis" for their suggested limitations.  Yet Defendants provide no convincing argument that the proposed limitations would *not* provide them with adequate discovery. (ECF No. 171 at 10.)  As neither party adequately supports their respective position, the parties' briefings are of limited help in determining what reasonable limitations the Court should impose on opt-in plaintiff discovery.

With respect to the propriety of Defendants' specific document requests, the Court will look first to whether Defendants have met their burden to show the relevance and proportionality of each request.  *See Starkey v. Hernandez*, No.: 3:17-cv-01158-JLS-KSC, 2018 WL 6075809, at *2 (S.D. Cal. Nov. 28, 2018) (stating that the moving parting "has the burden of informing the Court why the information he seeks is relevant and proportional to the needs of the case"); *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that his request satisfies the relevancy requirements of Rule 26(b)(1)." (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995))). Because Defendants have not endeavored to educate the Court on the relevancy of each request specifically, the Court is left to evaluate whether each request is relevant to

18-cv-01190-JLS-JLB

Plaintiffs' FLSA claim for unpaid overtime wages in something of an information vacuum. The Court finds relevant only those requests that appear on their face to target whether the opt-in plaintiffs are similarly situated or relate to Defendants' FLSA defenses.  The Court will then rule on Plaintiffs' objections for requests that the Court finds both relevant and proportional.  Additionally, because the Court twice advised Defendants that many of its requests were overboard, the Court declines to rewrite any requests it deems overbroad. (*See supra* p. 2–3.)

As set forth below, the Court has determined that Defendants have met their burden of showing the relevance and individual proportionality of 18 RFPs (Nos. 1, 4–7, 9, 10, 13, 14, 16, 20, 21, 31–36) and 8 Interrogatories (Nos. 1–3; 8, 9, 13, 15, 16).  The Court, however, sustains Plaintiffs' objections to RFP Nos. 13, 14, 16, and 31 and Interrogatory No. 3:

| Requests for Production |
|---|
| **RFP No. 1** |
| All DOCUMENTS that YOU received from DEFENDANTS that reflect YOUR DISTRIBUTORSHIP, including, but not limited to, any agreements, training or presentations, customer requirements, emails or other DOCUMENTS setting forth expectations or requirements for YOUR DISTRIBUTORSHIP. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 1.  Plaintiffs' objection that RFP No. 1 calls for information equally available is **OVERRULED**.  (ECF Nos. 169-1 at 10; 169-5 at 4.) |
| **RFP No. 2** |
| All DOCUMENTS that reflect any meetings between YOU and DEFENDANTS. |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 2 and deems it overbroad. |
| **RFP No. 3** |
| All DOCUMENTS that reflect transactions or COMMUNICATIONS, including emails, advertisements, business cards, cash receipts or deposits, etc., with customers from June 6, 2014 to the present. |

The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 3 and deems it overbroad.

| RFP No. 4 |
|---|
| All DOCUMENTS that reflect all advertising materials utilized by YOU, or that any entity YOU formed in connection with YOUR DISTRIBUTORSHIP utilized, from June 6, 2014 to the present. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 4. |

| RFP No. 5 |
|---|
| All DOCUMENTS that reflect all marketing or sales efforts that YOU engaged in, or that any entity YOU formed in connection with YOUR DISTRIBUTORSHIP engaged in, from June 6, 2014 to the present. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 5. |

| RFP No. 6 |
|---|
| All DOCUMENTS that reflect any delivery vehicle(s) that YOU utilized, or that any entity YOU formed in connection with YOUR DISTRIBUTORSHIP utilized, in connection with the delivery of goods since June 6, 2014. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 6. |

| RFP No. 7 |
|---|
| All DOCUMENTS that reflect any other vehicle(s) that YOU utilized, or that any entity YOU formed in connection with YOUR DISTRIBUTORSHIP utilized, in connection with YOUR DISTRIBUTORSHIP since June 6, 2014. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 7. |

