UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly situated; and WILLIAM LANCASTER, individually and on behalf of others similarly situated,<br><br>                                   Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgie limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>                                   Defendants.<br><br>——————————————————<br>AND ALL CONSOLIDATED CASES | Case No.:  18-CV-1190 TWR (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(ECF No. 200) |

Presently before the Court is the Motion for Judgment on the Pleadings filed by Defendants Flowers Foods, Inc. ("Flowers Foods"); Flowers Bakeries, LLC ("Flowers Bakeries") (together with Flowers Foods, "Flowers"); and Flowers Finance, LLC ("FloFin") ("Mot.," ECF No. 200), as well as Plaintiffs Daniel Ludlow and William Lancaster's Response in Opposition to ("Opp'n," ECF No. 207) and Defendants' Reply in Support of ("Reply," ECF No. 210) the Motion.  The Court took the Motion under

submission on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having carefully considered the Pleadings (ECF No. 56 ("FAC"), ECF No. 59 ("Ans.")), those documents properly incorporated by reference, the Parties' arguments, and the law, the Court **GRANTS** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' third cause of action and Mr. Lancaster's eighth and ninth causes of action.

## BACKGROUND

### I.    Factual Allegations[1]

#### A.    The Parties

Flowers Foods is a Georgia corporation with its principal place of business in Thomasville, Georgia.  (*See* FAC ¶ 16.)  It is a leading, national manufacturer and seller of bakery goods, (*see id.*), including well-known brand names such as "Wonder Bread," "Nature's Own," and "Dave's Killer Bread."  (*See id.* ¶ 21.)  Flowers Foods does business in the County of San Diego through layers of national and regional subsidiaries, (*see id.* ¶ 16), such as Flowers Baking Co. of California and Flowers Baking Co. of Modesto.[2]  (*See id.* ¶ 18.)  Each local subsidiary has branch and/or sales managers to manage relationships with retail customers, carry out sales, and supervise Delivery Employees.  (*See id.* ¶¶ 7, 34(g).)

Flowers Bakeries is a Georgia Limited Liability Corporation with its principal place of business in Thomasville, Georgia.  (*See id.* ¶ 17.)  Flowers Bakeries is a wholly owned subsidiary of Flowers Foods that handles sales-related activities, such as negotiating with retailers on price, shelf space, and service requirements.  (*See id.* ¶¶ 17–18.)

---

[1] For purposes of Defendants' Motion, the Court accepts as true Plaintiffs' factual allegations.  *See, e.g.*, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 (9th Cir. 2011) ("When considering a Rule 12(c) dismissal, [the court] must accept the facts as pled by the nonmovant.") (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).

[2] Plaintiffs believe that Flowers Foods initially established a California-wide local subsidiary called "Flowers Baking Co. of California," which split into Flowers Baking Co. of Modesto (to cover Flowers' Northern California operations) and Flowers Baking Co. of Henderson (to cover Flowers' Southern California operations) in approximately 2014.  (*See* FAC ¶ 18 n.3.)

FloFin is a Delaware Limited Liability Corporation with its principal place of business in Thomasville, Georgia. (*See id.* ¶ 19.) Its sole member is Flowers Foods. (*See id.*) FloFin finances purchases of delivery routes by Delivery Employees at an interest rate of approximately twelve per cent. (*See id.*)

Beginning in 2013, Plaintiffs worked as Delivery Employees for Flowers in the County of San Diego. (*See id.* ¶¶ 14–15.) Flowers classifies its Delivery Employees as independent contractors. (*See id.* ¶ 23.)

### B.   *Flowers' Fraudulent Representations*

Flowers is a leading manufacturer and seller of bakery goods to retailers throughout the United States, boasting gross profits of $1.9 billion in 2017. (*See* FAC ¶¶ 2, 16.) To distribute its baked goods, Flowers has both a direct-to-store ("DSD") delivery segment and a warehouse delivery segment. (*See id.* ¶ 21.) To power the DSD segment, Flowers Foods' wholly owned subsidiaries enter into distributor agreements ("DAs") with Delivery Employees, such as Plaintiffs, to deliver bakery products along particular routes from Flowers' warehouses to retail locations. (*See id.* ¶¶ 10, 22.)

Flowers advertises these delivery routes to Delivery Employees as "independent business opportunities," with the Delivery Employees purchasing products from Flowers to resell to retailers at a profit. (*See id.* ¶¶ 2, 23.) Delivery Employees may pay upwards of $100,000 for the rights to a specific delivery route, which dictates set brands to be sold to Flowers' retail customers in the area. (*See id.* ¶¶ 2, 5–6, 34(c).) If Flowers subsequently makes changes to a route, however, it does not revalue the route or re-evaluate the money that a Delivery Employee owes for that route, even if the value of the route is drastically reduced. (*See id.* ¶¶ 6, 34(e)–(f).)

