UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly situated; and WILLIAM LANCASTER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>Defendants. | Case No.: 18cv1190-JO-JLB<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AS TO EIGHTEEN OPT-IN PLAINTIFFS** |

Plaintiffs bring a wage and hour class action asserting a collective claim under the Fair Labor Standards Act ("FLSA") and class action claims under California law.[1] Dkt. 56 (FAC). Defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Bakeries, LLC ("Flowers Bakeries"), and Flowers Finance, LLC ("Flowers Finance") (collectively,

---

[1] While the FLSA and Federal Rule 23 are both mechanisms for group resolution, they require different procedures such as the need for a plaintiff to affirmatively "opt in" to a collective action under the FLSA for his or her claim to be adjudicated.

1

"Defendants") have filed a motion to compel arbitration as to eighteen plaintiffs (the "Arbitration Plaintiffs") who opted in to the above-captioned action under the FLSA. Dkt. 225. The Court held oral argument on March 30, 2022. For the reasons discussed below, Defendants' motion is DENIED.

## I.  BACKGROUND

Plaintiffs are a putative class of delivery drivers alleging they were misclassified as independent contractors instead of employees. FAC ¶¶ 1, 12. Plaintiffs work for Flowers Foods[2], which manufactures and sells packaged bakery products to restaurant and retail customers. *Id.* ¶ 16. Flowers Foods relies on delivery drivers such as Plaintiffs—which they refer to as "distributors"—to deliver the bakery products to the customer locations.

The distributor relationship is governed by a Distributor Agreement ("DA") entered between a distributor and a local operating subsidiary of Flowers Foods. *Id.* ¶ 22. Each of the eighteen Arbitration Plaintiffs signed a DA with an arbitration clause incorporating a separate signed arbitration agreement. Dkts. 225-9–225-26, 225-29 (the "Arbitration Agreement"). The Arbitration Agreements at issue were signed by an Arbitration Plaintiff and two local operating subsidiaries of Flower Foods—namely, Flowers Modesto or Flowers Henderson. *Id.* The Arbitration Agreement, which identifies "COMPANY" as the local operating subsidiary, requires claims and disputes involving the DA to be resolved through binding arbitration:

> The parties agree that any claim, dispute, and/or controversy except as specifically excluded herein, that either DISTRIBUTOR (including its owner or owners) may have against COMPANY (**and/or its affiliated companies** and its

---

[2] Flowers Foods' corporate structure is organized as multiple layers of parent companies. Specifically, Flowers Foods is the parent company of Defendant Flowers Bakeries—a subsidiary "charged with sales related activities"—which in turn is the parent company of numerous local operating subsidiaries such as non-parties Flowers Baking Co. of Modesto, LLC ("Flowers Modesto") and Flowers Baking Co. of Henderson, LLC ("Flowers Henderson"). *Id.* ¶¶ 16, 17, 18. Defendant Flowers Finance is another subsidiary of Flowers Foods that provides financing services for Flowers Foods. *Id.* ¶ 19.

> and/or their directors, officers, managers, employees, and agents and their successors and assigns) or that COMPANY may have against DISTRIBUTOR (or its owners, directors, officers, managers, employees, and agents), arising from, related to, or having any relationship or connection whatsoever with: (i) the Distributor Agreement between DISTRIBUTOR and COMPANY ("Agreement"), (ii) the termination of the Agreement, (iii) services provided to COMPANY by DISTRIBUTOR or by DISTRIBUTOR to COMPANY, or (iv) any other dealings between DISTRIBUTOR and COMPANY ("Covered Claims") shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (9 U.S.C. §§ 1, et seq.) ("FAA") in conformity with the Commercial Arbitration Rules of the American Arbitration Association ("AAA" or "AAA Rules"), or any successor rules, except as otherwise agreed to by the parties and/or specified herein. Arbitration Agreement at ¶ 1(emphasis added).

