UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, individually and on behalf of others similarly situated; and WILLIAM LANCASTER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company; and FLOWERS FINANCE, LLC, a limited liability company,<br><br>Defendants. | Case No.: 18cv1190-JO-JLB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs are current and former delivery drivers alleging they were misclassified by Defendants as independent contractors instead of employees. Plaintiffs bring a wage and hour action arising from the alleged misclassification, asserting claims under the California Labor Code and related wage orders for failure to pay overtime, unlawful deductions from wages, failure to indemnify for necessary expenditures, and failure to provide proper wage

1

statements. Dkt. 56 (FAC).[1]  Plaintiffs have filed a motion for class certification of these claims. Dkt. 213. The Court held oral argument on March 30, 2022. For the reasons discussed below, Plaintiffs' motion is GRANTED.

## I. BACKGROUND

### A. Defendants' Business

Defendant Flowers Foods, Inc. ("Flowers Foods") is a national bakery company behind popular brands such as Wonder Bread, Nature's Own, and Dave's Killer Bread. FAC ¶ 21. Flowers Foods operates as the sole parent company of Defendant Flowers Bakeries, LLC ("Flowers Bakeries"),[2] which in turn operates as the sole parent company of multiple operating subsidiaries located throughout California and the United States. *Id.* ¶¶ 17, 18. According to Flowers Foods' investor materials, Flowers Foods is "America's premier baker" that "produces and markets bakery products" in the "retail and food service" market. Dkt. 213-5 (Declaration of Alex Tomasevic in support of Plaintiffs' Motion for Class Certification, "Tomasevic Decl."), Ex. 1. Flowers Foods claims in its SEC filings that it is the "second largest producer and marketer of packaged bakery foods in the US" and "operate[s] in the highly competitive fresh bakery market." *Id.*, Ex. 2 at 11. Flowers Foods' customers are retail and foodservice locations such as Walmart and Costco. FAC ¶ 29. With sales of $3.9 billion in 2017, Flowers Foods generates revenue from sales of the bakery products to its retail and foodservice customers. Tomasevic Decl., Ex. 1 at 4; Ex. 2 at 5–6.

According to Flowers Foods, its key business functions include distribution and delivery of these packaged bakery goods to its customers. Tomasevic Decl., Ex. 1. Flowers

---

[1] This Court also presides over two other misclassification lawsuits filed against Defendants and its subsidiaries: (1) *Goro et al v. Flowers Foods, Inc. et al*, 3:17-cv-2580-JO-JLB, which is a related case brought by individual plaintiffs; and (2) *Maciel et al. v. Flowers Foods, Inc. et al*, 3:20-cv-02059-JO-JLB, a class action that was transferred from the Northern District of California and consolidated with this action.

[2] Flowers Bakeries, jointly referred to with Flowers Foods as "Flowers" in the parties' briefing, is in charge of "sales related activities," such as negotiations with the customers on price, shelf space, and distributor service requirements that are then communicated to the operating subsidiaries. FAC ¶ 17.

Foods' business model relies on a system of delivery drivers such as Plaintiffs to deliver the bakery products to the retail and foodservice locations. Tomasevic Decl., Ex. 19. Flowers Foods refers to these delivery drivers as "distributors." Each distributor enters into a standard and substantially identical distributor agreement with a local operating subsidiary of Flowers Foods and Flowers Bakeries that governs the distributor relationship. *Id.*, Ex. 6.

### B. Plaintiffs' Role and Responsibilities

The Distributor Agreement ("DA") signed by the delivery drivers sets forth the working relationship between the distributor and Defendants. Tomasevic Decl., Ex. 6. The DA labels the delivery drivers as "independent contractors." *Id.* at § 16.1. As a prospective distributor, the delivery driver purchases the "right" to deliver Flowers Foods' bakery products in a specific geographic territory.[3] *Id.* at § 2.4. The territory dictates which specific bakery products are delivered to the customer locations in the given territory. *Id.* at §§ 2.2–2.3. The distributor can purchase and own more than one territory or resell his or her territory to another person for a profit. *Id.* § 15.1. Distributors may hire helpers to service their territory while they hold other full-time jobs (so-called "absentee" distributors). *Id.* § 16.2.

