**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs

JARED L. PALMER, CA Bar No. 287974
jared.palmer@ogletree.com
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C**
One Embarcadero Center, Suite 900
San Francisco, CA  94105
Telephone:    415-369-3553
Facsimile:    415-442-4870

Attorneys for Defendants FLOWERS FOODS, INC.,
FLOWERS BAKERIES, LLC, and
FLOWERS FINANCE, LLC

*[Additional Counsel on Following Page]*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LUDLOW, ET AL., <br><br> Plaintiff, <br><br> v. <br><br> FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE, LLC, <br><br> Defendants. <br><br> and | Case No. 3:18-cv-01190-JO-JLB <br><br> **JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> **Date**:  October 25, 2023 <br> **Time**:  8:30 a.m. <br> **Courtroom**:  4C <br><br> **Judge:** Hon. Jinsook Ohta <br> **Magistrate**: Hon. Jill L. Burkhardt <br><br> **Complaint Filed**: June 6, 2018 <br> **Final Pretrial Conf.**: Not Set |

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

| | |
|---|---|
| JOSE MACIEL, an individual, and MACIEL DISTRIBUTION, INC., a California corporation, on behalf of themselves and others similarly situated, | Case No. 3:20-cv-02059-JO-JLB |

Plaintiffs,

v.

FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company, FLOWERS FINANCE, LLC, a Delaware limited liability company,

Defendants.

ALEXANDER M. CHEMERS, CA Bar No. 263726
alexander.chemers@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:   213-239-9800
Facsimile:    213-239-9045

KEVIN HISHTA, *Pro Hac Vice*
kevin.hishta@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
191 Peachtree Street, N.E., Suite 4800
Atlanta, GA 30303
Telephone:  404-881-1300
Facsimile:   404-870-1732

Attorneys for Defendants FLOWERS FOODS, INC.,
FLOWERS BAKERIES, LLC, and
FLOWERS FINANCE, LLC

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................1

II.  FACTUAL & PROCEDURAL HISTORY ...........................................2

    A.  The Parties. ..................................................................................2

    B.  The Claims, Voluminous Discovery, and Other
        Procedural History. ......................................................................2

        1.  *The Settlement Fully Resolves Several Sets of Hard-*
             *Fought Claims.* ..................................................................2

        2.  *Summary of the Investigation and Litigation of the*
             *Settled Claims.* ................................................................4

    C.  After Three Full Days of Mediation Before a Retired
        Judge, the Parties Entered Into the Proposed
        Settlement. ....................................................................................6

III.  SUMMARY OF SETTLEMENT TERMS .............................................6

    A.  The Settlement Class and Scope of the Settlement. .......................7

    B.  Monetary Payments. (Settlement Agreement at §§ 13-
        14). ...............................................................................................8

    C.  Repurchase of Distribution Rights, the Changing of the
        Model in California, and Opportunity for Employment.
        (§ 7). ............................................................................................9

    D.  Settlement Notice and Administration. (§§ 10-11). .....................11

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS
    APPROPRIATE ..................................................................................12

    A.  The Settlement is the Product of Extensive, Informed,
        Non-Collusive Negotiation. ........................................................13

    B.  The Settlement Easily Sits Within the Range of Possible
        Approval. ....................................................................................14

    C.  The Strength of Plaintiffs' Case and the Risk of
        Further Litigation Support Preliminary Approval. ....................15

D.      The Settlement Consideration and Allocation Are Fair.................16

E.      Plaintiffs Contend The Attorneys' Fees Request Is
        Reasonable. ..........................................................................................19

V.    CONDITIONAL CLASS CERTIFICATION OF A
      RELATED 23(B)(2) INJUNCTIVE RELIEF CLASS IS
      APPROPRIATE .........................................................................................21

VI.   THE PROPOSED CLASS NOTICE PROGRAM MEETS
      THE REQUIREMENTS OF RULE 23(E)................................................22

VII.  THE SETTLEMENT IS ALSO REASONABLE UNDER
      THE FLSA..................................................................................................24

VIII. THE COURT SHOULD SET A FINAL APPROVAL
      HEARING ..................................................................................................25

IX.   CONCLUSION ..........................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*Cicero v. DirecTV, Inc.*,
  No. EDCV 07-1182,
  2010 WL 2991486 (C.D. Cal. July 27, 2010)...................................................18

*Curtis v. Scholarship Storage Inc.*,
  No. 2:14-cv-303-NT,
  2016 WL 3072247 (D. Me. May 31, 2016)......................................................24

*Decker v. AllStates Consulting Servs., LLC*,
  No. 2:18-cv-03216-KJM-DB,
  2020 WL 7769842 (E.D. Cal. Dec. 30, 2020)..................................................20

*Dynamex Operations W. v. Super. Ct.*,
  4 Cal. 5th 903 (2018) .......................................................................................22

*Haitayan v. 7-Eleven, Inc.*,
  Nos. 21-56144, 21-56145,
  2022 WL 17547805 (9th Cir. Dec. 9, 2022)....................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...........................................................................19

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ......................................................................20, 21

*Laffitte v. Robert Half Int'l Inc.*,
  1 Cal.5th 480 (2016)........................................................................................21

*Michaud v. Monroe Muffler Brake, Inc.*,
  No. 2:12-cv-00353-NT,
  2015 WL 1206490 (D. Me. Mar. 17, 2017) .....................................................24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)......................................................................13

*Officers for Justice v.*
   *Civil Serv. Comm'n of City & Cnty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ........................................................................13, 14

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) ..............................................................................21

*Pederson v. Airport Terminal Servs.,*
   No. ED CV 15-02400-VAP (SPx),
   2018 WL 11354549 (C.D. Cal. Aug. 3, 2018) ...................................................14

*People v. Uber Techs., Inc.,*
   56 Cal. App. 5th 266 (2020) ...............................................................................22

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985)............................................................................................23

*Prescott v. Prudential Ins. Co. of Am.,*
   No. 2:09–cv–00322–DBH,
   2011 WL 6662288 (D. Me. Dec. 20, 2011)........................................................24

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ..............................................................................13

*Satchell v. Fed. Express Corp.,*
   Nos. C03-2659 SI, C 03-2878 SI,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)....................................................14

