1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DANIEL LUDLOW, ET AL.,

  Plaintiffs,

v.

FLOWERS FOODS, INC., FLOWERS BAKERIES, LLC, and FLOWERS FINANCE, LLC,

  Defendants.

and

JOSE MACIEL, an individual, and MACIEL DISTRIBUTION, INC., a California corporation, on behalf of themselves and others similarly situated,

  Plaintiffs,

v.

FLOWERS FOODS, INC., a Georgia corporation; FLOWERS BAKERIES, LLC, a Georgia limited liability company, FLOWERS FINANCE, LLC, a Delaware limited liability company,

  Defendants.

Case No. 3:18-cv-01190-JO-JLB

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION, FLSA, AND PAGA SETTLEMENT

**Date**: March 1, 2024
**Time**:  9:00 a.m.
**Courtroom**:  4C

**Judge:** Hon. Jinsook Ohta
**Magistrate**: Hon. Jill L. Burkhardt

**Complaint Filed**: June 6, 2018
**Final Pretrial Conf.**: Not Set

Case No. 3:20-cv-02059-JO-JLB

1    Daniel Ludlow, William Lancaster, and Jose Maciel (collectively referred to
2    as "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and any corporation
3    or business entity through which they operated, and on behalf of each of the Class
4    Members, and Flowers Foods, Inc. ("Flowers Foods"), Flowers Bakeries, LLC, and
5    Flowers Finance, LLC (collectively, "Defendants"), along with Flowers Baking Co.
6    of Henderson, LLC and Flowers Baking Co. of Modesto, LLC, have entered into a
7    Class Action Settlement Agreement and Release ("Settlement Agreement")[1] after
8    extensive arms-length settlement negotiations assisted by an experienced mediator.

9    Previously, this Court preliminarily approved the Settlement Agreement as
10   fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). ECF
11   No. 433. The Court also consolidated the *Maciel v. Flowers Foods, Inc., et al.*
12   Private Attorney General's Act ("PAGA") claim into this Action. The Parties now
13   request final approval of the Settlement Agreement under Rule 23(e), approval of the
14   settlement of the FLSA claims, and approval of the settlement of the PAGA claim.
15   Relatedly, Plaintiffs also seek approval of their request for attorneys' fees, costs, and
16   service awards to be paid out of the settlement. *See* ECF No. 439 (Plaintiffs' Motion for
17   Fees, Costs, and Service Awards set for hearing on the same day as the Joint Motion for
18   Final Approval of Class, FLSA, and PAGA Settlement ("Joint Motion for Final
19   Approval")). Having reviewed and considered the Parties' Joint Motion for Preliminary
20   Approval and accompanying materials, this Court's Order granting Preliminary Approval,
21   the Parties' Joint Motion for Final Approval and accompanying materials, the Settlement
22   Agreement itself, the Plaintiffs' Motion for Fees, Costs, and Service Awards and its
23   accompanying materials, and the presentations at the final fairness hearing held on March
24   1, 2024, the Court finds that the Settlement Agreement is fair, reasonable, and adequate in
25   all respects, and grants the pending requests as further discussed below.

26

27

---

28   [1] All capitalized terms have the meanings set forth and defined in the Parties'
Settlement Agreement at ECF No. 431-2.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

## A.   Background

### 1. The Parties.

Plaintiffs allege that Flowers[2] contracts with and sells bakery products to large retail and fast-food customers via its national direct-store-delivery ("DSD") business segment and then engages "independent contractor" distributors like the Named Plaintiffs and the Class Members to assist with the "delivery" or distribution part of the DSD business. *See* ECF No. 1 (the original complaint).

Named Plaintiffs, the FLSA Plaintiffs, and all Class Members are a mix of current and former California distributors that each have or had a Distributor Agreement ("DA") with either Flowers Baking Co. of Henderson, LLC, Flowers Baking Co. of Modesto, LLC, or Flowers Baking Co. of California, LLC. Distributor Class Members purchased territories and the accompanying distribution rights as part of entering their DAs with Flowers. Flowers has been operating its independent distributor franchise model in California since at least 2013.