18-cv-01190-JLS-JLB

| RFP No. 8 |
|---|
| All DOCUMENTS that reflect any expenses that YOU incurred, or that any entity YOU formed in connection with YOUR DISTRIBUTORSHIP incurred, from June 6, 2014 to the present, as a result of YOUR DISTRIBUTORSHIP. |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 8 and deems it overbroad. |

| RFP No. 9 |
|---|
| All DOCUMENTS that reflect YOUR engagement of a helper, employee, or assistant to assist with YOUR DISTRIBUTORSHIP, including, but not limited to, their identity, any payment receipts, cancelled checks, W-2s, 1099s, schedules, and agreements from June 6, 2014 to the present. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 9. |

| RFP No. 10 |
|---|
| All DOCUMENTS that reflect any efforts by YOU to sell YOUR DISTRIBUTORSHIP, distribution rights, business or "route" with DEFENDANTS, or any portion thereof, including, but not limited to, any COMMUNICATIONS with another distributor, potential buyer(s), route or territory broker or agent, or other source (i.e. Craig's List, routesforsale.com. etc.), any purchase and sales agreement or contract, and any other financial documents. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 10. |

| RFP No. 11 |
|---|
| All DOCUMENTS that reflect YOUR relationship or work with DEFENDANTS, including any resumes, applications, or other documents. |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 11 and deems it overbroad. |

18-cv-01190-JLS-JLB

| RFP No. 12 |
|---|
| All DOCUMENTS that reflect the financial performance of any entity YOU formed in connection with YOUR DISTRIBUTORSHIP, including, but not limited to, financial statements, profit and loss statements, budgets, income projections or statements, financial audits, periodic reports or audits prepared by any accountant, and any back-up supporting such reports or audits (such as receipts). |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 12 and deems it overbroad. |

| RFP No. 13 |
|---|
| All DOCUMENTS that reflect or refer to the amount and source of income earned or received by YOU from June 6, 2014 to the present, including, but not limited to, monies received from employment, independent contract positions, and/or self-employment. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 13.  However, Plaintiffs' objection as to the production of tax return information is **SUSTAINED**.[4]   (ECF Nos. 169-1 at 11; 169-5 at 12.) |

---

[4]      Plaintiffs object to Defendants' RFPs that request tax return information on the ground that this Court has already determined in the related case, *Goro et al. v. Flowers Foods, Inc., et al.*, 17-cv-02580-JLS-JLB, that tax return information is privileged and not discoverable.  (ECF No. 169-1 at 11.)  The Court's Order in *Goro* analyzed whether Plaintiffs should be compelled to produce tax return information under California law, which governs the application of the tax return privilege in diversity cases. (*See Goro* ECF No. 50 at 3–9.)  As this case asserts a cause of action under the FLSA and is not a diversity case, the same standard does not apply.  Nevertheless, under federal law, production of tax returns is "only appropriate if they are relevant and there is a compelling need for them because the information sought is not otherwise available." *Lindsey v. Elsevier Inc.*, 16-cv-00959-GPC (DHB), 2017 WL 4518483, at *9 (S.D. Cal. Oct. 10, 2017) (citing *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497–98 (N.D. Cal. Sept. 2, 2003)).  Here, the Court finds that although the opt-in plaintiffs' tax returns may be relevant in assessing lost earnings, Defendants have not met their burden of establishing a compelling need for them.  Defendants assert no defense to Plaintiffs' objection in their opposition.  Accordingly, Plaintiffs' objections to producing tax return information are sustained.