To become a Delivery Employee, a prospective distributor must sign Flowers' DA, (*see id.* ¶ 24), which has no set end date. (*See id.* ¶ 34(k).) Flowers requires its Delivery Employees to incorporate before entering into DAs with local Flowers business entities, (*see id.* ¶ 34(a)), although each Delivery Employee must personally guarantee his or her contract. (*See id.* ¶ 34(b).) Both Flowers' disclosure documents and the DA represent to

prospective Delivery Employees that: (1) Flowers will sell its bakery products to the Delivery Employee, (2) the Delivery Employee will take title to the bakery products, and (3) the Delivery Employee will resell the bakery products to retailers at a profit.  (*See id.* ¶¶ 23–26; *see also id.* ¶ 2.)  Under this model, Flowers would make a profit when it sells its products to the Delivery Employee, who in turn would make a profit when they sell their products to the retailers.  (*See id.* ¶ 26.)

Delivery Employees' reality, however, differs greatly from Flowers' representations.  (*See id.* ¶¶ 28–34; *see also id.* ¶ 3.)  Rather than taking title to Flowers' products and reselling them to retailers, Delivery Employees merely deliver Flowers' products for a commission based on the wholesale price for sales that Flowers itself negotiates, makes, and controls.  (*See id.* ¶¶ 29–31; *see also id.* ¶ 4.)  For example, Flowers negotiates contracts with large retailers, such as Wal-Mart and Costco, at the national or regional level, meaning that Delivery Employees do not have a contract with their local Wal-Mart or have any control over the price that Wal-Mart agrees to pay Flowers.  (*See id.* ¶¶ 29–30; *see also id.* ¶¶ 34(d)–(e).)  That title to Defendants' products never actually passes to Delivery Employees is reflected in Flowers' accounting documents and filings with the Securities and Exchange Commission, which reveal that Flowers recognizes revenue for the retail sales price when its products are delivered to the retailer, not for the "wholesale price" Flowers charges Delivery Employees at the time of the purported "sale" to them.  (*See id.* ¶¶ 31–33.)

Flowers exercises control over its Delivery Employees in a variety of ways.  (*See generally id.* ¶ 34.)  For example, Flowers requires its Delivery Employees to maintain a certain physical appearance for both themselves and their vehicles, (*see id.* ¶¶ 8, 34(i)), and to abide by "Good Industry Standards," as defined by Flowers.  (*See id.* ¶¶ 9, 34(j).)  Failure to abide by these standards may result in Flowers sending a "breach notice" and risk termination.  (*See id.* ¶ 9.)  Flowers also dictates when unsold bakery products must be reclaimed from retail locations, which Delivery Employees—despite purportedly taking title to these products—must then return to Flowers and, if above the "stales" threshold

established by Flowers, pay the retail price for.  (*See id.* ¶¶ 5, 34(h).)  Flowers sets schedules for its Delivery Employees, indicating for them what tasks must be completed on particular days.  (*See id.* ¶ 34(l).)

Although Flowers and other companies routinely treat individuals performing the same work as Flowers' Delivery Employees as employees, (*see id.* ¶ 34(m)), Flowers classifies its Delivery Employees as individual contractors to save money on wages and employment taxes, among other benefits.  (*See id.* ¶¶ 1, 11–12, 20, 25, 27–28, 33, 34(m).)  As a result of the misclassification of its employees as independent contractors, Flowers does not reimburse its Delivery Employees for ordinary business expenses, such as expenses related to the use of their personal vehicles, business licenses, insurance, or taxes.  (*See id.* ¶ 35.)  Rather, Flowers charges its Delivery Employees recurring and non-negotiable fees, such as warehouse, administrative, and/or technology fees.  (*See id.* ¶ 36.)  In short, by misrepresenting the nature of their work, Flowers denies its Delivery Employees access to critical benefits and protections to which they are entitled by law as employees.  (*See id.* ¶¶ 1, 12.)

### C.   *Flowers' Usurious Loan Practices*

Because Delivery Employees must purchase the rights to specific routes from Flowers, they may "finance" these purchases through Flowers Foods' wholly owned subsidiary, FloFin, pursuant to a purported promissory note.  (*See* FAC ¶¶ 34(c), 39, 118.)  Over 85 percent of Delivery Employees nationally and in California use FloFin to finance their route purchases, and FloFin currently has over $200,000,000 in notes receivable as reflected in Flowers Foods' financial statements.  (*See id.* ¶ 118.)