The Arbitration Agreement covers claims challenging the independent contractor status of the Distributor:

> The Covered Claims covered under this Arbitration Agreement include, but are not limited to: breach of contract, any claims challenging the independent contractor status of DISTRIBUTOR, claims alleging that DISTRIBUTOR was misclassified as an independent contractor, any other claims premised upon DISTRIBUTOR's alleged status as anything other than an independent contractor, tort claims, discrimination claims, retaliation claims, and claims for alleged unpaid compensation, civil penalties, or statutory penalties either under federal or state law. Arbitration Agreement at ¶ 7.

On February 21, 2019, Plaintiffs filed an amended collective and class action complaint asserting claims arising from their alleged misclassification as independent contractors: failure to pay overtime under the FLSA, injunctive relief and restitution under California's Unfair Competition Law, fraud, and wage-and-hour claims under the California Labor Code. *See generally* FAC. Plaintiffs also asserted usury-related claims against Flowers Finance. *Id.* Approximately 115 total plaintiffs ("Opt-In Plaintiffs"), including the eighteen Arbitration Plaintiffs at issue in this motion, opted in to the proposed

FLSA collective class. The Arbitration Plaintiffs opted to join the action between June 2019 and November 2019. Dkt. 225-5 at 6–7. On June 8, 2021, Defendants filed the instant motion to compel the Arbitration Plaintiffs to arbitration pursuant to the Arbitration Agreements.

After Arbitration Plaintiffs opted to join the action and prior to Defendants' filing of the motion to compel arbitration, the parties actively litigated the action. During this time, Defendants served substantial discovery requests and engaged in various discovery disputes requiring court intervention. For example, on November 15, 2019, the Court held a discovery conference regarding a dispute over Defendants' discovery requests on each of the 115 Opt-In Plaintiffs. Dkt. 148. On December 11, 2019, the Court held another discovery conference regarding, in part, continued concern over Defendants' overbroad discovery requests on the Opt-In Plaintiffs. Dkt. 160. On July 6, 2020, following motion practice, the Court ordered each Opt-In Plaintiff (including Arbitration Plaintiffs) to respond to ten RFPs and one set of five interrogatories, and fifteen randomly selected Opt-In Plaintiffs to respond to an additional seven RFPs and sit for deposition. Dkt. 181.

Additionally, on August 13, 2019, Defendants filed a motion to stay the action pending the California Supreme Court's decision on whether the ABC Test articulated in *Dynamex Operations West Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), applies retroactively.[3] Dkt. 116. On September 20, 2019, while the motion to stay was pending, Defendants filed a motion for judgment on the pleadings with regard to the fraud and usury claims. Dkt. 123. After the stay was lifted, Defendants filed a renewed motion for judgment on the pleadings on February 24, 2021, which resulted in the dismissal of the fraud and usury claims. Dkts. 200, 252. On March 29, 2022, one day before oral argument on the motion to compel arbitration, Defendants filed a motion for decertification of the

---

[3] On February 18, 2020, the Court granted Defendants' motion to stay, and the entire action was stayed until January 29, 2021, by which the California Supreme Court issued a written decision holding that *Dynamex* does apply retroactively. Dkts. 174, 197.

FLSA collective claim, which cited to discovery from certain Arbitration Plaintiffs. Dkt. 297.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds [that exist] for the revocation of any contract." 9 U.S.C. ¶ 2. A district court may, therefore, decline to enforce an arbitration agreement based on generally applicable contract defenses, such as waiver, without contravening the FAA. *See Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002). While there is a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011), the court "should apply ordinary state-law principles" governing contracts to determine whether to invalidate or enforce an arbitration agreement. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## III.  DISCUSSION

Arbitration Plaintiffs argue that (1) Defendants cannot enforce the Arbitration Agreement because they are not signatories to the agreement; (2) even if Defendants could enforce the Arbitration Agreement, they waived their right to arbitrate; and (3) even if there were no waiver, the Arbitration Agreement is unconscionable and therefore invalid. The Court first examines whether Defendants can enforce the Arbitration Agreement as a non-signatory, and then turns to whether the Arbitration Agreement has been waived. Because the Court determines that there is waiver, it does not reach the unconscionability argument.