The DA also describes how the distributor purportedly earns money with these territory rights. Under the DA, the distributor "purchases" bakery products from Flowers Foods and then "re-sells" those products to the retail and foodservice customers within their given territory. Tomasevic Decl., Ex. 6 at §§ 4.1, 8.6. The distributor earns money based on the standard margin—that is, the difference between the purchase price and the sale price—which is set by Flowers Foods based on its negotiations with the customers on the product price. The DA prohibits the distributor from selling stale products to the customers, and so Flowers Foods will "repurchase" a percentage of the distributor's stale products. *Id.* at §§ 12.2, 12.3. Flowers Foods "repurchases" the stale products by charging

---

[3] Financing for this purchase is offered to distributors by Defendant Flowers Finance, LLC, another subsidiary of Flowers Foods. FAC ¶ 19.

1  the distributors a fee. FAC ¶ 102. Flowers Foods also provides the distributors with
2  advertising and branded material to increase sales. Tomasevic Decl., Ex. 6 at §§ 13.1, 13.2.
3  Some distributors use the marketing materials and displays to promote their sales, while
4  others do not. Dkt. 237-1 (Declaration of Frank L. Tobin in support of Defendants'
5  Opposition to Plaintiffs' Motion for Class Certification, "Tobin Decl."), Ex. 21.

6      The DA further describes the quality standards that distributors must meet as part of
7  their job requirements. For example, the DA requires the distributor to perform his or her
8  services in accordance with "the standards that have developed and are generally accepted
9  and followed in the baking industry," including maintaining an adequate and fresh supply
10 of products in the stores, actively soliciting stores not being serviced, properly rotating the
11 products, promptly removing stale products, maintaining proper service per the store's
12 requirements, and maintaining equipment in sanitary and safe conditions. Tomasevic
13 Decl., Ex. 6 at § 2.6. The DA also requires the distributor to obtain his or her own delivery
14 vehicle and insurance, and to keep the delivery vehicle clean, professional, and safe. *Id.* at
15 § 9.1. The DA further requires the distributor to use Flowers Foods' "proprietary
16 administrative services" to collect sales data or prepare sales tickets. *Id.* at § 10.1. Flowers
17 Foods charges the distributor a fee unilaterally established by Flowers Foods to use these
18 services. *Id.* at § 10.2. The DA does not require a standard outfit or uniform, but some
19 distributors wear a polo shirt or branded shirt based on the recommendation of Defendants.
20 Tobin Decl., Ex. 23.

21     As set forth in the DA, the relationship between the distributor and Defendants is
22 one of indefinite duration. Under the DA's terms, the distributor relationship continues
23 unless the distributor sells the territory, Flowers Foods ceases to use distributors in a
24 territory for "business reasons," or Flowers Foods terminates as a result of the distributor
25 engaging in certain enumerated activities deemed non-curable or repeated curable
26 breaches. Tomasevic Decl., Ex. 6 at §§ 3.1, 17.1.
27 ///
28 ///

## II. CLASS CERTIFICATION STANDARDS

Class certification is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) sets out four prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). If these four prerequisites are met under Rule 23(a), the court must then decide whether the class action is maintainable under Rule 23(b). Under Rule 23(b)(3), a class may be certified if the court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).

At the class certification stage, the court must take the substantive allegations of the complaint as true, but it "also is required to consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982). The court must engage in a "rigorous analysis" of each Rule 23(a) factor, which often "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. If the court concludes that the moving party has carried its burden, then the court is afforded "broad discretion" to certify the class. *Zinser*, 253 F.3d at 1186.

## III. STANDARDS FOR MISCLASSIFICATION CLAIMS

Prior to considering whether Plaintiffs' claims satisfy Rule 23, the Court first addresses Defendants' argument regarding the applicable legal framework to evaluate the putative class members' central claim that they were misclassified as independent contractors instead of employees. Plaintiffs argue that the ABC Test articulated in

*Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018),[4] governs this inquiry. The ABC Test provides that a hiring entity is an employer if any one of the following three prongs is not met:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed. *Dynamex*, 4 Cal. 5th at 957 (emphasis in original).

Because the ABC Test requires all three prongs to be met before a worker can be deemed an independent contractor, a class need only establish that a hiring entity failed one prong in order to prove its misclassification claim. *Id.* at 963–64. Defendants argue that before the ABC Test can be applied to Plaintiffs' claims, the Court must first conduct individualized determinations of whether Flowers Foods and Flowers Bakeries, as parent companies of the subsidiaries that directly contract with Plaintiffs, constitute "hiring entities." The Court disagrees with Defendants.