*Singer v. Becton Dickinson Co.,*
   No. 08-CV-821-IEG (BLM),
   2009 WL 4809646 (S.D. Cal. Dec. 9, 2009) ......................................................13

*Six Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ............................................................................21

*State of Cal. v. eBay, Inc.,*
   No. 5:12-CV-05874-EJD,
   2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ...................................................13

*Thompson v. NSC Techs., LLC,*
   No. 3:20-CV-00371-JO-MSB,
   2023 WL 2756980 (S.D. Cal. Mar. 30, 2023)...........................................20, 21

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ........................................................20

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) .............................................14

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09–00261 SBA (EMC),
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..................................16

**STATUTES**

28 U.S.C. § 1715(b) ..............................................................................12

29 U.S.C. § 16(b) ..................................................................................19

29 U.S.C. § 216(b) ................................................................................18

Cal. Lab. Code, § 218.5 ........................................................................19

Cal. Lab. Code, § 2786 .........................................................................22

**RULES**

Fed. R. Civ. P. 23 .....................................................................12, 21, 22

# I.     INTRODUCTION

Named Plaintiffs Daniel Ludlow, William Lancaster, and Jose Maciel ("Named Plaintiffs"), on behalf of themselves and any business entities through which they operated, and on behalf of the Class Members; and Defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Bakeries, LLC ("Flowers Bakeries"), and Flowers Finance, LLC ("FLOFIN") ("Defendants") respectfully submit this Joint Motion for Preliminary Approval.

The settlement—the result of almost five and half years of hard-fought litigation and extensive arms-length negotiations with several mediation sessions—is worth over $105 million including a cash component, or common fund, of $55,000,000. Assuming all 485 Class Members participate in the common fund of $55 million, this equates to $113,400 per Class Member recovered under the settlement. Defendants also agreed to the injunctive relief Plaintiffs sought in their complaints, *i.e.*, Defendants will change their entire distribution model in California. Defendants will implement an employment model, state-wide, and, in turn, will be buying back the previously sold distributor territories and accompanying distribution rights from every current California distributor. For Class Members, this amounts to another approximate $50 million net of outstanding loans owed by the Class Members to FLOFIN. The Settlement is non-reversionary and is a "non-claims made" settlement that does not require the submission of a claim form by Settlement Class Members.

The Parties view the Settlement as a desirable alternative to the uncertainty, expense and delay that would result from further litigation. At the same time, Class Counsel believes the proposed Settlement achieves an excellent result and is in the best interests of Class Members, and the Parties believe it should ultimately be approved by the Court as fair, reasonable, and adequate in all respects. This is particularly true given the complex legal issues involved, some of which likely would have to be resolved after additional litigation at the appellate level, and the

implementation of an employment model throughout the state of California. At a minimum, it meets the relatively modest bar for preliminary approval considering the risks the Class Members face. In sum, counsel believe that the Settlement—negotiated at arms-length only on the doorstep of a class trial and with the assistance of a retired Judge—is a fair and reasonable resolution of the alleged claims. Accordingly, the Parties respectfully request that the Court grant the motion for preliminary approval and enter the Order requested.

## II.   FACTUAL & PROCEDURAL HISTORY

### A.   The Parties.

Plaintiffs allege that Flowers[1] contracts with and sells bakery products to large retail and fast-food customers via its national direct-store-delivery ("DSD") business segment and then engages "independent contractor" distributors like the Named Plaintiffs and the Class Members to assist with the "delivery" or distribution part of the DSD business. *See* Dkt. No. 1 (the original complaint).

Named Plaintiffs, the FLSA Plaintiffs, and all Class Members are a mix of current and former California distributors that each have or had a Distributor Agreement ("DA") with either Flowers Baking Co. of Henderson, LLC, Flowers Baking Co. of Modesto, LLC, or Flowers Baking Co. of California, LLC. Distributor Class Members purchased territories and the accompanying distribution rights as part of entering their DAs with Flowers. Flowers has been operating its independent distributor franchise model in California since at least 2013.

### B.   The Claims, Voluminous Discovery, and Other Procedural History.

#### 1.   *The Settlement Fully Resolves Several Sets of Hard-Fought Claims.*

Plaintiff Daniel Ludlow originally filed this action in June of 2018 alleging

---

[1] "Flowers" refers collectively here to the named Defendants as well as their wholly owned subsidiaries who will be obtaining releases if the settlement is approved, including the separately formed regional bakeries that also help carry out the business and that, for example, are counterparties to the Distributor Agreements. *See* Tomasevic Decl., Ex. 1, Settlement Agreement at § 3.27.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

that he and his fellow California distributors were misclassified as "independent contractors" and that, in turn, Defendants failed to pay all required wages due under both the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). Dkt. No. 1. Mr. Ludlow also brought claims for violations of California's Unfair Competition Law, for fraud, for unlawful deductions from wages, failure to indemnify for necessary expenditures, and failure to provide proper wage statements. *Id.* On February 21, 2019, co-Plaintiff William Lancaster joined Mr. Ludlow as an additional named plaintiff. Dkt. No. 56.

On June 10, 2020, distributor Jose Maciel filed his own separate class and FLSA collective action against Defendants in the Northern District of California asserting similar theories and claims. Eventually Mr. Maciel's case was transferred to this District and consolidated with the *Ludlow* case. *See* Dkt. No. 195 (Consolidation Order).

Separately, on July 17, 2020, Mr. Maciel also brought a state court action for civil penalties against Defendants under California's Private Attorneys' General Act ("PAGA"), which is currently venued in San Mateo Superior Court, Case No. 20-CIV-02959. Mr. Ludlow, Mr. Lancaster, and Mr. Maciel are all represented by the same counsel in all cases. The settlement proposes to resolve *all* claims against Defendants, globally, brought by these Named Plaintiffs and the FLSA opt-in Plaintiffs that eventually joined them.