### 2. The Claims, Discovery, and Other Procedural History.

Plaintiff Daniel Ludlow originally filed this action in June of 2018 alleging that he and his fellow California distributors were misclassified as "independent contractors" and that, in turn, Defendants failed to pay all required wages due under both the California Labor Code and the federal Fair Labor Standards Act ("FLSA"). ECF No. 1. Mr. Ludlow also brought claims for violations of California's Unfair Competition Law, for fraud, for unlawful deductions from wages, failure to indemnify for necessary expenditures, and failure to provide proper wage statements. *Id.* On February 21, 2019, co-Plaintiff William Lancaster joined Mr. Ludlow as an additional named plaintiff. ECF No. 56.

---

[2] "Flowers" refers collectively here to the named Defendants as well as their wholly owned subsidiaries who will be obtaining releases via this settlement, including the separately formed regional bakeries that also help carry out the business and that, for example, are counterparties to the Distributor Agreements. *See* Settlement Agreement at § 3.27.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

On June 10, 2020, distributor Jose Maciel filed his own separate class and FLSA collective action against Defendants in the Northern District of California asserting similar theories and claims. Eventually Mr. Maciel's case was transferred to this District and consolidated with the *Ludlow* case. *See* ECF No. 195 (Consolidation Order). Mr. Maciel's operative complaint today also includes a claim for Civil Penalties under the PAGA. *See* ECF No. 429-4.

On July 5, 2022, the Court granted Plaintiffs' contested motion for class certification. *See* ECF No. 312. The Parties continued to litigate thereafter including by completing significant additional fact discovery and expert discovery. Plaintiffs then filed a motion for partial summary judgment asserting that Defendants cannot meet their burden to satisfy "Prong B" of California's "ABC Test" for worker misclassification. *See* ECF No. 359. The Court denied Plaintiffs' motion on July 19, 2023. ECF No. 410. The Parties were then ordered to prepare for a first phase of trial to begin in the fall of 2023.

The Parties attended two back-to-back days of mediation, in-person, with The Honorable Herbert B. Hoffman (Ret.) ("Judge Hoffman"), on August 15 and August 16, 2023, respectively, and then a third session on August 29, 2023. At the end of the second day, the case did not settle, but Judge Hoffman did make a "mediator's proposal." Throughout the three days of mediation with Judge Hoffman, the Parties engaged in extensive negotiations involving substantial offers and counteroffers, with the Parties ultimately reaching a settlement on August 29, 2023, and agreeing to a binding written term sheet encompassing all three cases described above. The Parties then spent weeks negotiating the final long form Settlement Agreement discussed above and described more fully below.

**3. The Proposed Settlement.**

The Settlement Agreement resolves the claims of the Named Plaintiffs, plus any "Class Member" defined as "any individual who, either individually and/or on behalf of a corporation or business entity, operated under a Distributor Agreement

1   with Flowers/Henderson or Flowers/Modesto during the Covered Period in

2   California" who has not opted out or excluded himself or herself from the

3   Settlement.[3] The Settlement Agreement also resolves the claims of the "FLSA

4   Plaintiffs," meaning those individuals who filed FLSA opt-in consent forms in the

5   *Ludlow* or *Maciel* Actions and have not withdrawn their consents or otherwise

6   excluded themselves from the Settlement.[4] Finally, and as more particularly stated

7   in the Parties' PAGA Settlement and Release Agreement (Decl. of Alex Tomasevic

8   in Support of Joint Motion for Final Approval of Class Action, FLSA, and PAGA

9   Settlement, Ex. 2, ECF No. 451-4) the Parties have resolved the PAGA claim

10  originally brought by Mr. Maciel. At present, it appears that there are 486 total

11  Class Members, 128 FLSA Plaintiffs, and 378 PAGA Settlement Members.

12      The Settlement Agreement is at ECF no. 431-2. In summary, the Settlement

13  has three main components as follows:

14      1.   An initial fund or payment of $55 million in non-reversionary cash up

15  front to all participating Class Members (*i.e.*, those who did not opt out). *See* ECF