| RFP No. 14 |
| --- |
| All DOCUMENTS that reflect[5] the amount and source of income earned or received by any entity YOU formed in connection with YOUR DISTRIBUTORSHIP from June 6, 2014 to the present. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 14.  However, Plaintiffs' objection as to the production of tax return information is **SUSTAINED**.  (ECF Nos. 169-1 at 11; 169-5 at 12.) |

| RFP No. 15 |
| --- |
| All DOCUMENTS that reflect YOUR state and federal income taxes paid for the calendar years 2014 to the present, and all DOCUMENTS pertaining to such filings. |
| The Court finds that Defendants have not met their burden to show the relevance and proportionality of RFP No. 15. |

| RFP No. 16 |
| --- |
| All DOCUMENTS that refer to the state and federal income taxes paid by any entity YOU formed in connection with YOUR DISTRIBUTORSHIP for the calendar years 2014 to the present, and all DOCUMENTS pertaining to such filings. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 16.  However, Plaintiffs' objection as to the production of tax return information is **SUSTAINED**.  (ECF No. 169-1 at 11; 169-5 at 13–14.) |

| RFP No. 17 |
| --- |
| All DOCUMENTS that refer to any COMMUNICATIONS, including but not limited to emails, memoranda, and notes, between YOU and DEFENDANTS. |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 17 and deems it overbroad. |

---

[5]   Defendants did not amend RFP No. 14 to request only documents that "reflect," as opposed to documents that "constitute, evidence, reflect or refer," as they did with all other RFPs.  (*See* ECF No. 171-3 at 6–11.)  Because Defendants' failure to amend appears unintentional, the Court has amended the RFP.

18-cv-01190-JLS-JLB

| RFP No. 18 |
| --- |
| All DOCUMENTS that refer to any non-privileged COMMUNICATIONS, including but not limited to emails, between YOU and Tony Russel, Jeff Belander, Dale North, William Lancaster, Albert E. Ludlow, Daniel Ludlow, and any other distributor that has joined this action regarding YOUR DISTRIBUTORSHIPS, the allegations in the COMPLAINT, or any facts relevant to the allegations in the COMPLAINT. |
| The Court finds that Defendants have not met their burden to show the relevance or proportionality of RFP No. 18 and deems it overbroad. |

| RFP No. 19 |
| --- |
| All DOCUMENTS that reflect any non-privileged COMMUNICATIONS, including but not limited to emails, social media posts, wall comments, activity streams, blog entries, status updates, chat room posts, letters or memoranda between YOU and other persons, distributors, entities, or organizations regarding any of the allegations in the COMPLAINT, including, but not limited to, other distributors of DEFENDANTS. |
| The Court finds that Defendants have not met their burden to show the relevance or proportionality of RFP No. 19 and deems it overbroad. |

| RFP No. 20 |
| --- |
| All DOCUMENTS that refer to the damages sought in the COMPLAINT. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 20.  Plaintiffs' objection that RFP No. 20 seeks a legal conclusion and/or is a premature disclosure of expert testimony is **OVERRULED**. (ECF No. 169-1 at 11.)  Plaintiffs did not reserve this objection in their responses. (*See* ECF No. 169-5 at 16.) |

| RFP No. 21 |
| --- |
| All DOCUMENTS that support or refute the allegation that DEFENDANTS are, or were, YOUR employer at any time since June 6, 2014, as alleged in the COMPLAINT. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 21.  Plaintiffs' objection that RFP No. 21 seeks a legal conclusion and/or is a premature disclosure of expert testimony is **OVERRULED**. Plaintiffs did not reserve this objection in their responses. (*See* ECF No. 169-5 at 16–17.) |

| RFP No. 22 |
|---|
| All DOCUMENTS that support or refute each cause of action in the COMPLAINT. |
| The Court finds that Defendants have not met their burden to show the proportionality of RFP No. 22 and deems it overbroad. |

| Defendants have withdrawn RFP Nos. 23–30.  (ECF No. 171-3 at 10–11.) |
|---|

| RFP No. 31 |
|---|
| All DOCUMENTS provided by YOU, received from, or relied upon, by any expert whom YOU expect to call as a witness at trial. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 31.  However, Plaintiffs' objection that RFP No. 31 seeks a legal conclusion and/or is a premature disclosure of expert testimony is **SUSTAINED**. (ECF Nos. 169-1 at 11; 169-2 at 22.) |