FloFin, however, is merely a "shell" that has no assets or a bank account.  (*See id.* ¶ 119.)  It has one employee, who is responsible for maintaining a spreadsheet or digital accounting ledger.  (*See id.*)  Although the promissory notes indicate that FloFin will "disburse" funds to Flowers' regional subsidiaries, no such disbursement occurs.  (*See id.* ¶¶ 39–40, 120.)  Rather, Flowers records the principal and interest due on the promissory notes in its accounts receivable and recognizes the payments each week as payments are

collected by Flowers Bakeries. (*See id.* ¶ 120.) Ultimately, it is Flowers Foods that receives these funds. (*See id.*) Consequently, Flowers Foods and Flowers Bakeries are merely "alter egos" of FloFin, which also acts as Flowers' agent in issuing loans to Delivery Employees. (*See id.* ¶ 121.)

FloFin—and therefore Flowers—charges usurious interest rates in excess of California's ten percent maximum. (*See id.* ¶¶ 2, 19, 34(c), 40, 122–23.) Mr. Lancaster, for example, is currently repaying a promissory note (the "Promissory Note") with an interest rate of 12.1677 percent. (*See id.* ¶ 122.)

## II.   Relevant Procedural Background

Mr. Ludlow initiated this action on June 6, 2018, by filing a putative class and collective action complaint against Flowers for (1) failure to pay overtime under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219; (2) injunctive relief and restitution under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) fraud; (4) failure to pay overtime under California law; (5) unlawful deductions from wages; (6) failure to indemnify for necessary expenditures; and (7) failure to provide proper wage statements. (*See generally* ECF No. 1.)

On December 28, 2018, Mr. Ludlow sought to file an amended complaint adding Mr. Lancaster as a Plaintiff; FloFin as a Defendant; and causes of action related to usury. (*See generally* ECF No. 48.) The Honorable Janis L. Sammartino granted the motion on February 15, 2019, (*see generally* ECF No. 55), following which Plaintiffs filed the operative First Amended Complaint. (*See generally* ECF No. 56.) Defendants answered on March 7, 2019. (*See generally* ECF No. 59.)

On August 13, 2019, Defendants moved to stay this action pending the California Supreme Court's decision in *Vazquez v. Jan-Pro Franchising International, Inc.*, No. S258191 (Cal. filed Nov. 20, 2019) ("*Vazquez*"). (*See generally* ECF No. 116; *see also* ECF Nos. 121, 122, 126, 128, 131, 138, 144, 151, 166–168, 172.) While that motion was pending, Defendants moved for judgment on the pleadings. (*See generally* ECF No. 123.) On February 18, 2020, Judge Sammartino granted Defendants' request for a stay and

deferred ruling on Defendants' motion for judgment on the pleadings.  (*See generally* ECF No. 174.)

This action was transferred to the undersigned on September 25, 2020, (*see generally* ECF No. 193), following which the Court denied without prejudice Defendants' motion for judgment on the pleadings.  (*See generally* ECF No. 194.)  After Plaintiffs informed the Court that the California Supreme Court had issued a decision in *Vazquez*, (*see generally* ECF No. 196), the Court lifted the stay and set a hearing and briefing schedule on Defendants' Motion.  (*See generally* ECF No. 197.)  Defendants filed the instant Motion on February 24, 2021.  (*See generally* ECF No. 200.)

## LEGAL STANDARD

A party may file a motion for judgment on the pleadings after that party files an answer.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings pursuant to Rule 12(c) is functionally identical to a Rule 12(b)(6) motion and "the same standard of review applies to motions brought under either rule."  *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quotation omitted).  The Court must accept all factual allegations as true, draw reasonable inferences in favor of the non-moving party, and decide whether the allegations "plausibly suggest an entitlement to relief."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)).  The Court may disregard, however, all factually unsupported claims framed as legal conclusions and recitations of the legal elements of a claim.  *See Iqbal*, 556 U.S. at 681.

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* (alteration in original) (internal quotation mark omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct

charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)); *see also Cafasso*, 637 F.3d at 1058 ("Normally, when a viable case may be pled [under Rule 12(c)], a district court should freely grant leave to amend." (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002))). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## ANALYSIS

Defendants seek judgment on the pleadings in their favor on Plaintiffs' third cause of action for fraud and Mr. Lancaster's eighth and ninth causes of action related to usury. (*See generally* Mot.; ECF No. 200-1 ("Mem.").)