### A.  Defendants Can Enforce the Arbitration Agreement as Third-Party Beneficiaries

First, Arbitration Plaintiffs argue that Defendants cannot enforce the Arbitration Agreements because only the local operating subsidiaries—Flowers Modesto or Flowers Henderson—and not Defendants, signed the Arbitration Agreement with the Arbitration Plaintiffs. The Court is not persuaded.

     Generally, "a party cannot be required to submit to arbitration any dispute [with another] which he has not agreed so to submit." *See Int'l Bhd. of Teamsters v. NASA Services, Inc.*, 957 F.3d 1038, 1041 (9th Cir. 2020) (internal citations omitted). However, a party to an arbitration agreement may still be compelled to arbitration by a non-signatory pursuant to state contract law principles. *Arthur Anderson, LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009); *Murphy v. DIRECTV, Inc.*, 724 F.3d 1218, 1233–34 (9th Cir. 2013). Under California law, non-signatories to an agreement may enforce a contract if the agreement is "made expressly for their benefit." *Ronay Fam. Ltd. P'ship v. Tweed*, 216 Cal. App. 4th 830, 838 (2013) (citing Cal. Civ. Code § 1559). An arbitration agreement is made expressly for the benefit of certain parties if the arbitration clause provides that it covers claims involving those parties. *See id.* at 839. Here, the Arbitration Agreement encompasses claims between Arbitration Plaintiffs and the "affiliated companies" of Flowers Modesto or Flowers Henderson. Arbitration Agreement at ¶ 1. The Arbitration Agreement does not define the term "affiliated companies" or specifically name any affiliated entities. Thus, the Arbitration Agreement is enforceable by Defendants if Defendants are "affiliated companies" of Flowers Modesto or Flowers Henderson.

     The Court now examines whether Defendants are affiliated companies of Flowers Modesto or Flowers Henderson that benefit from the Arbitration Agreement such that they can enforce the agreement. The words of a contract are to be understood in their ordinary and popular sense. Cal. Civ. Code § 1644. An "affiliate" is generally understood as "a company effectively controlled by another or associated with others under common ownership or control." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (quoting Webster's Third New International Dictionary 35 (2002)). Courts have found a parent company to be an "affiliate" of a subsidiary. *Hajibekyan v. BMW of North America, LLC*, 839 Fed. Appx. 187, 188 (9th Cir. 2021) (holding that parent company is "affiliate" and can enforce arbitration agreement); *Kaselitz v. hiSoft Tech. Int'l, Ltd.*, 2013 WL 622382, at *6–7 (N.D. Cal. Feb. 15, 2013) (a "parent" of a corporation is an "affiliate" of such corporation).

The Court finds that the Arbitration Agreement is made for the benefit of Defendants because it covers claims involving them as "affiliated companies."  Here, Flowers Foods is the parent company of Flowers Bakeries, which is the parent company of Flowers Modesto and Flowers Henderson, the local operating subsidiaries that signed the Arbitration Agreements with Arbitration Plaintiffs.  FAC ¶¶ 16, 17, 18.  Both Flowers Foods and Flowers Bakeries are parent companies and associated under common ownership with the signatory subsidiaries.  They are thus affiliates of those subsidiaries.  *See Haijbekyan*, 839 Fed. Appx. at 188.  Arbitration Plaintiffs argue that Defendants cannot be affiliates because they have denied any control over the operating subsidiaries.  The Court rejects Arbitration Plaintiffs' argument on the grounds that the ordinary definition of "affiliate," as explained above, also includes an association with others under common ownership that does not require a degree of control.  Accordingly, the Court finds that Defendants are a beneficiary of the Arbitration Agreement as "affiliated companies" and can thus enforce the arbitration provisions of the Arbitration Agreement.

**B.    Defendants Waived Their Right to Arbitration**

Second, Arbitration Plaintiffs argue, and the Court agrees, that even if Defendants can enforce the Arbitration Agreement, Defendants have waived their right to compel arbitration due to their litigation conduct thus far.