Contrary to Defendants' argument, the law does not require any threshold "hiring entity" analysis before the *Dynamex* ABC Test is applied to determine whether a worker is an employee or independent contractor. *Mejia et al. v. Roussos Construction, Inc.*, 76 Cal. App. 5th 811, 819 (2022) (finding that a threshold hiring entity test was not intended by *Dynamex* court and would "run counter to the intent of California wage and hour laws"); *People v. Uber Technologies, Inc.*, 56 Cal. App. 5th 266, 288 (2020) (concluding that *Dynamex* did not intend for additional threshold step in the ABC Test and rejecting hiring entity test). The California Supreme Court in *Dynamex* affirmed that any entity that "suffer[s] or permit[s]" an individual "to work" for the entity's benefit is an employer if the ABC Test is met. *See Martinez v. Combs*, 49 Cal. 4th 35, 65 (2010). The "to suffer or

---

[4] The ABC Test in *Dynamex* was subsequently codified by Cal. Lab. Code § 2775(b)(1).

permit to work" standard looks to whether the putative employer had "knowledge of and failure to prevent the work from occurring." *Id.* at 70. The Ninth Circuit has made clear that this standard applies to entities even when they do not directly contract with the worker or directly receive the services of the worker: so long as "the putative employee was providing a service to the hiring entity even *indirectly*, the hiring entity can fail the ABC test and be treated as an employer." *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1124 (9th Cir. 2021) (emphasis in original) (finding that defendant "could be Plaintiffs' employer under the ABC Test even though it is not a party to any contract with Plaintiffs").

Here, like the plaintiffs in *Vazquez*, the distributors provided delivery services that benefited Flowers Foods and Flowers Bakeries, with the full knowledge of those entities. Specifically, distributors were tasked with delivering the parent companies' bakery products to their customers located within delivery routes, which were owned, financed, and sold by Flowers Foods. Tomasevic Decl., Ex. 2 at 5–6; FAC ¶ 19. Flowers Foods, the ultimate parent company, generated revenue from the sales of the bakery products delivered by distributors. Flowers Bakeries, an intermediate parent company, negotiated with the customers on the pricing of the delivered bakery products and the specific customer service requirements and quality standards for the delivery drivers to follow. FAC ¶ 17. Even though Flowers Foods and Flowers Bakeries did not directly contract with the delivery drivers through the DAs, Plaintiffs provided both entities a delivery service that they both knew about and permitted. *Vazquez*, 986 F.3d at 1124. Therefore, Flowers Foods and Flowers Bakeries are subject to the ABC Test without the need for a threshold "hiring entity" test.

### IV. CLASS CERTIFICATION

Having determined that the ABC Test is the applicable legal framework for Plaintiffs' misclassification claims, the Court now turns to the class certification analysis. Plaintiffs seek to certify the Misclassification Class, which they define as "All persons who worked in California pursuant to a 'Distributor Agreement' or similar arrangement with

Flowers Food, Inc., or one of its subsidiaries, that were classified as 'independent contractors' during the period commencing four years prior to the commencement of this action through judgment. 'Absentee' distributors are not part of this class definition." Dkt. 213 at 18. The two named Plaintiffs are proposed class representatives.

The Court first examines whether the four prerequisites of Rule 23(a) are satisfied with regard to the proposed class, then turns to whether common questions of law or fact predominate, and finally to whether a class action is the superior method for resolving the controversy.

### A.   Plaintiffs Have Satisfied Rule 23(a)

#### 1.   The Class is Sufficiently Numerous

First, the Court finds that the proposed class of distributors is sufficiently numerous. To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although the numerosity requirement is not tied to a strict numerical threshold, trial courts have generally found classes of at least 40 members to satisfy the requirement. *Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010). Here, Plaintiffs allege that there are at least 172 distributors contracting with Flowers Modesto and 258 distributors contracting with Flowers Henderson. A class consisting of at least 430 members renders joinder impracticable and far exceeds the threshold of 40 class members that other trial courts have identified as sufficiently numerous. Plaintiffs have therefore satisfied the numerosity requirement.

#### 2.   The Named Plaintiffs are Typical

Second, the Court finds that the named plaintiffs are typical of the class. The Court's typicality inquiry looks to whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry, which focuses on the relationship between the class and its representatives, considers "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been

injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). Courts examine the nature of the claim, rather than the specific facts of each violation, in conducting this inquiry. *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Defendants classified the named plaintiffs and the class members as independent contractors instead of employees. This course of conduct—that is, the alleged misclassification—affected the named plaintiffs and the other class members in the same manner and gives rise to identical claims for violations of the California Labor Code and related wage orders. Although the amount of damages allegedly owed to each class member and the named plaintiffs may vary, the claims and injury of the named plaintiffs are the same as those of the other distributors in the class.