As mentioned, this case contains, first, a "hybrid" of claims brought under California state employment laws that were the subject of Plaintiffs' successful motion for class certification under Fed. R. Civ. P. 23 and claims under the Fair Labor Standards Act ("FLSA"), which require workers to affirmatively "opt-in" to any collective action. As of today, there are 485 Rule 23 Class Members (including the Named Plaintiffs) who did not previously opt out of the case, and of them, 126 affirmatively opted *into* the FLSA collective action component of the case. The *Maciel* state court PAGA case involves a subset of all California distributors having

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

worked for Flowers in California since April 10, 2019, which today includes 382 distributors. *See* Tomasevic Decl., ¶ 22, fn. 3.

> 2. *Summary of the Investigation and Litigation of the Settled Claims.*

Defendants have always denied all claims. Few misclassification class actions in the Southern District have endured such hard-fought litigation battles over more than five years. The online docket in this matter is 36 printed pages with 428 events and counting.

The Parties litigated pleading challenges. *See* Dkt. Nos. 123, 200. The Parties litigated whether certain distributors' claims should be compelled to arbitration. *See* Dkt. No. 225. The Parties litigated temporary restraining orders. *See, e.g.,* Dkt. No. 175. The Parties sought emergency *ex parte* relief on numerous occasions. Dkt. Nos. 117, 175, 189, 234, 294.

The Parties served and responded to multiple sets of written discovery over the years and produced volumes of data, disclosures, and documents that were all analyzed and applied to the litigation. Tomasevic Decl., ¶ 16. Plaintiffs served, and Defendants responded to, at least nine sets of written discovery including dozens of interrogatories, document requests, and requests for admissions. *Id*. Defendants produced, and Plaintiffs reviewed, about 263,000 pages of documents, plus electronic data. *Id.*. For their part, Defendants served over 1,300 interrogatories and 2,800 document requests to distributors over the course of the litigation. *Id.* at ¶ 17.

The Parties also issued and enforced subpoenas to third parties and completed 13 depositions, including depositions of all named Plaintiffs and of Flowers' executives, including their designees under Fed. R. Civ. P. 30(b)(6). All Parties retained multiple experts, including subject matter and damages experts, to assist them with their efforts. The Parties exchanged multiple Rule 26 expert reports. *Id.* at ¶¶ 18-19.

The Parties litigated numerous discovery issues before Magistrate Judge Jill

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

L. Burkhardt. Over the years, the Parties sparred heavily over the allowable scope of discovery. As the docket confirms, the Parties litigated at least 13 motions to compel or equivalent discovery disputes. *See, e.g.,* Dkt. Nos. 36, 39, 49, 69, 74, 75, 145, 204, 284, 352, 366, 368, 371.

Once armed with sufficient discovery and information, the Parties litigated Plaintiffs' motion to conditionally certify the FLSA component of the case as a collective action and then a subsequent and unsuccessful motion, by the defense, to decertify the collective action. Dkt. Nos. 8 & 297.

As for the remainder of the case, Plaintiffs filed their first Rule 23 motion for class certification in 2019, which Defendants opposed. Dkt. Nos. 90 & 134. The Court denied Plaintiffs' first motion without prejudice and, instead, granted Defendants' parallel motion to stay the case while other courts decided important novel issues such as whether California's "ABC Test" for worker misclassification applied retroactively and/or whether any part of that test was preempted by federal law. *See* Dkt. No. 116 (Defendants' Motion to Stay); No. 174 (Order granting motion to stay and denying, without prejudice, Plaintiffs' motion for class certification).

Plaintiffs filed their renewed motion for class certification in May of 2021. Dkt. No. 213. Defendants opposed, Plaintiff replied, and the Court then entertained supplemental briefing. Dkt. Nos. 213, 237, 243, 248, 299, 300. Then, in July of 2022, the Court granted Plaintiffs' Motion and certified the following class:

> All persons who worked in California pursuant to a 'Distributor Agreement' or similar arrangement with Flowers Food, Inc., or one of its subsidiaries, that were classified as 'independent contractors' during the period commencing four years prior to the commencement of this action through judgment.

Dkt. No. 312. Defendant then unsuccessfully sought reconsideration of the Court's class certification ruling and then filed a petition to the Ninth Circuit for immediate appeal of that ruling, which was also rejected. *See* Dkt. Nos. 313 & 320. Absent

settlement, Defendants plan to renew such appeal, if necessary.

In February of 2023, Plaintiffs filed a motion for partial summary judgment, which the Court denied on July 19, 2023. *See* Dkt. No. 410. The Parties appeared to be headed to an October trial following a July 19, 2023 hearing on Plaintiff Ludlow's Motion for Partial Summary Judgment. The Court denied the motion during the hearing and indicated an intent to schedule a trial on prong B for October 10, 2023. Tomasevic Decl., ¶ 20.

### C.     After Three Full Days of Mediation Before a Retired Judge, the Parties Entered Into the Proposed Settlement.

The Parties had previously tried to resolve the case to no avail. *See,* e.g., Dkt. No. 21 (regarding the Early Neutral Evaluation Conference). With trial fast approaching, the Parties attended private mediation before The Honorable Herbert. B. Hoffman (Ret.), of Judicate West.  Tomasevic Decl., ¶ 20.

The Parties attended two back-to-back days of mediation, in-person, with Judge Hoffman, on August 15th and August 16th, 2023, respectively, and then a third session on August 29th, 2023. *Id*. At the end of the second day, the case did not settle, but Judge Hoffman did make a "mediator's proposal." Throughout the three days of mediation with Judge Hoffman, the Parties engaged in extensive negotiations involving substantial offers and counteroffers, with the Parties ultimately reaching a settlement on August 29th and agreeing to a binding written term sheet encompassing all three cases described above. The Parties then spent weeks negotiating the final settlement agreement described more fully below. *Id*.

### III.   SUMMARY OF SETTLEMENT TERMS

The complete 46-page Settlement Agreement signed by the Parties is attached as "Exhibit 1" to the Declaration of Alex Tomasevic. The following summarizes the Agreement's key terms. In short, Defendants will pay $55,000,000 into a common fund. Defendants will also implement an employment model throughout the state of California. Concurrently, Defendants will buy back all territories and accompanying

distribution rights from all current California distributors according to an objective formula that accounts for historic sales within the territory. For Class Members, this amounts to another net payout of about $50,000,000.[2]

## A. The Settlement Class and Scope of the Settlement.

The settlement concerns Rule 23 Class Members, FLSA Plaintiffs, and PAGA civil penalties for eligible distributors (*i.e.*, those working during the PAGA period). The injunctive relief extends to distributors who have previously opted out and those who may subsequently exclude themselves from the settlement.