16  No. 431-2 at § 3.30. This fund will be divided and distributed equitably among

17  Settlement Class Members according to the number of workweeks they were under

18  contract during the class period. *Id.* at § 13.3. Additionally, those Settlement Class

19  _____

20  [3] The "Covered Period" means the period from June 6, 2014 through the date of
    Preliminary Approval. Previously, this Court certified the following class under
21  Fed. R. Civ. Proc. Rule 23:

22      All persons who worked in California pursuant to a "Distributor
        Agreement" or similar arrangement with Flowers Food, Inc., or one of
23      its subsidiaries, that were classified as "independent contractors"
        during the period commencing four years prior to the commencement
24      of this action through judgment.

25
26  ECF No. 312.

27  [4] The FLSA Plaintiffs include 128 current and former distributors who contracted
    with either Flowers/Henderson or Flowers/Modesto. Two such distributors, April
28  Davis-Ng and Roberto Jimenez, were inadvertently not listed in the Settlement
    Agreement, but are included among the FLSA Plaintiffs.

Members who affirmatively opted into the case as FLSA Plaintiffs will receive higher amounts according to a negotiated formula that accounts for, *e.g.*, the extra work those Settlement Class Members had to do in the case as well as the additional value of those claims and exposure to Flowers those claims naturally created. *Id.* Participating Settlement Class Members will receive an estimated average gross payment of over $112,000 out of this initial fund.

2.     A territory buyback for all current Distributors resulting in Flowers paying Class Members (including both Settlement Class Members and those current Distributors who previously opted out of the Settlement but are covered by the Injunctive Relief), collectively, another approximately $64.2 million net, after also resolving (and deducting) the amounts owed by Class Members on the notes/loans they have on those territories.[5] Individual buyback dollars will be paid according to a formula that is approximately 13 times the Distributor's recent 52-week sales average preceding the date of repurchase. ECF No. 431-2 at § 7.4. Flowers will be completely discontinuing its independent distributor program in California, and as such, this injunctive relief component and the relevant portion of the class (*i.e.*, *current* Distributors) were certified under Rule 23(b)(2) as a non-opt-out injunctive relief class.

3.     Flowers will discontinue its independent distributor program in California. Flowers will offer route employment positions with compensation estimated between approximately $78,000 to $99,000 per year, plus benefits (health, vision, dental, retirement, insurance, etc.).

---

[5] As explained by the Parties, the total cost of the buyback component will fluctuate somewhat because the buyback formula includes a multiplier of sales, and the relevant sales can go up or down over time. Plus, the notes owed by the Distributors continue to be paid and those balances will continue to go down. As of the final fairness hearing, the Parties' calculations revealed that the buyback component would lead to an approximate net cash payout to distributors of $64.2 million, after resolving their territory notes/loans with Flowers subsidiary FLOFIN.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION, FLSA, AND PAGA SETTLEMENT

1    On November 29, 2023, this Court issued its order preliminarily approving

2 the settlement.[6] The Parties now seek final approval of their Settlement Agreement,

3 including with respect to all FLSA and PAGA claims alleged.

4 **B.    Jurisdiction and Preliminary Findings**

5    1.    <u>Jurisdiction</u>. The Court has jurisdiction over the Parties, has subject-

6 matter jurisdiction over the federal law claims, and has supplemental jurisdiction

7 over the state-law claims.

8    2.    <u>Preliminary Findings and Notice to the Class</u>. The Court conducted a

9 preliminary assessment of the fairness, reasonableness, and adequacy of the

10 Settlement Agreement, and found that the settlement falls within the range of

11 reasonableness meriting possible final approval. The Court then approved and

12 ordered the dissemination of the Class Settlement Notices to the Class Members.

13 The Court also approved the appointment of Rust Consulting as Settlement

14 Administrator.

15    3.    The Court has reviewed, along with all other materials, the Declaration

16 of Jennifer Mills for Rust Consulting, Inc. and finds that the Class Settlement

17 Notices were disseminated to Class Members in compliance with the Court's

18 Preliminary Approval Order and that they provided the best notice to Class

19 Members practicable under the circumstances, fully satisfied due process, met the

20 requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with

21 all other applicable laws.