| RFP No. 32 |
|---|
| All DOCUMENTS that reflect any or all time YOU worked for DEFENDANTS in connection with YOUR DISTRIBUTORSHIP. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 32.  However, for clarification, the Court **AMENDS** RFP No. 32 as follows:  All DOCUMENTS that reflect the actual time YOU worked for DEFENDANTS in connection with YOUR DISTRIBUTORSHIP. |

| RFP No. 33 |
|---|
| All DOCUMENTS that reflect the days or periods when YOU personally delivered merchandise to customers and/or personally visited customers in YOUR DISTRIBUTORSHIP. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 33. |

| RFP No. 34 |
|---|
| All DOCUMENTS that reflect any training YOU received from DEFENDANTS. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 34. |

| RFP No. 35 |
|---|
| All DOCUMENTS that reflect any instructions YOU received from DEFENDANTS regarding the operation of YOUR DISTRIBUTORSHIP. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 35. |

| RFP No. 36 |
|---|
| All DOCUMENTS that support or refute the allegation that DEFENDANTS had "control over the relationship" with YOU, as stated in paragraph 34 of the COMPLAINT. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of RFP No. 36. |

| Interrogatories |
|---|
| **Interrogatory No. 1** |
| Identify any business entity in existence from June 6, 2014 to present that YOU formed for the purpose of delivering goods, including when YOU formed that entity, how long it was in operation, which companies YOU delivered goods or performed other services for and during what time period(s), and the areas or "territory" where YOU delivered goods or performed other services. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 1. Plaintiffs' objection that Interrogatory No. 1 calls for information equally available is **OVERRULED**. (ECF Nos. 169-1 at 11; 169-6 at 4.) |

| **Interrogatory No. 2** |
|---|
| Identify all vehicle(s) that YOU utilized in connection with YOUR DISTRIBUTORSHIP, including year, make, model, and vehicle identification number ("VIN"); the approximate time period during which YOU used each vehicle; what tasks YOU used each vehicle for; and the days and hours of each day of each week that YOU used, in the regular course of YOUR DISTRIBUTORSHIP's business, the vehicle(s) YOU identified. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 2. |

| Interrogatory No. 3 |
|---|
| Identify any and all persons that YOU engaged and/or paid to assist YOU with YOUR DISTRIBUTORSHIP or operate YOUR DISTRIBUTORSHIP on YOUR behalf, the time period(s) during which each individual assisted YOU, the amount of money paid to such individual(s), the manner of payment (cash, check, etc.), and whether YOU took a deduction on YOUR tax returns for such payment(s). |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 3.  However, Plaintiffs' objection as to the production of tax return information is **SUSTAINED**.  (ECF Nos. 169-1 at 11; 169-6 at 6.) |

| Interrogatory No. 4 |
|---|
| Identify any expenses incurred since June 6, 2014 by YOU and/or any entity that YOU formed in connection with the performance of YOUR DISTRIBUTORSHIP, including the total amount of each category of alleged expenses that YOU are seeking to recover through this lawsuit. |
| The Court finds that Defendants have not met their burden to show the proportionality of Interrogatory No. 4 and deems it overbroad. |

| Interrogatory No. 5 |
|---|
| For each expense that YOU identified in response to Interrogatory No. 4, identify how YOU calculated that amount, including any mathematical formula used and any DOCUMENTS that YOU relied upon in making or that support those calculations. |
| Because the Court finds that Interrogatory No. 4 is not a viable discovery request, the Court strikes Interrogatory No. 5. |

| Interrogatory No. 6 |
|---|
| Identify each of the alleged "Unlawful Deductions of Wages" that are referenced in the fifth cause of action of the COMPLAINT, including the total amount of each category of allegedly unlawful deductions that YOU are seeking to recover through this lawsuit. |
| The Court finds that Defendants have not met their burden to show the relevance of Interrogatory No. 6. |