## I.   Third Cause of Action: Fraud

In their third cause of action for fraud, Plaintiffs allege that Flowers induced Delivery Employees to sign DAs by intentionally failing to disclose that its actual business model differed from that represented to obtain the DAs. (*See* FAC ¶¶ 83–92.) Defendants argue that dismissal is required because Plaintiffs impermissibly rely on misrepresentations appearing in the DA, (*see* Mem. at 6), and because the three-year statute of limitations has run. (*See id.* at 6–7 Cal. Civ. Proc. Code § 338(d)).) Because the Court concludes that Plaintiffs' fraud claim is time-barred, the Court declines to reach Defendants' argument concerning the economic loss doctrine.

Plaintiffs respond to Defendants' statute of limitations argument by invoking the continuous accrual theory. (*See* Opp'n at 6–7.) Under California's theory of continuous accrual, "separate, recurring invasions of the same right can each trigger their own statute

of limitations." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013). "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation." *Id.* at 1199 (citing *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal. App. 4th 1288, 1296 (2003)). "Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation . . . —each may be treated as an independently actionable wrong with its own time limit for recovery." *Id.* (citing *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011)). But "[i]t is not enough that the plaintiff merely suffers ongoing *injury*." *Rattagan v. Uber Techs., Inc.*, No. 19-CV-01988-EMC, 2020 WL 4818612, at *6 (N.D. Cal. Aug. 19, 2020) (emphasis in original). "As California courts have explained, 'if continuing injury from a completed act generally extended the limitations periods, those periods would lack meaning. Parties could file suit at any time, as long as their injuries persisted. This is not the law.'" *Id.* (quoting *Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 745 (2011)).

The Court concludes that Plaintiffs fail to allege that the continuous accrual doctrine applies here. Ultimately, Plaintiffs' fraud claim is premised on "Flowers['] omi[ssion] and intentional[] fail[ure] to disclose the true nature of its operation to Delivery Employees when entering into the DA contract." (*See* FAC ¶ 87.) According to Plaintiffs, "[i]f Flowers had disclosed the true nature of the relationship between the parties[,] . . . Plaintiffs and the California Class would not have executed the DA presented by Flowers or would have insisted on materially different terms." (*See id.* ¶ 91.) While Plaintiffs may suffer recurring injury as a result of signing DAs based on Flowers' omissions, (*cf.* Opp'n at 7), that does not suffice to state a claim absent the recurrence of the other elements of Plaintiffs' claim, including wrongdoing. *See Aryeh*, 55 Cal. 4th at 1198; *Rattagan*, 2020 WL 4818612, at *6. Unlike in *Aryeh*, in which each of the alleged unfair and excessive monthly charges billed to the plaintiff constituted a new unfair act, Plaintiffs here "allege[] a single fraud committed at contract formation," *see* 55 Cal. 4th at 1201, i.e., Flowers' omission of material facts inducing Plaintiffs to enter into DAs. (*See* FAC ¶ 87; *see also generally id.* ¶¶ 83–92.)

Because both Mr. Ludlow and Mr. Lancaster signed their DAs in reliance on Flowers' material omissions in 2013, (*see id.* ¶¶ 14–15), the three-year statute of limitations ran in 2016.  *See* Cal. Civ. Proc. Code § 338(d).  Consequently, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' second cause of action for fraud.  *See, e.g.*, *Asare-Antwi v. Wells Fargo Bank, N.A.*, No. 19-56383, 2021 WL 1944382, at *1 (9th Cir. May 14, 2021) (concluding that the district court did not err in dismissing claims based on fraudulent inducement on statute of limitations grounds because the plaintiff's injury was not continuing (citing *Aryeh*, 55 Cal. 4th at 1201)); *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13-CV-1946-LAB-WVG, 2014 WL 5112057, at *5 (S.D. Cal. Oct. 10, 2014) (dismissing fraud counterclaims on statute of limitations grounds because the continuing violations doctrine did not apply where "all of the elements of a fraud claim occurred . . . with [the plaintiff's salesperson]'s false assurances . . . to induce Defendants into signing and not terminating the original contract").  Because Plaintiffs request leave to amend to plead facts alleging delayed discovery under the discovery rule, (*see* Opp'n at 7 n.4), the Court **GRANTS** Plaintiffs leave to amend.