The right to arbitration, like other contractual rights, can be waived.  *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).  The party arguing waiver of the right to arbitration bears a heavy burden of proof.  *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990).  To carry this burden, the Ninth Circuit has previously required a party to demonstrate three elements: (1) the moving party had knowledge of the existing right to compel arbitration; (2) the party acted inconsistently with that right; and (3) the inconsistent acts resulted in prejudice.  *Newirth by and through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019).  The Supreme Court recently clarified that the third element, a showing of prejudice, is not a condition of the waiver of

the right to arbitrate. *Morgan v. Sundance, Inc.*, Case No. 23-328, 596 U.S. __ (May 23, 2022).

Defendants do not contest they had knowledge of their right to compel arbitration, and so the Court examines only whether Defendants waived their right to arbitration by engaging in litigation conduct that is inconsistent with such a right. "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Instead, the question of waiver turns on the "totality" of the moving party's actions, including a party's "extended silence and delay in moving for arbitration" and its active litigation of the case "to take advantage of being in federal court." *Id.* Taking strategic advantage of being in federal court includes actions such as conducting discovery and seeking a judicial judgment on the merits of an issue. *Id.* "A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Id.* In *Yasuda*, for example, the Ninth Circuit held that defendants in a collective and class action lawsuit, despite repeatedly asserting arbitration as an affirmative defense, waived their right to arbitrate because they spent seventeen months litigating the case, entered into a protective order, answered discovery, and conducted depositions. *Id.* at 1125–26.

Here, like in *Yasuda*, Defendants waited nearly two years after Arbitration Plaintiffs opted in to the action to seek to compel them to arbitration. In that time, Defendants filed a successful motion to stay the entire action that resulted in a stay of almost a year, which relieved Defendants from otherwise engaging in piecemeal litigation and arbitration while waiting to see how the California court would rule on a key substantive issue. Moreover, Defendants directed discovery at Arbitration Plaintiffs—choosing to benefit from Arbitration Plaintiffs' presence in the federal forum by taking advantage of the court's discovery mechanisms—that they subsequently relied on in their motion for decertification of the FLSA collective claim in this action. Defendants also filed a motion on the merits that resulted in the dismissal of the fraud and usury claims brought by Plaintiffs.

Defendants have thus gained a strategic advantage during the course of the litigation based on their conduct toward Arbitration Plaintiffs.

Defendants contended during oral argument that they did not act inconsistently with arbitration because they had repeatedly informed opposing counsel that they intended to compel the arbitration of any Opt-In Plaintiffs who had arbitration agreements. The Court rejects this argument on the grounds that such statements reserving their arbitration right while still actively litigating in federal court—that is, hedging their bets in both forums—are not sufficient to defeat waiver. *See Yasuda*, 829 F.3d at 1125–26. The *Yasuda* court found that defendant waived its arbitration right, despite pleading arbitration as an affirmative defense and maintaining that each plaintiff executed an arbitration agreement in its joint status reports, because it continued to seek discovery and litigate key merits issues to benefit from being in a federal forum. *Id.* Similarly, here, Defendants' statements to opposing counsel that they intended to seek arbitration do not circumvent waiver because they continued to engage in litigation conduct, as described above, to their advantage. The Court finds that this element is satisfied because the totality of Defendants' actions is inconsistent with exercising their right to arbitrate. The Arbitration Agreements have, therefore, been waived.[4]

//
//
//

---

[4] Even if prejudice to Arbitration Plaintiffs were a requirement for waiver, the Court finds that such a requirement has been met. As a result of Defendants' delay in seeking arbitration, Arbitration Plaintiffs were forced to expend time and expense responding to discovery requests and engaging in motion practice that they otherwise would not have incurred had Defendants properly sought to compel arbitration when the Arbitration Plaintiffs first joined the action. Defendants also gained a strategic advantage from use of such discovery in motion practice on the merits in federal court, such as the motion for decertification of the FLSA collective claim.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to compel arbitration as to the Arbitration Plaintiffs is DENIED.

**IT IS SO ORDERED**.

Dated: June 1, 2022

_____
Honorable Jinsook Ohta
United States District Judge