Defendants argue that the typicality requirement is not satisfied because the named plaintiffs do not have arbitration agreements, whereas some members of the putative class do. This concern is moot because the Court has since found that the arbitration agreements of distributors in this action are not enforceable. *See* Dkt. 307 (order denying Defendants' motion to compel arbitration on waiver grounds). Even if enforceable arbitration agreements were binding on members of the putative class, that factor alone does not necessarily result in atypicality. Courts have noted atypicality concerns when the named plaintiff, as opposed to one of the class members, "is subject to unique defenses which threaten to become the focus of the litigation," *Hanon*, 976 F.2d at 508, but that concern is not present here. Accordingly, the Court finds that the typicality requirement is satisfied.

### 3. The Named Plaintiffs are Adequate

Third, the Court finds that the named Plaintiffs and class counsel are adequate. Defendants argue that class counsel are inadequate due to conflicts of interest arising from their representation of other class and individual plaintiffs in similar lawsuits against the same defendants. The Court is not persuaded.

In determining adequacy of class counsel, courts consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court's inquiry focuses on two questions: (1) whether "the

representative plaintiffs and their counsel have any conflicts with other class members," and (2) whether "the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Courts have found counsel to be inadequate where they represent multiple groups of plaintiffs with inherently conflicting claims, such as those with present or future claims in a global settlement fund, against the same defendant. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). However, trial courts have not found class counsel inadequate "merely for representing another class against the same defendants when, for instance, the purported conflicts are illusory and speculative…and there are procedural safeguards protecting the class's interests, such as requiring disclosure of the potential conflict to class members and requiring court approval for settlements." *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 569 (N.D. Cal. 2015).

Here, the Court finds no factors suggesting that class counsel will provide inadequate representation due to their concurrent representation of other plaintiffs in similar lawsuits against the same defendants. Plaintiffs' counsel is also counsel for other Flowers Foods distributor plaintiffs in individual and class action lawsuits asserting similar misclassification claims and resulting wage violations against Defendants and their subsidiaries. *See Goro et al v. Flowers Foods, Inc. et al*, 3:17-cv-2580-JO-JLB; *Maciel et al. v. Flowers Foods, Inc. et al*, 3:20-cv-02059-JO-JLB. Defendants have not identified any inherent or potential conflicts of interest that would arise from the representation of similarly situated individuals and class members with similar claims.

Unlike in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), to which Defendants point in arguing inadequacy, this case presents no inherent conflict of interest. In *Ortiz*, class counsel represented plaintiffs with both existing and future injuries in a global asbestos settlement against the same defendant. 527 U.S. at 856. The court concluded that separate counsel was required to eliminate inherent conflicts of interest where the currently injured plaintiffs were interested in large immediate payments whereas the not-yet-injured plaintiffs were interested in inflation-protected funds for the future. *Id.* Here, unlike in

*Ortiz*, class counsel's representation of both the class in this action and individual and class plaintiffs in similar actions does not present an inherent conflict of interest because no substantive law or limited settlement fund restricts the potential recovery for the plaintiffs. On this record, the Court concludes that any concern about conflicts of interest or adequate representation is speculative. Moreover, the Court notes that its oversight of potential class settlements provides a procedural safeguard that further protects the interests of the class. *Sandoval*, 309 F.R.D. at 569.

### 4. There are Questions of Law and Fact Common to the Class

Finally, the Court finds that the commonality requirement for class certification is satisfied. Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question of law or fact is common to the class if "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Thus, what matters is not the "raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (emphasis in original). To demonstrate that class claims would produce a common answer, the party seeking certification must present "significant proof" that an employer operated under a "general policy" or practice. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (citing *Dukes*, 564 U.S. 338 at 351–53). If there is no evidence that the entire class was subject to the same allegedly unlawful policy or practice, then there is no question common to the class. *Kilbourne v. Coca-Cola Co.*, 2015 WL 5117080, at *8 (S.D. Cal. July 29, 2015) (citing *Ellis*, 657 F.3d at 983).