Class Members are individuals who, either individually and/or on behalf of a corporation or business entity, operated under a Distributor Agreement with a Flowers subsidiary in California from June 6, 2014 through the date of preliminary approval. Tomasevic Decl., Ex. 1 at §§ 3.6, 3.10. This includes the approximately 485 individuals in the *Ludlow* Action that did not opt out.

FLSA Plaintiffs are the 126 individuals who filed opt-in consent forms and have not since withdrawn their consents. These individuals are individually listed in the Settlement Agreement. Tomasevic Decl., Ex. 1 at § 3.21.

The PAGA Period begins April 10, 2019, meaning that distributors having worked since that time will be eligible for an additional payment, with 75% of the PAGA allocation going to the California Labor Workforce and Development Agency as required by the Labor Code. Tomasevic Decl., ¶ 22, fn. 3; Tomasevic Decl., Ex. 1 at § 3.30. Here, to preserve judicial resources and avoid duplicative efforts, the Parties are submitting a proposed amended complaint adding Mr. Maciel's PAGA allegations and claims, which are part of his state court action, to his federal court complaint that is part of the current consolidated action before this Court. *See* Tomasevic Decl., Ex. 2 (proposed amended complaint). If the Court approves the settlement, including the PAGA claim described herein, the Parties will

---

[2] This was the approximate net payout at the time the term sheet was executed. This number will fluctuate some based on sales and decreasing FLOFIN notes, which will continue to be paid during the transition period.

then apprise the Superior Court of that development and jointly seek dismissal of that duplicative claim.

### B.      Monetary Payments. (Settlement Agreement at §§ 13-14).

First, the Parties have negotiated a non-reversionary settlement fund of $55 million, which covers:  (i) payments to Class Members and the FLSA Plaintiffs, (ii) service awards to the named Plaintiffs of up to $ 25,000 each (up to $75,000 total), (iii) attorneys' fees limited to up to one-third of this fund only, (iv) costs currently estimated to be about $178,000, (v) settlement notice and settlement administration costs currently estimated to be about $19,000, and (v) $200,000 in PAGA payments to resolve the *Maciel* PAGA claims. This $200,000 apportionment to PAGA is more particularly described in a separate PAGA settlement agreement that the Parties will also present to the Court for approval.

The payments to Class Members and the FLSA Plaintiffs will be apportioned as follows. After taking out the approved amounts mentioned above (e.g., for fees, costs, and incentive awards), the remaining Settlement Funds will be allocated 20% to resolving all claims by the FLSA Plaintiffs and 80% as class damages to resolve all claims of the Settlement Class Members. In both cases, the individual recoveries will be based on the number of workweeks the distributor was under contract with Flowers. Generally, the longer the distributor worked with Flowers, the more they will receive.

For example, if the settlement agreement, including the PAGA allocation, is approved as presented, then a distributor with an average number of workweeks that opted into the FLSA component of the case and did not opt out of the class action component of the case will receive (i.e. "net") around $60,000 as a Class Member and an additional approximately $56,000 to resolve FLSA overtime claims for a total of around $116,000.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### C.   Repurchase of Distribution Rights, the Changing of the Model in California, and Opportunity for Employment. (§ 7).

In addition to the monetary payments, the Parties have agreed to injunctive relief as part of the settlement pursuant to Fed. R. Civ. P. 23(b)(2), which will apply to all Current Distributors in California whether they have excluded or subsequently do exclude themselves from the monetary terms of the Settlement or not, as Flowers is implementing an employment model throughout California.

Specifically, the Parties have agreed that within 12 months of the Final Approval of the Settlement, Defendants will cease the "independent contractor" classification of its distributors by ending all Distributor Agreements with California Distributors. It will do this by repurchasing the distribution rights covered by such Distributor Agreements. All current and former Distributors will have the opportunity to work for a Flowers entity as employees provided they otherwise qualify for employment and are interested and complete all documents required for employment. Class Counsel and Defense counsel have agreed to cooperate to obtain as much participation as possible in the settlement, which includes working together on a communications plan to explain employment opportunities to distributors who are interested.

Flowers will be providing an attractive employment package competitive with similar positions at other employers in the respective market areas. Base pay for the available positions generally ranges from $60,000 to $75,000. Additionally, there will be a comprehensive benefits package, including health, vision, and dental insurance; a 401(k) retirement savings plan; life and accidental death and dismemberment insurance; flexible spending accounts; short term disability coverage; and an employee assistance program. Additional options include supplemental life insurance; long term disability coverage; additional accident, hospital, and critical illness insurance; and identity theft coverage. Employees are also eligible for workers' compensation and unemployment. The cost of such a

comprehensive benefits package, including employment taxes, is approximately forty percent (40%) of base compensation. Employees also receive the rights and protections of employment status under federal and state law.

There will be three available positions as described immediately below (although under the settlement, Flowers retains the sole discretion to modify, eliminate or add to these sales roles):

1. Route Sales Representative ("RSR") – RSR's are responsible for the ordering, sales, delivery, and merchandising of fresh baked products and developing relationships with customers' managers and other personnel. RSR's will be assigned to a company route to service retail customers, restaurants, and institutions with the goal of maximizing sales opportunities.

2. Route Delivery Driver – Route Delivery Drivers will be responsible for sorting, inventorying, loading, and delivering daily orders of bakery products to larger retail customers.

3. Sales Merchandiser – Merchandisers are responsible for the ordering, sales, and merchandising of fresh baked products and developing relationships with larger retail customers, management team, and other personnel. Merchandisers will service the larger retail customers that will have products delivered to them by Route Delivery Drivers.

Flowers' goal with this employment model is to continue to build sales throughout California and at the same time be in the position to readily adapt to meet the ever-changing needs of retail customers.