22

23 ――――――――――――――――

[6] Procedurally, in addition to also consolidating the *Maciel* PAGA claim into this
24 action for settlement purposes only, the Court also conditionally certified for
settlement purposes only a Rule 23(b)(2) no-opt-out class for current Distributors as
25 follows: "All California distributors of Flowers Baking Company of Henderson,
LLC or of Flowers Baking Company of Modesto, LLC who are operating under a
26 Distributor Agreement, either individually or on behalf of his or her corporation or
business entity as of the date of preliminary approval." That conditional
27 certification, made at preliminary approval, is hereby confirmed and finally
28 approved.

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

## C.     Responses to the Settlement by Class Members

1.     No Class Members responded to the Class Settlement Notices by requesting exclusion or withdrawing from the Settlement. The Court received seven letter objections from Class Members. The Court has carefully considered each of those objections along with Plaintiffs' written responses to each. The Court also held a hearing on March 1, 2024. The Objectors were given an opportunity to present and speak at the hearing in support of their objections. Several objectors availed themselves of this opportunity and spoke at the final fairness hearing.

2.     The Court finds that the objections, which often lacked any evidentiary support, do not preclude finding that the Settlement Agreement is fair, reasonable, adequate and worthy of final approval as originally requested. The Court hereby overrules all objections.

3.     More specifically, the objectors typically fail to understand the settlement and/or they want relief that they are not legally entitled. The objectors take issue with several common issues each discussed below.

a.     <u>The first and main objection</u> relates to the injunctive relief provided by the Settlement Agreement where Flowers will end its independent contractor model and implement an employment model in California. *See* Montanez Objections (ECF No. 440); Valdez Objections (ECF No. 441); Gonzalez Objections (ECF No. 443); Foraker Objections (ECF No. 444); Young Objections (ECF No. 445); Morrison Objections (ECF No. 446). While these individuals understandably wish to continue working hard to make a living for their families, this settlement will not preclude them from doing so. Further, the same Distributor Agreement these objectors wish to preserve explicitly grants Flowers the right to change models and terminate its independent contractor relationships. The objectors are thus asking for this Court to create a right or guarantee that they never had to begin with. Additionally, while these objectors did not provide many details, calculations, or any evidence to support their objections, it appears they do not appreciate that

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

the change to a W-2 employment model will provide valuable benefits and legal protections and will eliminate the financial risks inherent in the independent contractor model. Further still, Plaintiffs presented substantial evidence showing that some Cass Members who accept post-settlement employment positions with Flowers will end up making more than before, on top of receiving access to employment benefits like health and dental insurance, employment benefits, and the like. Indeed, at least 146 Class Members affirmatively responded to the Settlement Agreement by stating that they were interested in or would accept the Flowers offers of employment.

       b.    <u>Secondly</u>, a few objectors apparently take issue with their settlement share and how the settlement monies are allocated. *See* Gonzalez Objections (ECF No. 443); Young Objections (ECF No. 445). However, the only complaints against the settlement amounts are based on a misunderstanding of how the Settlement works – there is an initial cash component (aka payment of damages) *and* a territory buyback, but, for example, the Gonzales Objectors believe all they will receive is the former, which for the Gonzalez Objectors amounts to $93,000 each according to the Parties. Relatedly, some objectors wish to divide the damages fund by some formula other than weeks worked under contract for Flowers. But the Court finds that the workweek apportionment of the settlement method here is fair and widely accepted. *See, e.g.*, *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) (wage per hour distribution based on the number of weeks worked is a "fair method" of distribution). This method directly ties settlement allocations to the underlying Labor Code claims like overtime hours worked. Distributors who worked more will receive a proportionally larger share of the common fund. The Court finds that this is a fair formula.

       c.    <u>Third</u>, one objector takes issue with an attorney fee request that he thinks amounts to 40%. *See* Young Objections (ECF No. 445). But Plaintiffs are