| **Interrogatory No. 7** |
| --- |
| For each alleged unlawful deduction that YOU identified in response to Interrogatory No. 6, identify how YOU calculated that deduction, including any mathematical formula used and any DOCUMENTS that YOU relied upon in making or that support those calculations. |
| The Court finds that Defendants have not met their burden to show the relevance of Interrogatory No. 7. |

| **Interrogatory No. 8** |
| --- |
| Identify the amount and source of income earned or received by YOU for the calendar years 2014 to the present, including, but not limited to, monies received from employment, independent contract positions, and/or self-employment. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 8. |

| **Interrogatory No. 9** |
| --- |
| Have YOU ever been a party to or filed bankruptcy, either personally or on behalf of an entity in which YOU had an ownership interest? If so, state the bankruptcy case number, date of filing, nature of bankruptcy (i.e., Chapter 7, 11, 13, etc.), state in which YOU filed bankruptcy, and status of bankruptcy. |
| The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 9. |

| **Interrogatory No. 10** |
| --- |
| Have YOU ever been a party to or filed any claims, complaints, lawsuits, or litigation from January 1, 2010 to the present, other than the instant lawsuit? If so, state the case number, date of filing, nature of claims, and status of claims. |
| The Court finds that Defendants have not met their burden to show the relevance of Interrogatory No. 10. |

| Interrogatory No. 11 |
| --- |

Since June 6, 2014, have YOU subscribed to, joined, participated in, or "liked" any Internet newsgroup(s), chat group(s), Twitter page(s) or feed(s), or Facebook page(s) or group(s) wherein any of the allegations on this action were discussed or otherwise COMMUNICATED? If so, list all such websites, newsgroups, chat pages, or services, etc. and the name of any groups YOU subscribed to and/or participated in, including any applicable user names or group names YOU used or under which any comments or "likes" from YOU were posted.

The Court finds that Defendants have not met their burden to show the relevance of Interrogatory No. 11.

| Interrogatory No. 12 |
| --- |

Identify all accountant(s) and/or other persons from June 6, 2014 to the present, who have assisted YOU with YOUR books for YOUR DISTRIBUTORSHIP (whether prepared in YOUR individual name or the name of a business), financial statements and/or tax returns, including address and phone number.

The Court finds that Defendants have not met their burden to show the relevance of Interrogatory No. 12.

| Interrogatory No. 13 |
| --- |

Have YOU, at any time since June 6, 2014 to the present, discussed the possibility of selling all or a portion of YOUR distribution rights (or territory or route) with any other distributor or individual or entity (i.e. whether a sole proprietorship, business, or other corporation no matter what form) or advertised this potential sale? If so, identify the individual(s) with whom YOU discussed this possibility, the approximate date(s), the terms of sale (applicable area, cost, etc.), any DOCUMENTS that exist regarding these COMMUNICATIONS or the potential sale, and the ultimate resolution, including whether those discussions remain ongoing.

The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 13.

| Interrogatory No. 14 |
| --- |

Identify all persons who have any knowledge or information that evidences, supports, or contradicts the claims that YOU have asserted on YOUR own behalf in this lawsuit, including, but not limited to, as alleged in the COMPLAINT.

The Court finds that Defendants have not met their burden to show the proportionality of Interrogatory No. 14 and deems it overboard.

### Interrogatory No. 15

Identify all of Defendants' warehouses from which YOU have delivered bakery products to retail locations, as alleged in paragraph 22 of the Complaint.

The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 15.

### Interrogatory No. 16

State any USDOT Number that has been assigned to YOUR DISTRIBUTORSHIP.

The Court finds that Defendants have met their burden to show the relevance and proportionality of Interrogatory No. 16.