## II.   Eighth Cause of Action: Usury

Plaintiffs' eighth cause of action, which is asserted only by Mr. Lancaster and the putative class, generally alleges that FloFin charges interest rates that are usurious under California law.  (*See generally* FAC ¶¶ 115–25.)  Defendants advocate for dismissal of Mr. Lancaster's usury claim on the grounds that the rates are not usurious under Georgia law, which they contend applies because of the promissory notes' choice-of-law provision.  (*See* Mem. at 7–10.)  Alternatively, Defendants argue that dismissal is warranted under California law because Mr. Lancaster (1) does not have standing, and (2) pleads a credit sale rather than a loan.  (*See id.* at 11–14.)

### A.   *Choice of Law*

Before addressing Defendants' arguments on the merits, the Court first must determine whether Georgia or California law applies.  It is undisputed that the Promissory Note contains the following choice-of-law provision: "THIS NOTE SHALL BE

GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA." (ECF No. 200-4 ("Promissory Note") at 5.[3])  Defendants ask the Court to honor this choice-of-law provision, (*see* Mem. at 7–10; Reply at 3–7), while Mr. Lancaster urges that it is unenforceable. (*See* Opp'n at 7–15.)

The Parties agree that California's choice-of-law rules apply. (*See* Mem. at 8; Opp'n at 8.)  Under those rules, "[w]hen an agreement contains a choice of law provision, California courts apply the parties' choice of law unless the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws . . . dictates a different result." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)).  "Under the Restatement approach, the court must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Id.* (quoting *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 466 (1992) (in bank)).  "If . . . either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id.* (emphasis in original) (quoting *Nedlloyd*, 3 Cal. 4th at 466).  "If the court finds such a conflict, it must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* at 1002–03 (quoting *Nedlloyd*, 3 Cal. 4th at 466 (quoting Restatement (Second) of Conflict of Laws § 187(2))).  "If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Id.* at 1003.

Consequently, if Defendants can demonstrate that Georgia has a substantial relationship to Defendants or the Promissory Note, Georgia law will apply unless

---

[3] Although not attached to Plaintiffs' First Amended Complaint, the Court may incorporate the Promissory Note by reference because it forms the basis of Mr. Lancaster's eighth cause of action for usury and Mr. Lancaster does not contest its authenticity. *See Koja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also, e.g.*, *Pajarillo v. Bank of Am.*, No. 10CV937 DMS JMA, 2010 WL 4392551, at *1 n.1 (S.D. Cal. Oct. 28, 2010) (incorporating by reference promissory note in case concerning foreclosure on a mortgage).

Mr. Lancaster can demonstrate that Georgia law conflicts with a fundamental California policy and that California possesses a materially greater interest in applying its usury laws. *See, e.g.*, *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001) (citing *Nedlloyd*, 3 Cal. 4th at 468, 471).

### 1.   *Defendants' Burden: Prong One*

Defendants bear the burden of demonstrating either that a substantial relationship exists between Georgia and Defendants and/or the Promissory Note or that any other reasonable basis exists to apply Georgia law.  *See Wash. Mut.*, 24 Cal. 4th at 917; *see also 1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 514 (2010), *as modified* (Nov. 19, 2010) ("[E]ven if the chosen state has no substantial relationship to the parties or the transaction, the choice of law provision is enforceable if a reasonable basis exists for the parties' choice.").  Here, the Parties focus solely on whether FloFin has a substantial relationship to Georgia.  (*See* Mem. at 9; Opp'n at 9–12; Reply at 3–4.)  "A substantial relationship exists in a state where a party is domiciled, resides, or is incorporated." *Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (citing *Nedlloyd*, 3 Cal. 4th at 467; *Cardonet, Inc. v. IBM Corp.*, No. 06-cv-6637-RMW, 2007 WL 518909 (N.D. Cal. Feb 14, 2007); *Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009); *Trust One v. Invest Am.*, 134 Cal. App. 4th 1302 (2005)).  "In situations where a company is incorporated and headquartered in two different states, either incorporation or principal place of business in a particular state has been deemed a substantial relationship." *Id.* at 1197–98 (citing *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532, 1546 (1995); *ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 217 (2005)).