Here, the Court faces a common question at the heart of the action—whether Defendants misclassified its distributors as independent contractors instead of employees. And this common question can largely be determined by common evidence of Defendants' overarching business structure and business practices regarding their distributors. In arguing that commonality exists, Plaintiffs focus on Prong B of the ABC Test set forth above, which looks to whether the worker "performs work that is outside the usual course

of the hiring entity's business." *Dynamex*, 4 Cal. 5th at 957. As one of the three prongs of the ABC Test, Prong B comprises a significant portion of the misclassification analysis and, because the ABC Test is conjunctive, proof that Defendants failed this prong alone will be sufficient to establish Plaintiffs' misclassification claim. *Id.* at 963–64. Here, whether the distributors' delivery services is central to Defendants' course of business will be determined in large part by common evidence across the class. For example, Defendants' corporate filings regarding their business operations and financial performance will provide evidence of the nature of their business and what their usual course of business entails. *See, e.g.*, Tomasevic Decl., Ex. 1; Ex. 2 at 11. Corporate representative testimony that describes the operational realities of the business also serves as common evidence of class-wide practices to prove the nature of Defendants' course of business and the distributors' role in that business. *See, e.g.*, Tomasevic Decl., Ex. 14; Ex. 23. Moreover, the standard DA signed by every distributor details the workers' specific job requirements and responsibilities. These class-wide work requirements and practices can be used to determine whether the distributor is "necessary" or "merely incidental" to Defendants' usual course of business. *Vazquez*, 986 F.3d at 1125–26. Because the above evidence about the distributors' role in Defendants' overall business structure will provide common, class-wide answers regarding the centrality of the distributors' work to Defendants' business, the Court thus concludes that Plaintiffs have satisfied the commonality requirement.

Moreover, the Court also notes that the common evidence discussed above—namely, Defendants' corporate practices and policies with regard to its distributors and the DA describing the nature of distributors' responsibilities and working relationship with the company—also serves to provide common proof of whether Defendants satisfy Prong A of the ABC Test, which focuses on a putative employer's control over the worker. *Dynamex*, 4 Cal. 5th at 957.

///

///

**B.     Plaintiffs Have Satisfied Rule 23(b)**

Having concluded that Plaintiffs have met Rule 23(a) requirements, the Court now examines whether common questions will predominate over individual ones in deciding the threshold misclassification issue, and then, if necessary, the substantive Labor Code claims of the class members. The Rule 23(b)(3) inquiry looks to whether the putative class is "sufficiently cohesive to warrant adjudication by representation." Fed. R. Civ. P. 23(b)(3); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The court considers whether "members of a proposed class will need to present evidence that varies from member to member" or if "the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 422, 453 (2016). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citing C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

Here, as discussed above, the misclassification claim central to this proposed class will be susceptible to common, class-wide proof regarding the distributors' role in Defendants' overall business structure and Defendants' level of control over the distributors. If Plaintiffs prove their threshold misclassification claim, the factfinder will then need to determine substantive wage claims for failure to pay overtime, unlawful deductions from wages, failure to indemnify for necessary expenditures, and failure to provide proper wage statements. The Court therefore examines the extent to which common questions are presented in Plaintiffs' substantive wage claims.

### 1.     Failure to Pay Overtime

First, Plaintiffs bring a claim for failure to pay overtime under Cal. Lab. Code § 510 and the related wage orders, which require the payment of overtime compensation to non-exempt employees for over eight hours worked in a day, over forty hours worked in a week,

and the first eight hours worked on the seventh consecutive day of the work week. *See* Cal. Lab. Code § 510. Plaintiffs allege that the distributors in the putative class "regularly worked and continue to work" overtime hours without overtime pay "in accord with [Flowers Foods'] mandated schedule." FAC ¶ 96. Defendants had a general practice of not paying distributors overtime regardless of the number of hours worked: the standard DA set out their policy on not providing these benefits to their distributors. Tomasevic Decl., Ex. 6 at § 16.1. Although the number of overtime hours worked by each class member is an individual question, the legality of Defendants' class-wide policy of not paying overtime to all distributors, regardless of hours worked, is an issue subject to common proof.

### 2. Unlawful Deductions from Wages

Second, Plaintiffs bring a claim for unlawful deductions from wages under Cal. Lab. Code § 221 and the related wage orders, which prohibit employers from taking back wages that have been earned. *See* Cal. Lab. Code § 221. Plaintiffs allege that Flowers Foods withholds payments for certain administrative expenses and "charges [distributors] for stale product returned from retail locations that exceeds a certain percentage of sales." FAC ¶ 102. As set forth in the standard DA, Defendants had a general practice requiring distributors to pay a fee to use Flowers Foods' administrative services. The DA also provided that Flowers Foods would only "repurchase" a percentage of the distributor's stale products, thus leaving the distributors to bear the cost of the remainder of the stale products. While the specific amount of deductions from each class member will require individualized determinations, whether class-wide practices of charging distributors for certain costs constituted unlawful deductions in violation of state labor laws is a common question.