Upon winding up each Distributor Agreement, Flowers will buy back the distribution rights for the sum of 13 times the average weekly sales calculated over a 52-week period preceding the date of repurchase and will pay this sum net of (minus) the balance of any outstanding notes/loans the distributors owe on the territories with FLOFIN. This is the same formula Flowers used to sell the territories and repurchase territories previously from time to time. Based on this formula,

Defendants will pay approximately $50 million, net, to fund the repurchase program for Class Members (*i.e.*, $65 million gross to buy back the territories, minus about $15 million to resolve the loans outstanding when the term sheet was executed).[3] The same formula will be used for those distributors who have previously opted out or subsequently exclude themselves from this settlement when their Distributor Agreements are terminated. The employment opportunity is also available to such distributors.

In addition, distributors who accept positions as employees will be eligible for employment benefits consistent with the benefits Flowers provides its employees (health benefits, retirement benefits, etc.), and the rights and protections of employment status under state law. The Parties will develop an extended schedule for repurchase of the Distributor Agreements in the event a certain number of current Distributors indicate they are not interested in working as employees.

Class Counsel believes Distributors will generally be better off financially under the new arrangement (*e.g.*, if they accept the offered employment). For example, Class Counsel's expert calculated that the average California distributor typically netted $ 47,000-$ 48,000 on average in California over the entire class period. *See* Tomasevic Decl., ¶ 28 (also noting that some class members lost money).

**D.  Settlement Notice and Administration. (§§ 10-11).**

The Parties have agreed to a notice plan that will provide distributors with sufficient information to make an informed decision about how and whether to participate in the proposed monetary portion of the Settlement, object to that portion, or to exclude themselves from that portion. The Parties have preliminarily agreed to use Rust Consulting to complete the notice and administration of the settlement. Rust was appointed to and satisfactorily completed the notice and opt-out process

---

[3] In the event a distributor's territory value is less than an outstanding FLOFIN note, Flowers will not seek repayment of this deficit, and any rights Flowers may have to such deficit is extinguished.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

after the Court certified the case under Rule 23 in 2022.

After confirmation of the final distributor list, including verification with the National Change of Address Database, Rust will send written notice to each distributor depending on which of these categories they belong in:

- current distributor Rule 23 Class Members who are not a FLSA Plaintiff;

- *former* distributor Rule 23 Class Members who are not a FLSA Plaintiff;

- current Rule 23 Class Members who are also FLSA Plaintiffs;

- *former* Rule 23 Class Members who are also FLSA Plaintiffs;

- current FLSA Plaintiffs who are *not* also a Rule 23 Class Member.

All notices will explain any opt-out rights or opportunities to object to the settlement. All notices will also provide the reader with the amount they might expect to receive under the settlement. Defendants will send out the notices required by the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1715(b) (timely notices must be sent to the appropriate federal and state officials).

Rust will also send out and then collect and process a separate "Showing of Interest" form for the employment opportunity to, generally, gauge the interest in the employment opportunity. Rust, if the settlement is finally approved, will then administer the collection and payout of the funds, and provide regular reports to the Parties and as necessary, the Court. Tomasevic Decl., Ex. 1 at §§ 11.1-11.6.

## IV. <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROVAL</u>

In class action litigation, a court must approve the dismissal or compromise of the action. Fed. R. Civ. P. 23(e). This involves a two-step process in which the Court first determines whether a proposed class action settlement has the potential to be fair, adequate and reasonable, and second, after notice is sent to proposed Class Members, whether the settlement merits final approval. *See State of Cal. v. eBay,*

*Inc.,* No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014). A full fairness analysis is unnecessary at the preliminary approval stage. *Singer v. Becton Dickinson Co.*, No. 08-CV-821-IEG (BLM), 2009 WL 4809646, at *7 (S.D. Cal. Dec. 9, 2009). "Rather, at the preliminary approval stage, the Court need only review the parties' proposed settlement to determine whether it is with the 'permissible range of possible judicial approval' and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate." *Id.* (citations omitted).

The Ninth Circuit has identified eight non-exclusive factors that may be considered during both the preliminary and final approval processes. Each factor does not necessarily apply to every class action settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Approval of a class action settlement rests in the sound discretion of the court, which should apply its discretion considering the judicial policy favoring settlement of complex class action litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

As discussed below, application of the relevant factors supports preliminary approval.

**A.   The Settlement is the Product of Extensive, Informed, Non-Collusive Negotiation.**

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted). "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Pederson v. Airport Terminal Servs.*, No. ED CV 15-02400-VAP (SPx),

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

2018 WL 11354549, at *6 (C.D. Cal. Aug. 3, 2018) (quoting *Satchell v. Fed. Express Corp.*, Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

In this case, the Settlement Agreement is the result of arm's-length negotiations involving experienced employment counsel who are well-versed in the applicable (evolving) substantive law, class action litigation procedures, and the legal and factual issues of this particular case. Tomasevic Decl., ¶ 20, 30. The Parties attended three full days of mediation with a retired Judge and conducted follow-up negotiations over the course of several months. The Settlement occurred after more than five years of hard-fought litigation, on the doorstep of trial, and only after extensive written and documentary discovery, the exchange of expert reports, 13 depositions (including of every named Plaintiff and several of Defendants' corporate representatives), and several contested motions including for class certification and summary adjudication. *Id.* "[S]uch negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

**B.    The Settlement Easily Sits Within the Range of Possible Approval.**

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (internal quotations and citations omitted). Courts should recognize that "the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted). Here, the Settlement is fair, adequate, and well within the range of possible approval. Indeed, it is one of the largest per-plaintiff recoveries in a misclassification class action in

1  the United States.

2  **C.    The Strength of Plaintiffs' Case and the Risk of Further Litigation**
3        **Support Preliminary Approval.**

4        Plaintiffs' primary contention is that Flowers classified its California
5  distributors as independent contractors while reserving and exercising levels of
6  control consistent with an employment rather than independent contractor
7  relationship. Plaintiffs further allege that, because of this misclassification, Plaintiffs
8  and their fellow distributors are owed compensation for various benefits of
9  employment that Flowers neglected to pay them.