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

not making such a request. The requested attorneys' fees – discussed further below – represent less than approximately 17% of the total class recovery or 33% of the $55 million damages payment. In short, the objections do not defeat the overall reasonableness and fairness of the compromises reached and they are each overruled in full.

        d.   <u>Finally</u>, some objectors expressed concern with the amount of time it might take to consummate the buyback of their territories. Some objectors wish to be bought back more quickly than the maximum twelve-month period agreed to by the Parties in the Settlement Agreement. The Court finds that, under the circumstances, including the sheer size of the endeavor to change a long-standing business model in the California market relating to hundreds of distribution territories, that it was reasonable for the Parties to negotiate a phased 12-month buyback period as discussed in the Settlement Agreement. The Court recognizes that Flowers needs to implement the employment model in an orderly fashion and the twelve months' time frame in the Settlement Agreement is reasonable. Finally, Current Class Members who are interested in having Flowers consider a buyback prior to the planned repurchase date should contact Class Counsel who will convey the request to Flowers' counsel. As it did during the preliminary approval period, Flowers, in turn, will consider the request consistent with its ability to conduct an orderly transition and the availability of a qualified candidate in the applicable geographical area to assume operation of the territory. After reviewing the totality of the circumstances, the Court finds that the Parties' plan for consummating the buyback portion of the Settlement Agreement is fair, reasonable, and adequate.

**D.**    **Application of the Rule 23(e) Factors**

    1.   FRCP 23(e) provides that, in assessing the overall fairness and adequacy of a proposed settlement, a court should consider at least whether: (1) "the class representatives and class counsel have adequately represented the class";

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

(2) "the proposal was negotiated at arm's length"; (3) "the relief provided for the class is adequate," taking into consideration the risks associated with continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

2.      Also, in the Ninth Circuit, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1991). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. … The economies of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F. 2d 1222, 1225 (9th Cir. 1989). To that end, the Ninth Circuit has articulated its own factors for final approval, which although they predate revised Rule 23(e), they overlap with the Rule: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining the case as a class action; (4) the amount of recovery; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Id.*

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

3.      After careful consideration of all materials, including all objections, the Court finds that the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and other laws and rules applicable to final settlement approval of class actions have been fully satisfied, and the Court approves the settlement of this matter as memorialized in the Settlement Agreement, which is incorporated herein by this reference, as being fair, just, reasonable, adequate, is in the best interests of Class Members, and fully and finally resolves all such claims. More specifically, the Court hereby finds that:

A. The class representatives and class counsel have adequately represented the class. Here, Class Counsel – who recommends this settlement – includes experienced class action trial attorneys having specific experience, and a track record of success, in worker misclassification class actions, along with class actions of all types. Notably this Court also specifically found counsel to be adequate to represent the class during the contested Motion for Class Certification. ECF No. 312 at pp. 9-11. Further, the Named Plaintiffs have been instrumental in starting and shepherding this case over many years, having participated actively in discovery, depositions, settlement discussions, and so forth, and having collectively devoted hundreds of personal hours to the prosecution of this matter.

B. The proposal was negotiated at arm's length. The Settlement Agreement is the result of arm's-length negotiations involving experienced employment counsel who are well-versed in the applicable (evolving) substantive law, class action litigation procedures, and the legal and factual issues of this case. The Parties attended three full days of mediation with a retired Judge and conducted follow-up negotiations over the course of several months. The Settlement occurred after more than five years of hard-fought litigation, on the doorstep of trial, and only after extensive written and documentary discovery, the exchange of expert reports, many depositions (including of