Having determined which of Defendants' discovery requests are relevant and individually proportional and not vulnerable to Plaintiffs' specific objections, the Court turns next to whether it should limit any discovery, written or oral, to a representative sample of the opt-in plaintiffs. Again, with respect to written discovery, Plaintiffs request that the Court limit Defendants to 5 RFPs and 5 interrogatories for 15 of the 115 opt-in Plaintiffs, or approximately 13% of the class. Plaintiffs, however, shed no light on how they arrived at these limitations. But on the other hand, Defendants do not provide any alternative besides conducting individualized, and extensive, discovery.

The Court finds that a 115-member opt-in class is not so large that the burden of responding to some individualized written discovery propounded to each opt-in plaintiff would be unmanageable or unreasonable. However, requiring each opt-in plaintiff to respond to 17 RFPs and 8 interrogatories would impose a significant burden on Plaintiffs, and the Court is unaware of any case that has allowed this volume of individualized discovery from an opt-in class with at least 115 plaintiffs. Accordingly, the Court finds that Defendants must further decrease their written discovery requests as follows:

///

- Every opt-in plaintiff is to respond to 10 RFPs: RFP Nos. 1, 4–7, 10, 21, and 34–36.

- Fifteen randomly-selected opt-in plaintiffs are to additionally respond to 7 RFPs: RFP Nos. 9, 13, 14, 16, 20, 32, and 33.

- Every opt-in plaintiff is to respond to one set of 5 interrogatories. Defendants must choose the 5 interrogatories from the 8 interrogatories the Court has approved above. Defendants must propound the same 5 interrogatories on each opt-in plaintiff.

With respect to depositions, Defendants state only that they "believe" deposing of "all the opt-in plaintiffs will uncover further differences between" them. (ECF No. 171 at 8.) Defendants' belief that deposing each of the 115 opt-in plaintiffs will uncover *further* differences between opt-ins does not establish proportionality. Any benefit from deposing every opt-in plaintiff would not likely outweigh the burden and expense of conducting 115 depositions. *See* Fed. R. Civ. P. 26(b)(1). The Court agrees with Plaintiffs that Defendants' request to depose all the opt-in plaintiffs appears to be "'an entirely unreasonable' proposal 'designed to overwhelm Plaintiffs' counsel rather than to fairly obtain necessary information." (ECF No. 169-1 at 6 (quoting *Scott v. Bimbo Bakeries USA, Inc.*, No. CIV.A. 10-3154, 2012 WL 6151734, at *3 (E.D. Pa. Dec. 11, 2012).) Plaintiffs provide no authority supporting their request to limit Defendants to 15 depositions. Nevertheless, Defendants do not propose any alternative to their all-or-nothing approach, and Plaintiffs' proposal of 15 depositions appears reasonable and consistent with cases the Court has independently reviewed. *See, e.g.*, *Kress v. Price Waterhouse Coopers*, No. CIV S–08–0965 LKK GGH, 2012 WL 4465556, at *4 (E.D. Cal. Sept. 25, 2012) (permitting 25 depositions from a 75-member opt-in class); *Hill v. R+L Carriers Shared Servs., LLC*, No. C 09–1997 CW (MEJ), 2010 WL 3769247, at *2 (N.D. Cal. Sept. 22, 2010) (permitting 15 depositions from a 52-member opt-in class). Accordingly, the Court limits Defendants to deposing the same 15 randomly-selected opt-in plaintiffs who will be responding to the additional 7 RFPs.

///

# IV.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part** Plaintiffs' Motion for Protective Order.  (ECF No. 169.)  Every opt-in plaintiff is to respond to RFP Nos. 1, 4–7, 10, 21, and 34–36 and 5 of the Court-approved interrogatories already propounded.  Fifteen randomly-selected opt-in plaintiffs are to additionally respond to RFP Nos. 9, 13, 14, 16, 20, 32, and 33, and Defendants may depose them.

**IT IS SO ORDERED.**

Dated:  July 6, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

18-cv-01190-JLS-JLB