Defendants introduce the Promissory Note to establish FloFin's substantial relationship to Georgia.  (*See* Mem. at 9.)  Specifically, Defendants contend, the Promissory Note indicates that Thomasville, Georgia, is both the location of FloFin's office and the presumptive place of repayment.  (*See id.*; *see also* Promissory Note at 2.)  Despite acknowledging that FloFin's principal place of business is Thomasville, Georgia, (*see* FAC

¶ 19), Mr. Lancaster responds that FloFin "is a mere shell or sham and, therefore, so is the purported Georgia connection." (Opp'n at 10 (citing FAC ¶ 119).) But Mr. Lancaster asserts his eighth cause of action against all Defendants, (*see* FAC ¶¶ 115–25), and the Flowers entities are also formed under and have principal places of business in Georgia. (*See id.* ¶¶ 16–17.) These facts—which are alleged in Plaintiffs' First Amended Complaint—are uncontested. The additional evidence Mr. Lancaster identifies concerning, for example, where the Promissory Note was negotiated and/or signed, where payments on the Promissory Note were made, and who receives the loan payments, (*see* Opp'n at 9–11), is immaterial because the fact that FloFin's (and Flowers') principal place of business is in Georgia suffices to establish the requisite substantial relationship. *See, e.g.*, *Simulados*, 40 F. Supp. 3d at 1197 (concluding on motion to dismiss that a company's principal place of business in North America in the chosen state "establishe[d] a sufficient relationship with the state to uphold the choice-of-law provision in the contract"); *Gamer v. duPont Glore Forgan, Inc.*, 65 Cal. App. 3d 280, 288–89 (1976) (concluding that the plaintiff's evidence that "the 'customer agreement was signed in California[;] all plaintiff's payments were to California offices[;] and all plaintiff's orders, requests for loans of money or extensions of credit were made through California offices . . . d[id] not create an issue of fact as to the substantial relationship between the contract and the State of New York" given that the defendant's principal place of business was in New York).

To the extent Mr. Lancaster contends that Defendants are using FloFin merely as an "artifice" merely to avoid the application of California law, (*see, e.g.*, Opp'n at 10 (citing *Commonwealth Mortg. Assurance Co. v. Superior Court*, 211 Cal. App. 3d 508, 515 (1989)), the First Amended Complaint does not support this conclusion. While it may prove true that FloFin is a "sham" and plays a prominent role in Flowers' alleged wrongdoing, Plaintiffs do not allege that the Flowers entities are not genuine (if purportedly corrupt), Georgian business entities. (*See, e.g.*, FAC ¶¶ 16–17.) Plaintiffs also allege that both Flowers, (*see, e.g.*, *id.* ¶¶ 2, 16, 44), and FloFin, (*see, e.g.*, *id.* ¶¶ 118–20), operate nationally. The choice of Georgia law in the Promissory Note is natural and reasonable

18-CV-1190 TWR (JLB)

given Plaintiffs' allegations that the Flowers enterprise operates from Georgia with Delivery Employees across the county.  On the other hand, the inference that FloFin chose Georgia law specifically to avoid application of California law, particularly given the existence of more favorable usury laws in other states, (*see* Mem. at 9 (citing *Palm Ridge, LLC v. Ahlers*, No. 08-cv-00652-SGL (OPx), 2008 WL 11339594, at *3 (C.D. Cal. June 23, 2008) (addressing the absence of usury laws in Nevada))), is implausible.  The Court therefore concludes that Defendants have met their burden of establishing that a substantial relationship exists between Defendants and the Promissory Note and the State of Georgia.

### 2.  *Plaintiffs' Burden: Prongs Two and Three*

The burden now shifts to Mr. Lancaster to "establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue."  *Wash. Mut.*, 24 Cal. 4th at 917.

As for the first part of the test, Mr. Lancaster contends that "the application of Georgia law would violate California's fundamental public policy . . . against usury," (*see* Opp'n at 12 (citing Cal. Civ. Code § 3294(a); *Stock v. Meek*, 35 Cal. 2d 809, 816 (1950); *Mencor Enters. v. Hets Equities Corp.*, 190 Cal. App. 3d 432, 440 (1987))), which is "written into its Constitution," (*see id.* (citing Cal. Const. art. XV, § 1)), "[b]ecause Georgia has much higher usury limits, or in some instances, no limits at all."  (*See id.* at 13 (citing Ga. Code Ann. §§ 7-4-2, 7-4-18 (West)).)  According to Mr. Lancaster, "[c]ourts routinely acknowledge California has a strong public policy against usurious loan practices," (*see id.* at 12 (citing *Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, No. 11-CV-858 JLS WMC, 2012 WL 928412, at *5 (S.D. Cal. Mar. 19, 2012))), while Defendants argue that "California state courts have uniformly enforced contracts allowing interest rates above the limit under California law where there is shown a substantial relationship between the contract and the state which is referenced in the choice-of-law provision."  (*See* Mot. at 9 (quoting *Palm Ridge*, 2008 WL 11339594, at *2); Reply at 5 (quoting *Palm Ridge*, 2008 WL 11339594, at *2); *see also* Mot. at 10 (quoting *Petters Co. v. BLS Sales Inc.*, No. 04-cv-02160-CRB, 2005 WL 2072109, at *5 (N.D. Cal. Aug. 26, 2005)).)  Defendants' cited