### 3. Failure to Indemnify for Necessary Expenditures

Third, Plaintiffs bring a claim for failure to indemnify for necessary expenditures under Cal. Lab. Code § 2802 and the related wage orders, which require an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the

employee in direct consequence of the discharge of his or her duties." *See* Cal. Lab. Code § 2802. Plaintiffs argue that Flowers Foods has a policy of not reimbursing distributors "for reasonable and necessary expenditures, including their vehicles, tools, cellular telephones, transportation expenses, insurance, uniform and laundry of the same, loss of product (such as stolen baked goods), among other expenses." FAC ¶ 107. Flowers Foods has a general policy that requires distributors to obtain their own vehicle and insurance, as set forth in the standard DA signed by all distributors. Tomasevic Decl., Ex. 6 at § 9.1. While the amount of expenses incurred by each class member is an individual question, the legality of this common practice can be determined on a class-wide basis with common proof.

4. Failure to Provide Proper Wage Statements

Finally, Plaintiffs bring a claim for failure to provide proper wage statements under Cal. Lab. Code § 226(a) and the related wage orders, which require that an employer must provide its employees with an "accurate itemized statement in writing" containing certain required information at the time of each payment of wages or at least twice a month. *See* Cal. Lab. Code § 226(a). Plaintiffs argue, and the Court agrees, that this claim is subject to common proof because it is based on Defendants' class-wide policy of not providing wage statements to distributors. Defendants' uniform practice affected all members of the putative class and can thus be adjudicated on a class-wide basis.

For the reasons set forth above, the Court concludes that common issues predominate over individual questions such that Rule 23(b) is satisfied. In sum, the threshold and central question of misclassification as well as liability for the substantive wage claims are common questions susceptible to common proof. Once liability and misclassification are established, the Court will indeed need to make individualized determinations to determine damages—for example, with regard to the overtime claim, whether and to what extent each class member is entitled to overtime pay based on the number of hours worked. However, the Court concludes that the central and common questions of misclassification and liability under the Labor Code predominate over these

individualized issues of damages. *Tyson Foods*, 577 U.S. at 453 (finding class certification is proper if central issues predominate over individualized issues of damages and affirmative defenses).

### C.  A Class Action is Superior

Having determined that the questions of law or fact common to class members predominate, the Court also finds that a class action is the superior method of resolving this controversy. Under Rule 23(b)(3), a class action may be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In evaluating superiority, courts examine (a) the class members' interests in individually controlling separate actions; (b) the extent and nature of any preexisting related litigation; (c) the desirability of concentrating the litigation of the claims in the forum; and (d) manageability. Fed. R. Civ. P. 23(b)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190.

Here, the putative class action involves approximately 430 distributors who were subject to identical DAs that classified them as independent contractors. These 430 distributors assert the same misclassification claims, and also the same substantive wage claims stemming from the alleged misclassification. Because the issues of both misclassification and liability for the substantive wage claims are common class-wide questions susceptible to common proof, the Court concludes that trying these issues together in a class action would be more efficient and cost-effective.

For the same reason, the Court declines to conclude that this class would not be manageable due to the need for individualized determinations. Defendants argue that individual actions are more appropriate because damages could be significant and exceed $150,000 for each class member. The Court is not convinced that each distributor is necessarily entitled to such an amount, and even if that were the case, the class action would

still be more efficient for the judicial system given the presence of significant common questions on misclassification and liability.[5]  Accordingly, the Court finds that a class action is the superior method of resolving the controversy.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for class certification is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  July 5, 2022

_____
Honorable Jinsook Ohta
United States District Judge

---

[5] Moreover, as expressed in the Court's May 13, 2022 order in the related *Goro* case, *see Goro et al v. Flowers Foods, Inc. et al*, 3:17-cv-2580-JO-JLB at Dkt. 247, this Court intends to use its broad discretion to bifurcate trial on Prong B and to order additional bifurcation as necessary to enhance the manageability of this action.  For example, a finding that Defendants failed to meet Prong B of the ABC Test will resolve the misclassification question and obviate the need for trial on Prong C, which may require more individualized determinations.