10       Although Plaintiffs believe that the information exchanged or uncovered over
11 the years supports their allegations, a finder of fact could conclude that distributors
12 were properly classified as independent contractors. This court effectively confirmed
13 as much in denying Plaintiffs' class wide motion for summary judgment on Prong B.
14 Additionally, courts have recently found franchisors to have satisfied Prong B of the
15 ABC test, including the Ninth Circuit. *Haitayan v. 7-Eleven, Inc*., Nos. 21-56144,
16 21-56145, 2022 WL 17547805 (9th Cir. Dec. 9, 2022) (applying Prong B and
17 finding that store owner/operator franchisees "are in a different course of business"
18 and "engaged in a distinct business" from franchisor). While Plaintiffs believe they
19 can surmount this evidence, whatever the jury's decision, appellate issues would
20 likely remain and the attendant risks for all Parties.

21       Without conceding that any adverse conclusions would be correct or
22 appropriate, Plaintiffs recognize the risk of possible negative outcomes at a
23 classwide trial, or upon appeal. Flowers still has multiple opportunities to prevail
24 either at trial, or on appeal, including by decertifying the class or successfully
25 challenging class certification at the Ninth Circuit. This Settlement avoids all this
26 uncertainty, while ensuring that distributors receive substantial consideration now
27 rather than years from now, if ever.

28

**D.    The Settlement Consideration and Allocation Are Fair.**

The Settlement is fair and reasonable considering the risks of further litigation. Class Members are recovering, before deduction for attorneys' fees and costs, an average of approximately 27% percent of their maximum potential damages that they would have sought at trial and over 50% of what Defendants' expert would have testified they were owed at trial. Tomasevic Decl., ¶ 22, fn. 2.[4] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a recovery of one sixth (16.67%) of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (preliminarily approving a settlement representing 15% of the potential recovery).

This is a significant recovery. Assuming 485 Distributors choose to receive awards from the $55,000,000 common fund, then that is an average Class Member gross award (before deduction for fees and expenses) of about $113,000 per worker. *Id.* at ¶ 22. This compares very favorably to other settlements between Flowers entities and distributors in other misclassification cases that have been approved by the courts, as well settled misclassification cases more generally.

Flowers class action settlements in misclassification cases have ranged from approximately $13,500 to approximately $94,000 per class member (before deduction for fees and expenses). As noted above, the Class Member average allocation in this case is $113,000.

Moreover, this recovery also compares very favorably to other large, high value court-approved driver or delivery service company settlements, such as those shown in the table of cases below:

---

[4] Exposure calculation is based on the Parties' expert reports.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

| Case Name | Gross Settlement Amount | Number of Class Members | Value Per Class Member |
|---|---|---|---|
| *Alfred v. Pepperidge Farm*, No. LA-CV-14-07084-Skx (C.D. Cal.) | $22,760,001.00 | 414 | $54,975.85 |
| *Fleming v. Matco Tools Corp., et al.*, No. 3:19-cv-00463-WHO (N.D. Cal.) | $15,846,423 | 272 | $58,258.91 |
| *Alvarez, et al. v. XPO Logistics Cartage, LLC, et al.*, No. 2:18-cv-03736-RGK-E (N.D. Cal.) | $20,000,000 | 526 | $38,022.81 |
| *Noll v. Flowers Foods, Inc., Lepage Bakeries Park Street, LLC, and CK Sales Co.*, No. 1:15-cv-00493-LEW (D. Me.) | $9,000,000 | 119 | $75,630.25 |
| *Alexander v. FedEx Ground Package Systems, Inc.*, No. 05-cv-00038-EMC (N.D. Cal.) | $226,500,000 | 2016 | $112,351.19 |
| *Carrow, et al. v. FedEx Ground Package Systems, Inc.*, No. 1:16-cv-03026 (D. N.J.) | $2,400,000 | 192 | $12,500.00 |
| *James, et al. v. Uber Technologies Inc.*, Case No. 3:19-CV-06462-EMC (N.D. Cal.) | $8,400,000 | 1,300 | $6,461.54 |

Moreover, in only *one* of the above-mentioned cases did the plaintiffs also successfully get the company to change their worker classification and obtain the full scope of injunctive relief they prayed for in their complaints. The one case with the worker re-classification was *Noll v. Flowers Foods, Inc., Lepage Bakeries Park Street, LLC, and CK Sales Co.*, No. 1:15-cv-00493-LEW. The *Noll* court approved

implementation of an employment model in Maine in conjunction with the buy-back of distribution rights. In his approval order, Judge Walker specifically recognized the value associated with the Flowers employment model. Under the circumstances, this settlement is fair and adequate.

Finally, the plan of allocation of the Settlement to Class Members is also fair and reasonable. The plan is objective. The Net Settlement Amount will be allocated among Class Members based on several factors, including: (1) the amount of time spent as a distributor during the applicable liability period; (2) whether they are a current or former Distributor (which dictates whether they receive additional funds as part of the injunctive relief component or buy-back); (3) whether they are an aggrieved employee and entitled to a portion of the PAGA allocation of the Settlement; and (4) whether they opted into the FLSA component of this case. Tomasevic Decl., ¶ 23. *See*, *e.g.*, *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) (distribution based on the number of weeks worked is a "fair method" of distribution).

The extra amounts for the FLSA opt-ins are fair and appropriate because, in Plaintiffs' counsels' experience, FLSA claims can add significant, additional value and, thus, further leverage for settlement. This is true for at least three reasons.  First, FLSA claims add the potential for liquidated damages for overtime violations. *Compare* 29 U.S.C. § 216(b) (FLSA liquidated damages doubles overtime claims) *with* Lab. Code § 510 (California overtime statute provides no such additional damages). Next, FLSA claims multiply exposure, or at least set a higher "floor" for group/collective exposure, because they do not require satisfaction of Rule 23's certification standards.  The requirements for maintaining an FLSA collective action are less demanding than those of a Rule 23 class action and, thus, the FLSA claimants are somewhat immune from any appeal of the Rule 23 certification decision.  Moreover, the fact that the workers affirmatively opted into the FLSA action and affirmatively retained counsel means that *even if* their FLSA collective

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

group was decertified under even the permissive standards of the FLSA, many, if not all of them, would likely continue to proceed individually to secure the relief sought.  In other words, FLSA opt ins signal to the Defendant that they are not truly "absent" class members whose claims may simply fall away depending on a court's certification rulings.  This relates to the third observation:  that FLSA opt-ins tend to participate more actively in the litigation, are more attentive and helpful in, e.g., discovery, and, in fact, are required by the Court to do more work.  Indeed, Judge Burkhardt here required most FLSA opt-ins to answer written interrogatories and produce documents.  Dkt. No. 181. Many were then going to be deposed before the case entered a potential settlement posture. For at least these reasons, the additional amounts to the FLSA group (still dependent on the number of work weeks) are appropriate.