[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
CLASS ACTION, FLSA, AND PAGA SETTLEMENT

every named Plaintiff and several of Defendants' corporate representatives), and several contested motions including for class certification and summary adjudication. Defendants vigorously defended the litigation and the independent contractor business model used in California throughout this case. "[S]uch negotiations are highly indicative of [the] fairness" of the proposed Settlement. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007). Finally, the Ninth Circuit has highlighted additional "signs" that may suggest collusion, or that the settlement was not truly negotiated at "arm's length:" (1) when counsel receive a "disproportionate" distribution of the settlement, such as "when the class receives no money but class counsel are amply rewarded;" (2) when the parties negotiate a 'clear sailing' arrangement where the parties have agreed on an amount of attorneys' fees that the Defendant agrees beforehand not to contest; and (3) when the parties arrange for reversion of funds back to the Defendant, *e.g.*, when claims to funds are not made or if fees are not awarded. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (2011); *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). None of these warning signs are present here. Class Counsel here are seeking, in fees, less than approximately 17% of the total cash component of this settlement, *i.e.*, significantly less than even the Ninth Circuit's usual "benchmark." And there is no "clear sailing" agreement here nor any possibility of reversion. Indeed, the settlement does not require any claims at all. Class Members will automatically receive payment according to the number of workweeks they were under contract with Flowers. This settlement was negotiated at arm's length only after counsel fully informed themselves through years of litigation, discovery, and motion work, and only with the assistance of an experienced mediator who spent three days with the Parties.

C. <u>The settlement is adequate given the risk, expense, complexity, and likely duration of further litigation, compared to the results achieved</u>. Indeed, there was substantial risk on both sides. If a jury believed Flowers, Plaintiffs would get nothing. Flowers, on the other hand, was facing the developments in the law presenting challenges against the use of an independent contractor model in California.

D. The number, complexity, and continually evolving nature of the legal issues in this matter further support the settlement. Plaintiffs and Class Counsel believe the compromise reached here is significantly favorable for Class members. The average Class Member gross award (before deduction for fees and expenses) will be over $112,000 per worker and compares favorably to other cases of this type.

E. <u>Next, the proposed methods for distributing the relief are effective and efficient</u>. Here, Class Members will not be required to make a formal claim as a condition of recovery. Class Members will receive their payments simply by being members of the class. Nor is there any danger of any illegitimate claims because, once again, there is no claims process, plus we know the actual identities of every class person and their number of workweeks under contract, because the Distributor Agreements signed by Class Members that they operated under were kept by Flowers in the normal course of business. As such, this method of distribution imposes no burden on Class Members, class treatment here is manageable, and relief distribution will be efficient without facing any systematic fraud threats. This favors approving the class wide Settlement.

F. <u>The proposed allocation plan is also fair</u>. Next, the plan of allocation of the Settlement to Class Members is also fair and reasonable. The plan is objective. The Net Settlement Amount will be allocated among Class Members based on several factors, including: (1) the amount of time spent as

a distributor during the applicable liability period; (2) whether they are a current or former Distributor (which dictates whether they receive additional funds as part of the injunctive relief component or buyback); (3) whether they are an aggrieved employee and entitled to a portion of the PAGA allocation of the Settlement; and (4) whether they opted into the FLSA component of this case. *See*, *e.g.*, *Cicero*, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) (distribution based on the number of weeks worked is a "fair method" of distribution). The Court also finds that the extra amounts for the FLSA Plaintiffs are fair and appropriate. The Settlement satisfies the "equitable treatment" prong of Rule 23(e)(2).

G. The attorneys' fees request is reasonable. The Settlement Agreement, at section 9.1.4, allows Class Counsel to petition the Court for an award of fees, which they have done. As explained more fully below, the request for $18,333,333.00 is fair and reasonable given the significant time and expense that Class Counsel have devoted to this case over the last five years and the result that they have achieved for the Class compared to the contingent risk of not recovering any monies, fees, or costs at all.

**E. The Remaining Components of the Settlement**

1. The Court also finds that, for the same reasons the Settlement Agreement is adequate under Rule 23(e), it is also adequate under the FLSA and to resolve the FLSA claims.

2. Also, the Court finds that the Settlement Agreement, and particularly its allocation of $200,000 to the PAGA claims (75% of which will be paid to the LWDA per statutory requirements) is reasonable and sufficient and the Court hereby approves the settlement and release of all PAGA claims as also stated separately in the Parties' PAGA Settlement and Release Agreement (ECF No. 451-4). In this regard, the Court also finds persuasive that the California Labor and Workforce Development Agency ("LWDA") was given notice of the proposed

settlement of the PAGA claims and of this hearing and has not attempted to intervene or make any comment on the settlement terms whatsoever.