cases, *Palm Ridge* and *Petters*, survey several California state court cases that honored choice-of-law provisions even though the interest rates in the underlying contracts would have been usurious under California law.[4]  *See Palm Ridge*, 2008 WL 11339594, at *2 (citing *Sarlot-Kantarjian v. First Penn. Mortg. Tr.*, 599 F.2d 915 (9th Cir. 1979); *Mencor*, 190 Cal. App. 3d 432; *Gamer*, 65 Cal. App. 3d 280; *Ury v. Jewelers Acceptance Corp.*, 227 Cal. App. 2d 11 (1964)); *Petters*, 2005 WL 2072109, at *5 (same).  These cases all addressed the Restatement (Second) of Conflict of Laws § 203 ("Section 203"), *see Mencor*, 190 Cal. App. 3d at 436; *Gamer*, 65 Cal. App. 3d at 288; *Ury*, 227 Cal. App. 2d at 20), which provides that "[t]he validity of a contract will be sustained against the charge of usury if it provides for a rate of interest that is permissible in a state to which the contract has a substantial relationship and is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law."

Applying Section 203, the Court determines that Georgia law does not conflict with a fundamental California policy.  Regarding the first requirement, the Court already has concluded that Defendants have demonstrated a substantial relationship between Defendants, the Promissory Note, and the State of Georgia.  *See supra* Section II.A.1.  The Court next evaluates whether the Promissory Note's interest rate is permissible under Georgia law.  *See* Restatement (Second) of Conflict of Laws § 203 (1971).  The Parties agree that, under Georgia law, contracting parties may agree to an interest rate up to five percent per month (or sixty percent per year) so long as the interest rate is "expressed in simple interest terms."  (*See* Mem. at 10; Opp'n at 13; *see also* Ga. Code Ann. §§ 7-4-2(a)(1)(A), 7-4-18(a); *In re Hughes*, 230 B.R. 213, 227 (Bankr. M.D. Ga. 1998) ("[T]he parties can agree to an interest rate as long as it does not exceed 5 percent per month and is expressed in simple interest terms.").  Here, the Promissory Note signed by Mr. Lancaster provides that "[i]nterest shall accrue on the outstanding principal balance at

---

[4] Mr. Lancaster's case, *Captain Bounce*, is inapplicable because the defendants in that case "did not object to the application of California law and . . . cited to California law themselves" despite the contract containing a North Carolina choice-of-law clause.  *See* 2012 WL 928412, at *5.

a fixed rate per annum equal to 12.1677% per annum (computed for the actual number of days elapsed over a 365-day year)."  (Promissory Note at 2; *see also* FAC ¶¶ 19, 122.) Mr. Lancaster appears to concede that this interest rate would be permissible under Georgia law, (*see* Opp'n at 13), and the Court agrees.  Finally, the Court must decide whether the interest rate in the Promissory Note is "greatly in excess of the rate permitted by the general usury law of" California.  *See* Restatement (Second) of Conflict of Laws § 203 (1971). The Court concludes that an interest rate of 12.1677 percent per year is not "greatly in excess" of ten percent, (*compare* Promissory Note at 2; *and* FAC ¶ 122, *with* Cal. Const. art. XV, § 1(2)), particularly given rates approved by California state courts and federal courts applying California choice-of-law rules.  *See, e.g.*, *Sarlot-Kantarjian*, 599 F.2d at 918 (13.47% to 18%); *Palm Ridge*, 2008 WL 11339594, at *1 (12% or 21%); *Petters*, 2005 WL 2072109, at *5 (36%); *Mencor*, 190 Cal. App. 3d 432 (44%); *Gamer*, 65 Cal. App. 3d at 290 (12.25%); *Ury*, 227 Cal. App. 2d at 21 (20.3%).

The Court therefore concludes that Mr. Lancaster has failed to demonstrate that Georgia's usury law is contrary to a fundamental California policy.  Accordingly, the Court need not address the third prong of the choice-of-law analysis, *see, e.g.*, *Nedlloyd*, 3 Cal. 4th at 468 ("Because [the plaintiff] has identified no fundamental policy of our state at issue . . . , the second exception to the rule of section 187 of the Restatement does not apply."), and concludes that Georgia law applies to Mr. Lancaster's usury cause of action.