In short, this proposed settlement is fair and reasonable and worthy of preliminary approval.

**E.    Plaintiffs Contend The Attorneys' Fees Request Is Reasonable.[5]**

Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Here, both the California Labor Code (including PAGA) and the FLSA specifically allow for payment of fees to the successful party. *See* Cal. Lab. Code § 218.5 (the Court "shall award reasonable attorney's fees and costs to the prevailing party" in any action brought for nonpayment of wages and benefits); 29 U.S.C. § 16(b). Moreover, the Settlement provides that, prior to the final approval hearing, Class Counsel may petition the Court for an award of fees (and an award of litigation expenses). Tomasevic Decl., Ex. 1  at ¶¶ 9.1.4, 14.1.

Class Counsel contends this provision is fair and reasonable, given the significant time and expense that Class Counsel have devoted to this case over the

---

[5] Flowers does not formally join in this request for fees but does not oppose at this time and understands that the Court's decision will only come after further briefing, including Plaintiffs' formal motion for fees and costs.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

last five years and the result that they have achieved for the Class. Tomasevic Decl., ¶¶ 29-30. Here, Class Counsel's fees will be requested out of the $55 million common fund only. Counsel's request for 33% of that common fund portion equates to less than 17.5% of the $105 million total Flowers will end up actually paying to distributors if the settlement is approved as written. This is well below the Ninth Circuit's "benchmark" 25% fee. *See Decker v. AllStates Consulting Servs., LLC*, No. 2:18-cv-03216-KJM-DB, 2020 WL 7769842, at \*4 (E.D. Cal. Dec. 30, 2020) ("For the percentage-of-the-fund approach, the Ninth Circuit has set a 25 percent benchmark as presumptively reasonable.").[6]

The request would be reasonable even if counsel only achieved the common fund component only (the $55 million only). A 33% award of just that common fund would still be warranted in light of the results achieved, the effort expended by counsel over the better part of six years, counsels' skill and experience, the complexity of the issues, and the risks of litigation. *See Thompson v. NSC Techs., LLC*, No. 3:20-CV-00371-JO-MSB, 2023 WL 2756980 (S.D. Cal. Mar. 30, 2023) (Ohta, J.); and *see, e.g.*, *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding that while 25% is the "benchmark," the lower court appropriately used its discretion to award 33% based on a case's complexity and risks); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value. . . ."). Counsel assumed substantial risks in proceeding on a contingency fee basis in a highly complex class action case. And they obtained excellent relief for the distributors, possibly life altering for some even before accounting for the buy backs and the employment opportunity. Furthermore, attorneys' fees of one-third of any *total* recovery have been readily approved in

---

[6] And, of course the true value of the settlement is even higher when we account for the years of increased earnings and benefits distributors will realize as Flowers employees going forward. *See* Tomasevic Decl., ¶¶ 28-29.

similar cases. *Thompson,* 2023 WL 2756980, *6; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enters. Sec. Litig.*, 47 F.3d at 379; *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 506 (2016). Counsels' request for one third of only the common fund portion of the settlement is worthy of preliminary approval, subject to further briefing and support at the final approval stage.

## V.    CONDITIONAL CLASS CERTIFICATION OF A RELATED 23(B)(2) INJUNCTIVE RELIEF CLASS IS APPROPRIATE

While the Court has already certified a Rule 23(b)(3) class to enable the recovery of damages, Dkt. No. 312, the Parties here respectfully request that the Court now also certify a related Rule 23(b)(2) injunctive relief class for settlement purposes only as related to the ending of all current Distributor Agreements in California, the buy back of the territories and accompanying distribution rights, and implementation of an employment model with employment opportunities for all current (and former) California distributors. Plaintiffs respectfully submit that explicit certification of an injunctive relief class here for settlement purposes is warranted for all the same reasons that 23(b)(3) certification was found to be appropriate.[7] In fact, certification of a 23(b)(2) class here for settlement purposes should be an even easier decision than what the Court confronted for 23(b)(3) certification in 2022 because (a) there is no "predominance" requirement for certification under 23(b)(2), nor is there, (b), a manageability requirement. *See* Fed. R. Civ. P. 23(b)(2) (certification warranted merely upon a showing that the defendant has acted or refused to act on grounds that apply generally to the class). As such, the Court should certify the following non-opt-out class under Rule

---

[7] In the Settlement Agreement, the Parties stipulate that, for settlement purposes only, this settlement satisfies the requirements of Rule 23(b)(2) and Rule 23(b)(3) and therefore approval of the Settlement Agreement is appropriate. *See* Tomasevic Decl., Ex. 1 at § 4.3.

23(b)(2) for settlement purposes:

> All California distributors of Flowers Baking Company of Henderson, LLC or of Flowers Baking Company of Modesto, LLC who are operating under a Distributor Agreement, either individually or on behalf of his or her corporation or business entity as of the date of preliminary approval.

An injunctive relief class is particularly appropriate for this case, too, given that the proper classification of workers carries "considerable significance for workers, businesses, and the public generally." *Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 912 (2018); and *see, e.g., People v. Uber Techs., Inc.,* 56 Cal. App. 5th 266, 312 (2020), *as modified on denial of reh'g* (Nov. 20, 2020) (upholding preliminary injunction by the lower court preventing major ride share companies like Uber and Lyft from classifying drivers as independent contractors because the "various forms of irreparable harm shown by the People [in preventing ongoing misclassification] more strongly serves the public interest. . . ."). Further still, in codifying the ABC test, the Legislature expressly made injunctive relief to certain government enforcers a separate and cumulative remedy to combat misclassification in this State. Cal. Lab. Code § 2786. Finally, this injunctive relief is consistent with the injunctive relief approved by the *Noll* court when Flowers implemented an employment model in Maine as part of a comprehensive settlement there.