3.   The Court further finds that the requested payment to the Settlement Administrator, Rust Consulting, and their estimated current and future expenses (Mills Decl., ¶ 28, ECF No. 451-6) of $30,000 are reasonable and shall be paid consistent with the Settlement Agreement.

4.   The Court further finds that the requested payment of attorney's fees to class counsel, as formally requested in the Motion for Attorney's Fees, Costs, and Service Awards, is also reasonable. Plaintiffs on behalf of Class Counsel request $18,333,333.000 in fees, which is less than approximately 17% of what is estimated Flowers will pay, net and in total, to all class members, including for territory buybacks, which is significantly lower than the Ninth Circuit's 25% "benchmark" for presumptively reasonable fees. Arguably the Settlement Agreement is worth even more than as stated here because it also includes offers of employment plus benefits (health, dental, vision, retirement benefits, etc.) the class did not have before the settlement. Moreover, the fee request here would be reasonable even if counsel achieved the initial damages component *only*, i.e. even if the Court benchmarked the fee to only the $55 million (the requested fee being 33% of that amount). Awards more than the benchmark are common. *See*, *e.g.*, *Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (awarding 30% of common fund in wage and hour class settlement); *Gutierrez-Bejar v. SOS Int'l, LLC*, No. LACV1609000JAKJEMX, 2019 WL 5683901, at *10 (C.D. Cal. Nov. 1, 2019) (awarding 29.33% of fund in independent contractor misclassification case and noting that awards in excess of benchmark "are not uncommon"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33.3% of fund as attorneys' fees and listing cases); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[The] exact percentage [awarded] varies depending on the facts of the case, and in

most common fund cases, the award exceeds that benchmark."); Conte & Newberg, Newberg on Class Actions § 14:6, p. 551 (4th Ed. 2002) ("fee awards in class actions average around one third of recovery"). Such a fee is warranted considering the substantial results achieved, the effort expended by Class Counsel over the better part of six years, Class Counsels' considerable skill and experience, the complexity of the issues, and the risks of litigation. The Court also finds that a "lodestar cross-check" supports the requested fee award. The Court finds that Class Counsel's total lodestar of $6,389,537.50 (a total of 11,721.60 billable hours through Jan. 31, 2024) is reasonable. The hourly rates billed by the professionals in this matter are reasonable as were the hours expended as further described by counsel in their Motion for Attorneys Fees and supporting materials. The lodestar cross-check multiplier of 2.86 does not warrant deviation from the fee request given the extraordinary results Plaintiffs and their counsel have obtained here. The Ninth Circuit has recognized that multipliers typically can range up to 4, and Courts "commonly apply multipliers in that range in California wage and hour class actions," and often apply multipliers that far exceed that range. *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *17-18 (N.D. Cal. Dec. 8, 2021) (ordering multiplier of 5.5 in wage and hour class action); *see, e.g.*, *Uschold v. NSMG Shared Servs., LLC*, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (awarding multiplier of 4 in wage and hour class action); *Lazarin v. Pro Unlimited, Inc.*, No. C11–03609 HRL, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (finding lodestar multiplier of 3.36 in wage and hour action was reasonable and did not warrant a downward departure from 25% benchmark).

5.   Next, the Court also finds that Plaintiffs' request for reimbursement of their costs, totaling $160,545.48 as of today, is reasonable and shall also be granted. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011) ("Attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement").

6. Next, the Court also finds that each Named Plaintiffs' request for Service Awards, of $25,000 each, is reasonable and proportional to the time they devoted to this matter and the results achieved. The Court hereby grants those requests. *See Graham v. Overland Sols., Inc.*, No. 10-CV-0672 BEN BLM, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (approving service awards of $25,000 each to the named plaintiffs for their time and effort, the risks they undertook, and the stigma upon future opportunities, and a general release of all claims).