### B.    *Analysis Under Georgia Law*

Defendants argue that Mr. Lancaster's usury claim must be dismissed because the Promissory Note's interest rate is not usurious under Georgia law.  (*See* Mem. at 7, 10.) Mr. Lancaster does not address this argument, arguing instead only that California law applies.  (*See* Opp'n at 7–15.)  The Court may infer from Mr. Lancaster's silence that he concedes that the interest rate to which he agreed in the Promissory Note is not usurious under Georgia law.  *See, e.g.*, *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014).  In any event, the Court already has determined on the merits that the Promissory Note's annual interest rate of 12.1667 percent is permissible under Georgia law, which

authorizes rates of up to sixty percent so long as the interest rate is "expressed in simple interest terms."  *See supra* pages 15–16; *see also* Ga. Code Ann. §§ 7-4-2(a)(1)(A), 7-4-18(a); *see also In re Hughes*, 230 B.R. at 227.

The Court therefore **GRANTS** Defendants' Motion and **DISMISSES** Mr. Lancaster's eighth cause of action for usury.  Although Defendants ask the Court to dismiss Mr. Lancaster's usury claim with prejudice, (*see* Mem. at 7), Mr. Lancaster argues that additional facts have been discovered since the filing of the First Amended Complaint that may be "helpful" to the choice-of-law analysis on amendment.  (*See* Opp'n at 10 n.6.)  Because the Court cannot conclude that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *DeSoto*, 957 F.2d at 658 (quoting *Schreiber*, 806 F.2d at 1401), the Court **DISMISSES WITHOUT PREJUDICE** Mr. Lancaster's usury claim.

## III.  Ninth Cause of Action: Violation of UCL

Finally, Mr. Lancaster asserts a ninth cause of action for violation of California's UCL, contending that the interest rates charged in Defendants' Promissory Notes are unlawful under California's usury laws, (*see* FAC ¶ 129); unfair for violating California's policy of capping applicable interest rates at ten percent, (*see id.* ¶ 130); and fraudulent because "Flowers simply establishes for itself a right to deferred payment for the territory while charging exorbitant interest under the guise of a 'disbursed loan.'"  (*See id.* ¶ 131.)  Defendants argue that this claim must be dismissed with prejudice because Georgia law applies and Mr. Lancaster cannot state a claim under the Georgia Fair Business Practices Act ("GFBPA"), Ga. Code §§ 10-1-390 *et seq.*  (*See* Mem. at 14–16.)

Because Mr. Lancaster concedes that his UCL claim is derivative of his usury claim, (*see* Opp'n at 20), Georgia law applies for the same reasons the Court has already addressed.  *See supra* Section II.A.2.  Accordingly, "the Court [need] not address the purely hypothetical question of whether plaintiffs have alleged sufficient facts to meet the pleading standard for the UCL."  *See Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).  Defendants also ask the Court to dismiss Mr. Lancaster's

18-CV-1190 TWR (JLB)

ninth cause of action with prejudice on the grounds that he cannot state a claim under the GFBPA. (*See* Mem. at 16.)  Although Mr. Lancaster had the opportunity to address this issue in his Opposition, the Court concludes that it is premature to determine the merits of any hypothetical claim Mr. Lancaster could assert upon amendment under the GFBPA. Further, the Court has granted Mr. Lancaster leave to amend his usury claim to plead additional facts demonstrating that Defendants and/or the Promissory Note lack a substantial connection to the State of Georgia. *See supra* page 17.  The Court therefore **GRANTS** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Mr. Lancaster's ninth cause of action for violation of California's UCL.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' third cause of action for fraud and Mr. Lancaster's eighth cause of action for usury and ninth cause of action for violation of California's UCL.[5]  Plaintiffs **MAY FILE** an amended complaint curing the deficiencies identified in this Order within <u>fourteen (14) days of its electronic docketing</u>. *Should Plaintiffs elect not to file an amended complaint by the ordered deadline, this case shall proceed as to Plaintiffs' surviving causes of action.*

**IT IS SO ORDERED.**

Dated:  September 29, 2021

Honorable Todd W. Robinson
United States District Court

---

[5] As indicated previously, *see supra* note 3, the Court **GRANTS** Defendant's request to incorporate by reference Mr. Lancaster's Promissory Note.  Because they were not necessary to the Court's analysis, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Request for Judicial Notice (ECF No. 207-6) and Defendants' request to incorporate by reference Mr. Lancaster's DA (ECF No. 200-2).