## VI.   THE PROPOSED CLASS NOTICE PROGRAM MEETS THE REQUIREMENTS OF RULE 23(e)

Class Members will have a chance to voice their opinions about this settlement before it is final. Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1). The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) enumerates mandatory components of any initial class notice for a Rule 23(b)(3) class:

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1.      The nature of the action;

2.      The definition of the class certified;

3.      The class claims, issues or defenses;

4.      That a Class Member may enter an appearance through an attorney if the member so desires;

5.      That the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

6.      That a class judgment will include all members who do not request exclusion.

Due process also requires a mailed settlement notice to contain a description of Settlement Class Members' rights in the litigation and notice that Settlement Class Members have an opportunity to be heard and to participate in the litigation, whether in-person or through counsel, and an opportunity to present objections to the settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Parties' proposed Settlement Notices meet each of the requirements in Rule 23(c)(2) as well as these additional due process requirements.

The Parties have drafted proposed Settlement Notices and a notice plan that satisfy the requirements of Rule 23(e) and due process. The proposed Settlement Notices, submitted as Exhibits 1A, 1B, 2A, and 2B to the Settlement Agreement, explain the nature of the action and the terms of the Settlement including: (1) the total settlement amount; (2) the attorney's fees to be requested; (3) how Settlement Class Members' settlement payments will be calculated; (4) the estimated amount of each Settlement Class Members' settlement share and the procedure for challenging the calculation; (4) the claims that will be released; and (5) how the Settlement Class Member may collect his portion of the Settlement, exclude himself from the common fund portion of the Settlement, or object to the Settlement.

JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Prior to mailing the Settlement Notices, the Settlement Administrator will update Settlement Class Members' addresses supplied by Defendants with both the National Change of Address (NCOA) database and by skip-tracing each address. Plaintiffs' counsel also have new, updated contact information for several Class Members that they will provide to the administrator. The Settlement Administrator will make further appropriate efforts to locate more current address information for any returned Class Notice and will re-mail those for which an updated address has been found. This is the best notice practicable. The Court should find that the notice plan more than satisfies the requirements of Rule 23(e) and should therefore approve it.

## VII.   <u>THE SETTLEMENT IS ALSO REASONABLE UNDER THE FLSA</u>

In the FLSA context, "for an employee's waiver of his rights to unpaid wages and liquidated damages to be binding, either the U.S. Secretary of Labor must supervise the settlement or a court must approve it. *Prescott v. Prudential Ins. Co. of Am.*, No. 2:09–cv–00322–DBH, 2011 WL 6662288, at *1 (D. Me. Dec. 20, 2011). To approve a FLSA settlement, the Court must determine that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 2:14-cv-303-NT, 2016 WL 3072247, at *3 (D. Me. May 31, 2016). In addition, at least one named plaintiff must be willing to sign the agreement. *See Michaud v. Monroe Muffler Brake, Inc.*, No. 2:12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me. Mar. 17, 2017). "The factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of collective action settlement of FLSA claims." *Id*. Here, the Court should approve the FLSA settlement for all the same reasons discussed above. Furthermore, the FLSA settlement only covers the FLSA Plaintiffs, all of whom have affirmatively joined the action.

## VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING

Pursuant to Rule 23(e), following notice, courts conduct a fairness hearing where all interested parties have an opportunity to be heard. Following this hearing, the Court will determine the fairness and adequacy of the Settlement. The Parties request the Court to set a fairness hearing approximately 30 days after the close of the notice period during which the Court can consider, among other things, whether to grant final approval of the terms of the Settlement Agreement, whether to grant Class Counsel's request for attorney's fees and costs and for service payments to Plaintiffs, as well as any objections to the settlement, Class Counsel's fee and cost request, or the service payments. The Court should also set deadlines for Settlement Class Members to exclude themselves from the optional portions of the settlement and for objectors to file any objections with the Court in advance of the fairness hearing.

Class Counsel will file their fee petition no less than 10 days before the close of the notice period.

## IX. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement; (2) approve Rust Consulting as the Settlement Administrator; (3) approve the form, content, and method of distribution of all Notices to be issued; (4) set a briefing schedule for: the motion for final approval, Class Counsel's motion for attorneys' fees and costs, and Named Plaintiffs' motion for Service Awards; and (5) schedule a fairness hearing to consider final approval of the proposed settlement.

Respectfully submitted,

Dated: October 16, 2023

**NICHOLAS & TOMASEVIC, LLP**

By:   */s/ Alex Tomasevic*

Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)

225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492 | Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: smarkley@nicholaslaw.org
Email: jbelcastro@nicholaslaw.org

Attorneys for Plaintiffs

Dated: October 16, 2023                **OGLETREE DEAKINS**

                            By:    */s/ Jared L. Palmer*
                                   Jared L. Palmer, CA Bar No. 287974
                                   jared.palmer@ogletree.com
                                   One Embarcadero Center, Suite 900
                                   San Francisco, CA  94105
                                   Telephone:  415-369-3553
                                   Facsimile:   415-442-4870

                                   Alexander M. Chemers, CA Bar No. 263726
                                   alexander.chemers@ogletree.com
                                   400 South Hope Street, Suite 1200
                                   Los Angeles, CA  90071
                                   Telephone:  213-239-9800
                                   Facsimile:   213-239-9045

                                   Kevin Hishta, *Pro Hac Vice*
                                   kevin.hishta@ogletree.com
                                   191 Peachtree Street, N.E., Suite 4800
                                   Atlanta, GA 30303
                                   Telephone:  404-881-1300
                                   Facsimile:   404-870-1732

                                   Attorneys for Defendants FLOWERS
                                   FOODS, INC., FLOWERS BAKERIES,
                                   LLC, and FLOWERS FINANCE, LLC

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Jared Palmer, counsel for Defendants, and that I have obtained Mr. Palmer's authorization to affix his electronic signature to this document.

Dated: October 16, 2023                **NICHOLAS & TOMASEVIC, LLP**

                            By:    */s/ Alex Tomasevic*
                                   Alex Tomasevic (SBN 245598)

                                   Attorneys for Plaintiffs