7. Class Action Fairness Act Notice. The Court finds that, in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), and as set forth by the Declaration and Supplemental Declaration of Jared L. Palmer (ECF Nos. 432, 452), Defendants properly and timely caused to be mailed a copy of the proposed class action Settlement and all other documents required by law to the Attorney General of the United States and the State Attorneys General in each jurisdiction where class members reside. No Attorney General has filed objections to the Settlement.

8. Defense counsel notified the United States Attorney General and the Attorney General of the State of California of the terms of the proposed class action settlement by letters dated October 26, 2023, November 16, 2023, and February 20, 2024, with enclosures. (ECF Nos. 432, 452). Defense counsel notified the Attorney General of the State of Nevada of the terms of the proposed class action settlement by letter dated October 26, 2023, with enclosures, as well as via email on November 16, 2023, and February 21, 2024, with enclosures. (ECF Nos. 432, 452). On February 20, 2024, Defense counsel notified the Attorneys General for 18 additional States of the terms of the proposed class action settlement by letter dated that same day, with enclosures, in which it was determined during the Class Settlement Notice period that at least one Class Member was determined to be a

1  resident based on updated address information provided during the Class Settlement
2  Notice process. (ECF No. 452).

3      9.    The Parties and the Settlement Administrator are hereby directed to
4  implement and carry out the Settlement Agreement and the PAGA Settlement and
5  Release Agreement in accordance with the terms and provisions thereof.

6      10.    The releases set forth in the Settlement Agreement and PAGA
7  Settlement and Release Agreement will become binding and effective upon entry of
8  this Final Approval Order.

9      11.    Neither this Order, the Settlement Agreement, nor any document
10  referred to herein, nor any action taken to carry out the Settlement Agreement is,
11  may be construed as, or may be used as an admission by or against Defendants or
12  any of the other Releasees of any fault, wrongdoing, or liability whatsoever. Nor is
13  this Order a finding of the validity of any claims in the Action or of any
14  wrongdoing by Defendants or any of the other Releasees. The entering into or
15  carrying out of the Settlement Agreement, and any negotiations or proceedings
16  related thereto, shall not in any event be construed as, or deemed to be evidence of,
17  an admission or concession with regard to the denials or defenses by Defendants or
18  any of the other Releasees and shall not be offered in evidence against Defendants
19  or any of the other Releasees in any action or proceeding in any court,
20  administrative agency or other tribunal for any purpose whatsoever other than to
21  enforce the provisions of this Order, the Settlement Agreement, or any related
22  agreement or release. Notwithstanding these restrictions, any of the Releasees may
23  file in the action or in any other proceeding, this Order, the Settlement Agreement,
24  or any other papers and records on file in the Action as evidence of the Settlement
25  Agreement and to support a defense of res judicata, collateral estoppel, release,
26  waiver, or other theory of claim preclusion, issue preclusion or similar defense.

27      12.    In the event that the Settlement Agreement does not become final and
28  effective in accordance with its terms, then this Final Approval Order and the prior

1  Preliminary Approval Order, shall be rendered null and void and be vacated.
2  Moreover, any funds tendered by Defendants shall be returned and/or retained by
3  Defendants consistent with the terms of the Settlement Agreement.

4        13.   For the reasons stated in this Order, the Joint Motion for Final
5  Approval of Class Action, FLSA, and PAGA Settlement is GRANTED. Plaintiffs'
6  Motion for Attorneys' Fees, Costs, and Service Awards is also GRANTED. Per the
7  terms of the Parties' Settlement Agreement, this Action shall be, and hereby is,
8  DISMISSED with PREJUDICE and the Clerk of the Court shall enter this Order as
9  a final order and Judgment. In the event there is a dispute concerning the
10  enforcement of the terms of the Settlement Agreement, the Parties agreed to confer
11  in good faith in an attempt to resolve any such dispute and if such dispute remains
12  unresolved, the dispute shall be heard by Judge Hoffman or, if unresolved, the
13  Court, which shall retain jurisdiction.

15  IT IS SO ORDERED

17  DATED: _3/18/24_

                                            HON. JINSOOK OHTA
                                            United States District Judge